DAVIDOFF HUTCHER & CITRON LLP
*Proposed Attorneys for the Debtors*
605 Third Avenue
New York, New York 10158
(212) 557-7200
Robert L. Rattet, Esq.
Derek A. Wolman, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

|  |  |
|---|---|
|  | Chapter 11 |
| URBAN COMMONS 2 WEST LLC | Case Nos. 22-11509 (PB) |
| URBAN COMMONS 2 WEST II LLC | 22-11510 |
| URBAN COMMONS 2 WEST III LLC | 22-11511 |
| URBAN COMMONS 2 WEST IV LLC | 22-11512 |
| URBAN COMMONS 2 WEST OPERATING TENANT LLC | 22-11513 |

Debtors.
-------------------------------------------------------------X

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) PROHIBITING UTILITY COMPANIES FROM ALTERING OR
DISCONTINUING SERVICE ON ACCOUNT OF PREPETITION INVOICES,
(II) DEEMING UTILITY COMPANIES ADEQUATELY ASSURED OF
FUTURE PERFORMANCE AND (III) ESTABLISHING PROCEDURES
FOR RESOLVING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE**

The above captioned debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") hereby file this motion (this "**Motion**") for entry of an interim order (the "**Interim Order**") and a final order (the "**Final Order**") pursuant to sections 105(a), 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§101, *et seq*. (the "**Bankruptcy Code**"), prohibiting the Debtors' utility service providers from altering or discontinuing service; (ii) approving an adequate assurance deposit as adequate assurance of postpetition payment to the utilities; and (iii) establishing procedures for resolving any subsequent requests by the utilities for additional adequate assurance of payment. In support of this Motion, the Debtors submit and incorporate by reference herein the *Declaration*

*of Taylor Woods in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**")[1] filed contemporaneously with this Motion. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York* dated January 31, 2012. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2), and pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

2. Venue of these Chapter 11 Cases and the Motion are proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

3. On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing the Chapter 11 Cases for relief under the Bankruptcy Code. The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the Chapter 11 Cases.

5. The Debtors are operated by experienced real estate developers and hoteliers who have

---

[1] Capitalized terms used, but not defined, herein shall have the same meanings ascribed to such terms in the First Day Declaration.

owned and operated over 20 hotels with a combined valuation of over $1.5 billion. The Debtors focus on repositioning hotels whereby they identify an underperforming hotel, rebrand it, and then modernize it through design upgrades, property improvements, and service enhancements such as, inter alia, connecting it to new management software and international hospitality networks to expand recognition nationally and internationally, as well as streamline the booking process.

6. The Debtors commonly own the rights to own and operate the hotel located at 2 West Street, New York, New York (the "**Hotel**"). The Debtors also have common management. Furthermore, the Debtors are each co-obligors under the various major obligations and liabilities associated with the Debtors' interests in the Hotel.

7. The Hotel has been non-operational since 2020.

8. Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

### A. The Utility Companies and Utility Services

9. In connection with the operation of the Hotel, the Debtors historically obtain utility services including electricity, natural gas, and other similar services (collectively, the "**Utility Services**") from the City of New York, as well as various utility service providers (the "**Utility Companies**"). The last invoices received by the Debtors in 2020 for the Debtors' Utilities Services for electric and gas are set forth on **Exhibit A** (as may be supplemented from time to time, the "**Utilities List**") attached hereto.

10. As noted above, the Hotel ceased operations in 2020 due to the impact of the COVID-19 pandemic prior to the Petition Date. Since that time, the condominium board of managers of the Millennium Point Condominium (the "**Condominium Board**") has covered all of the Debtor's utility costs and charged them back to the Debtors. The cessation of operations has

substantially reduced the amount of Utility Services that the Debtors require, but uninterrupted Utility Services remain essential to the Debtors' businesses and, hence, the overall success of these Chapter 11 Cases. In addition, the Debtors require Utility Services to eventually rehabilitate and transition the Hotel to a new hotel operator, currently in prospect, and the Debtors intend to re-establish, in concert with the new hotel operator, new utility accounts in lieu of the Condominium Board.

11.     Should any Utility Company refuse or discontinue Utility Services at the Hotel, even for a brief period, the Debtors' ability to resume business operations and/or fulfill their obligations under such leases would be severely disrupted, and such disruption would jeopardize the Debtors' ability to administer these Chapter 11 Cases. Accordingly, it is essential that the Utility Services continue uninterrupted at the Hotel during the Chapter 11 Cases.

12.     For the Debtors' latest invoice periods from April 2020 to September 2020, during the closing of the Hotel (the "**Latest Invoice Period**"), the Debtors paid an average of approximately $40,000 per month for electric and gas, on account of Utility Services at the Hotel. With the hopeful recommencement of operations at the Hotel, the Debtors anticipate that their use of Utility Services during the duration of these Chapter 11 Cases will be substantially higher than their average usage during the Latest Invoice Period.

**B. Proposed Adequate Assurance Deposit**

13.     The Debtors intend to pay postpetition obligations owed to their Utility Companies[2] on account of Utility Services provided at the Hotel in a timely manner. The Debtors expect that their revenues from the new Hotel lease and the proceeds from any postpetition credit facility

---

[2] The Utility Companies known and identified by the Debtors to date are listed on Exhibit A hereto. While the Debtors have used their best efforts to list all of their Utility Companies on Exhibit A, it is possible that certain Utility Companies may have been inadvertently omitted from this list. Accordingly, the Debtors reserve the right, under the terms and conditions of this Motion and without further order of the Court, to amend Exhibit A to add any Utility Companies that were omitted therefrom and to request that the relief requested herein apply to all such entities as well. In addition, the Debtors reserve the right to argue that any entity.

(the "**DIP Credit Facility**") will be sufficient to timely pay all postpetition obligations owed to such Utility Companies in the ordinary course of business.

14.     However, to provide adequate assurance to the Utility Companies as required under section 366(c) of the Bankruptcy Code, the Debtors propose, upon the first rents under the new lease becoming payable, to deposit[3] into a newly-created segregated account for the benefit of the Utility Companies (the "**Utility Deposit Account**") an amount equal to approximately one month of the Debtors' expected post-petition cost of Utility Services, calculated based upon the average of the Debtor's usage of Utility Services during the Latest Invoice Period (the "**Adequate Assurance Deposit**"). The aggregate amount of the proposed Adequate Assurance Deposit is approximately $100,000, which represents an amount equal to 2.5 times the Debtors' usage of Utility Services during the Latest Invoice Period at the Hotel, when the Hotel was closed. The Adequate Assurance Deposit will be held by the Debtors in the Utility Deposit Account for the benefit of the Utility Companies on the Utilities List during the pendency of the Chapter 11 Cases.

15.     The Debtors will deposit the Adequate Assurance Deposit in the Utility Deposit Account within twenty (20) calendar days of entry of the Interim Order. The amount allocated for, and payable to, each Utility Company shall be equal to the amount set forth on the Utilities List as to each Utility Company or as otherwise agreed upon.

16.     The Debtors propose that the portion of the Adequate Assurance Deposit attributable to each Utility Company be returned to the Debtors on the earlier of (i) the Debtors' termination of services from such Utility Company upon reconciliation and payment by the Debtors of the Utility Company's final invoice in accordance with applicable nonbankruptcy law, *provided, however,* that there are no outstanding disputes related to postpetition payments due; (ii) entry of an order of the Court authorizing the return of such Adequate Assurance Deposit to the

---

[3] Section 366(c)(1)(A) of the Bankruptcy Code defines "assurance of payment" to mean, among other things, a cash deposit.

Debtors; (iii) the effective date of a plan in the Chapter 11 Cases; or (iv) the Chapter 11 Cases are otherwise closed or terminated.

17. Given the Debtors being in the process of entering into a new sub-lease to start up the hotel with a new third party, the Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business, constitutes sufficient adequate assurance to each of the Utility Companies (collectively, the "**Proposed Adequate Assurance**").

### C. Proposed Adequate Assurance Procedures

18. Notwithstanding the Proposed Adequate Assurance, if any Utility Company believes that additional assurance is required, it may request such additional assurance solely pursuant to the procedures described below (the "**Adequate Assurance Procedures**"):

(a) The Debtors or their advisors will serve a copy of this Motion (including the proposed Final Order) and the approved Interim Order to each of the Utility Companies listed on the Utilities List within two business days after entry of such order by the Court.

(b) If a Utility Company is not satisfied with the Proposed Adequate Assurance, it must serve a written request (a "**Request**") upon proposed counsel to the Debtors, Davidoff Hutcher & Citron LLP, 605 Third Avenue, New York, New York 10158 Attn: Robert L. Rattet, Esq. (rlr@dhclegal.com), and Jonathan S. Pasternak, Esq. (jsp@dhclegal.com), and the Request must set forth (1) the location(s) for which Utility Services are provided, (2) the account number(s) for such location(s),(3) the outstanding balance for each account, and (4) an explanation of why the Utility Company believes that the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

(c) If the Debtors determine, in their sole discretion, that a Request or any consensual agreement reached in connection therewith is reasonable, the Debtors, without further order of the Court, may enter into agreements granting additional adequate assurance to the Utility Company serving such Request and, in connection with such agreements, provide the Utility Company with additional adequate assurance of payment, including cash deposits, prepayments or other forms of security, with three days' advance notice to counsel to the Purchaser and notice to the Office of the United States Trustee (the "**U.S. Trustee**") and any counsel to any statutory committee appointed in the Chapter 11 Cases within 15 days.

(d) If the Debtors, in their sole discretion, determine that a Request is unreasonable, then they shall promptly negotiate with the requesting party and if unable to

reach a prompt resolution to the Request, set the matter for hearing at the next regularly scheduled omnibus hearing date in the case. Pending such hearing, the Utility Company that is the subject of the unresolved Request may not alter, refuse or discontinue services to the Debtors.

(e)     Absent compliance with the procedures set forth in the Motion and the Interim and Final Orders, the Utility Companies are prohibited from altering, refusing or discontinuing service on account of any unpaid prepetition charges and are deemed to have received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code.

### D. Proposed Procedures to Supplement the Utility List

19.     Although the Debtors have made a good faith effort to identify all of the Utility Companies that currently provide Utility Services to the Debtors at the Hotel, it is possible that some Utility Companies may not be listed on the Utilities List. For any additional Utility Companies that the Debtors identify, the Debtors will (a) file a supplemental notice (each, a "**Supplemental Notice**") and (b) serve the Supplemental Notice by first-class mail on all Utility Companies listed in such Supplemental Notice The Debtors will increase the amount of the Adequate Assurance Deposit in the event an additional Utility Company is added to the Utilities List by an amount equal to approximately one month of Utility Services provided by such additional Utility Company, calculated based upon the average of the Debtor's usage of Utility Services during the Latest Invoice Period. The Debtors request that the Proposed Orders be binding on all Utility Companies, regardless of whether or when such Utility Company was added to the Utilities List by Supplemental Notice. For any Utility Company that is removed from the Utilities List, the Debtors request that they be permitted to subtract from the Adequate Assurance Deposit an amount equal to approximately one month of Utility Services provided by such Utility Company, calculated based upon the average of the Debtor's usage of Utility Services during the Latest Invoice Period.

### RELIEF REQUESTED

20.     By this Motion, the Debtors request entry of the Interim and Final Orders (the

"**Proposed Orders**") approving procedures that would provide adequate assurance of payment to the Utility Companies under section 366 of the Bankruptcy Code and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), while allowing the Debtors to avoid the threat of imminent termination of Utility Services from those Utility Companies. Specifically, the Debtors request entry of the Proposed Orders (a) approving the Debtors' deposit of $100,000 (which is approximately the estimated monthly cost of the Utility Services based upon the average of the Debtors' usage of Utility during the Latest Invoice Period at the Hotel into a newly-created segregated, interest-bearing account, as adequate assurance of postpetition payment to the Utility Companies pursuant to section 366(b) of the Bankruptcy Code, (b) approving the additional adequate assurance procedures described below as the method for resolving disputes regarding adequate assurance of payment to Utility Companies, and (c) prohibiting the Utility Companies from altering, refusing, or discontinuing services to the Debtors except as may be permitted by the proposed procedures.

## BASIS FOR RELIEF

21. Uninterrupted Utility Services are essential to the preservation of the value of the Debtors' estates. As set forth above, the Debtors' historical operations depended on reliable delivery of power and other Utility Services. Further, the terms of certain of the Debtors' leases may obligate the Debtors to maintain Utility Services, and the Debtors require Utility Services to maintain operations at the hotel in a standby condition for eventual reopening. Should any Utility Company alter, refuse or discontinue service, even for a brief period, the Debtors' businesses could be severely disrupted. The impact of this disruption on the Debtors' businesses would be harmful and could jeopardize the value of the Debtors' estates.

22. The relief requested herein will ensure that the Debtors' operations will not be disrupted. Furthermore, the relief requested herein provides the Utility Companies with a fair and

orderly procedure for addressing requests for additional or different adequate assurance. Without the Adequate Assurance Procedures, the Debtors could be forced to address numerous requests by the Utility Companies in a disorganized manner at a critical period in the Chapter 11 Cases and during a time when the Debtors' efforts could be more productively focused on the continuation of the Debtors' operations for the benefit of all parties in interest.

23. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination of utility services after commencing its chapter 11 case. Under that section, a utility company may not, during the first twenty days of a chapter 11 case, alter, refuse or discontinue services to, or discriminate against, a debtor solely on the basis of the commencement of the case or the failure of the debtor to pay a prepetition debt. 11 U.S.C. §366. A utility company may, however, alter, refuse or discontinue service following such 20-day period, if the debtor has not furnished "adequate assurance of payment" for postpetition utility service obligations within the 20-day period. 11 U.S.C. §366. Additionally, following a 30-day period after the commencement of a bankruptcy case, utilities may alter, refuse or discontinue service if the debtor does not provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company, subject to the Court's review and approval.

24. Section 366(c)(3)(B) of the Bankruptcy Code restricts the factors a court can consider when determining whether an assurance of payment is adequate. Specifically, courts may not consider (a) the absence of a security deposit before a debtor's petition date, (b) a debtor's history of timely payments or (c) the availability of an administrative expense priority when determining the amount of a deposit.

25. While the Bankruptcy Code provides guidance as to the required nature of adequate assurance, the Court retains the discretion to determine the amount of adequate assurance necessary or to change the fundamental requirement that assurance of payment must simply be

adequate. *Compare* 11 U.S.C. §366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") *with* §366 (c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2) [which is governed by an adequacy standard]."); *see Also, In re Circuit City, Inc.*, Case No. 08-35653 (KRH), 2009 Bankr. LEXIS 237, at *15-*16 (Bankr. E.D. Va. Jan. 14, 2009) (finding that determinations of adequate assurance remain within the Court's discretion).

26. Courts construing section 366(b) of the Bankruptcy Code have long recognized that, in determining adequate assurance, the Court is not required to give the Utility Companies the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for postpetition services. *See In re Santa Clara Circuits W., Inc.*, 27 B.R. 680, 685 (Bankr. D. Utah 1982) ("[A]dequate assurance of payment does not mean guaranty of payment; but the Court must find that the utility is not subject to an unreasonable risk of future loss.") *quoting In re George C. Frye Co.*, 7 B.R. 856, 858 (Bankr. D. Me. 1980); s*ee also In re Circuit City*, Case No. 08-35653 (KRH), 2009 Bankr. LEXIS 237, at * 13 ("A debtor need not provide utility companies an absolute guarantee of payment."); *accord Long Island Lighting Co. v. The Great Atl. & Pac. Tea Co. (In re The Great Atl. & Pac. Tea Co.)*, Case No. 11-CV-1338 (CS), 2011 U.S. Dist. LEXIS 131621, at *18 (Bankr. S.D.N.Y. Nov. 14, 2011); *S. Cal. Edison Co. v. Crystal Cathedral Ministries (In re Crystal Cathedral Ministries)*, 454 B.R. 124, 131 (C.D. Cal. 2011); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008); *Steinebach v. Tucson Elec. Power Corp. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002); *In re Caldor, Inc.-NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc. - NY*, 117 F.3d

646 (2d Cir. 1997). Historically, whether a utility is subject to an unreasonable risk of nonpayment must be determined from the facts and circumstances of each case. *See In re Santa Clara Circuits W.* 27 B.R. at 685; *see also In re Adelphia Bus. Solutions, Inc.*, 280 B.R. at 80; *accord Long Island Lighting Co.*, U.S. Dist. LEXIS 131621, at *18; *Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981). *While section 366(c) of the Bankruptcy Code limits the factors a court may consider, determinations of adequate assurance remain within the Court's discretion. Cf. Long Island Lighting Co.*, 2011 U.S. Dist. LEXIS 131621, at *20; *Steinebach*, 303 B.R. at 642; *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. at 80; *Marion Steel Co. v. Edison Co. (In re Marion Steel Co.)*, 35 B.R. 188, 195 (Bankr. N.D. Ohio 1983).

27.    Here, the Debtors believe that the Utility Companies have "adequate assurance of payment" even without the proposed Adequate Assurance Deposit. Concurrently herewith, the Debtors are seeking authorization to enter into the DIP Credit Facility, which will enable them to pay their operating costs, including any utility costs, as they come due. Further, given the shuttering of the hotel during the COVID pandemic, the Debtors' use of Utility Services has been substantially reduced. The Debtors, thus, anticipate having sufficient resources to pay, and intend to pay, any and all valid postpetition obligations for Utility Services in a timely manner. In addition, the Debtors' reliance on Utility Services for the operation of their businesses, including ensuring compliance with the terms of certain of their leases, provides them with a powerful incentive to stay current on their utility obligations. These factors, which the Court may (and should) consider when determining the amount of any adequate assurance payments, justify a finding that no adequate assurance payments are required in the Chapter 11 Cases. Indeed, the Debtors respectfully submit that the Proposed Adequate Assurance is more than sufficient to assure the Utility Companies of future payment.

28. Notwithstanding the foregoing, the Debtors believe that the Proposed Adequate Assurance and the Adequate Assurance Procedures are reasonable, satisfy the requirements of section 366 of the Bankruptcy Code and are necessary for the Debtors to carry out their efforts to resuscitate the Debtors' businesses. If they are not approved, the Debtors could be forced to address payment requests by any Utility Company in a disorganized manner, which would distract management from focusing on resuming the Debtors' businesses. Moreover, on the thirtieth day following the Petition Date, the Debtors could be surprised by a Utility Company unilaterally (a) deciding that it is not adequately protected, (b) discontinuing service or (c) making an exorbitant demand for payment to continue service. Such discontinuation of Utility Services could disrupt the Debtors' smooth transition into chapter 11.

29. In addition, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The proposed Adequate Assurance Procedures are necessary for the Debtors to successfully organize. If the Court does not approve the proposed Adequate Assurance Procedures, the Debtors could be forced to address requests from the Utility Companies in a manner that would be detrimental to the value of their estates.

30. Preserving Utility Services on an uninterrupted basis at the Hotel is essential to the Debtors' capacity to resume operations, ensure compliance with the terms of certain of their leases, and maximize the value of the Debtors' estates. Indeed, any interruption in Utility Services at the Hotel, even for a brief period of time, would immediately and irreparably harm the Debtors' businesses. It is imperative that the Utility Companies continue to provide their Utility Services at the Hotel without interruption.

31. Based on the foregoing, the Debtors submit that the relief requested herein is in the best interests of the Debtors' estates and creditors, is in keeping with the spirit and intent of section 366 of the Bankruptcy Code and is not prejudicial to the rights of any Utility Company.

## **NECESSITY OF IMMEDIATE RELIEF AND WAIVER OF STAY**

32. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R. Bankr. P. 6003. The Debtors need to provide Adequate Assurance Deposits to the Utility Companies. If the Debtors are not permitted to provide Adequate Assurance Deposits to the Utility Companies to reassure the Utility Companies, the Debtors could suffer immediate and irreparable harm. Accordingly, the Debtors respectfully submit that, because of the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

33. The urgency of the relief requested justifies immediate relief. To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Bankruptcy Rule 6004(a). The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to maintain their businesses and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## DEBTORS' RESERVATION OF RIGHTS

34. Nothing contained herein is intended or should be construed as or deemed to constitute an agreement or admission as to the validity of any claim against the Debtors on any grounds, a waiver or impairment of the Debtors' rights to dispute any claim on any grounds or an assumption or rejection of any agreement, contract or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any claims related to Utility Services. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be, and should not be construed as, an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

35. The Debtors will serve notice of this Motion upon (i) the U.S. Trustee; (ii) the Debtors' consolidated list of creditors holding the twenty (20) largest unsecured claims; (iii) the Utility Companies; (iv) the City of New York; (v) the Condominium Board; and (vi) all parties entitled to notice pursuant to Local Rule 9013-1(m). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

The Debtors have not previously sought the relief requested herein from the Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order, attached hereto as **Exhibit B**, and the Final Order attached hereto as **Exhibit C**, in substantially the same form as the Interim Order, and grant such other and further relief as the Court deems just and proper.

Dated: November 16, 2022
      New York, New York

                DAVIDOFF HUTCHER & CITRON LLP
                *Proposed Attorneys for the Debtors*
                605 Third Avenue
                New York, New York 10158
                (212) 557-7200

                By: */s/ Robert L. Rattet, Esq.*
                    Robert L. Rattet, Esq.