UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In Re:                                                                         Chapter 11

URBAN COMMONS 2 WEST LLC, *ET AL.*,[1]             Lead Case No.: 22-11509 (PB)

                          Debtors.                                             (Jointly Administered)
----------------------------------------------------------X

### ORDER GRANTING DEBTORS' APPLICATION TO (I) EMPLOY AND RETAIN GETZLER HENRICH & ASSOCIATES LLC EFFECTIVE AS OF NOVEMBER 21, 2022, (II) AFFIRM DESIGNATION OF MARK D. PODGAINY AS CHIEF RESTRUCTURING OFFICER EFFECTIVE AS OF NOVEMBER 21, 2022, AND (III) EMPLOY AND RETAIN BERNARD A. KATZ AS INDEPENDENT MANAGER OF THE DEBTORS

Upon the application[2] (ECF Docs. 44 and 48; the "Application") of the above-captioned debtors and debtors-in-possession (the "Debtors"), **Sections 105(a) and 363(b)** of title 11 of the United States Code, ("Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), seeking *to (I) Employ and Retain Getzler Henrich & Associates LLC Effective as of November 21, 2022, (II) Affirm Designation of Mark D. Podgainy as Chief Restructuring Officer Effective as of November 21, 2022, and (III) Employ and Retain Bernard A. Katz as Independent Manager of the Debtors,* all as more fully set forth in the Application; and upon the Henrich Declaration and the Katz Declaration; and upon the First Day Declarations; and the United States Trustee having filed an objection dated December 5, 2022 (ECF Doc. 52; the "Objection") to the Application, and the

---

[1] *Jointly administered with Urban Commons 2 West II LLC (Tax ID: \*\*-\*\*\*7987), Urban Commons 2 West III LLC (Tax ID: \*\*-\*\*\*3270), Urban Commons 2 West IV LLC (Tax ID: \*\*-\*\*\*8418), and Urban Commons 2 West Operating Tenant LLC (Tax ID: \*\*-\*\*\*0849), with a shared mailing address of 3334 East Coast Highway, No. 350, Corona Del Mar, CA 92625.*

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

Debtors having filed a Response thereto dated December 5, 2022 (ECF Doc. 53); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that notice of the Application and the hearing to consider the Application was sufficient under the circumstances; and this Court being satisfied with the representations made in the Application and the Henrich Declaration and Katz Declaration that **Getzler Henrich & Associates LLC ("GH"), Mark D. Podgainy, and Bernard A. Katz** neither hold nor represent any interest adverse to the estates; and a hearing having been held on December 6, 2022 before the Court; and after due deliberation and oral argument this Court having considered the Objection, the Debtors' response thereto, and the respective positions of other interested parties in the Chapter 11 cases**; and the Court, based upon the record of the hearing held and for the reasons stated by the Court in a bench ruling that was read into the record on December 6, 2022, having** determined that the relief requested in the Application is: (a) subject to the filing of an appropriate members' resolution amending certain requirements for the Debtors' appointment of the Independent Director, authorized under the Debtors' operating agreements, applicable Delaware law**, and the Bankruptcy Code**; (b) necessary and essential for the Debtors' reorganization; and (c) such relief is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and other parties in interest; and after due deliberation thereon, and good and sufficient cause appearing therefor, and upon the Debtors'

filing of the *Unanimous Written Consent Of The Members Of Urban Commons 2 West LLC, Urban Commons 2 West II LLC, Urban Commons 2 West III LLC and Urban Commons 2 West IV LLC Effective as of December 6, 2022* [ECF Doc. **59**] **[PB 12/08/2022]**:

IT IS HEREBY ORDERED THAT:

1. The Application is granted as set forth herein.

2. The Objection is overruled.

3. The Debtors are hereby authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Bankruptcy Rules 2016-1, to (I) employ and retain Getzler Henrich & Associates LLC effective as of November 21, 2022, (II) affirm designation of Mark D. Podgainy as Chief Restructuring Officer effective as of November 21, 2022, and (III) employ and retain Bernard A. Katz as Independent Manager of the Debtors effective as of the date of entry of this Order, in accordance with the terms and conditions set forth in the GH Engagement Letter and the Katz Engagement Letter respectively, and hereof; provided that in the event of any inconsistency between the GH Engagement Letter, the Katz Engagement Letter, and this Order, this Order shall govern over both of the engagement letters.

4. The Debtors are authorized, pursuant to section 363(b) of the Bankruptcy Code, to affirm the designation of Mark D. Podgainy as CRO, in accordance with the terms set below:

**I. CRO Appointment and Protocol**

    A.    Mr. Podgainy is hereby appointed as CRO for the Debtors effective immediately as of the date of entry of this Order (the "**Appointment Date**"). The contact information for GH is as follows:

> Getzler Henrich & Associates LLC
> 295 Madison Avenue, 20th Floor
> New York, NY 10017
> Attn: Mark D. Podgainy
> Managing Director
> mpodgainy@getzlerhenrich.com

3

## II. CRO Authority As Fiduciary Of Each Of The Debtors' Estates

A. The CRO shall be the sole representative of all of the Debtors' estates and shall be exclusively vested with all of the powers and duties to operate the Debtors' businesses pursuant to Bankruptcy Code Sections 1107 and 1108 and in accordance with, and subject to, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Procedure.

B. The CRO shall have sole and exclusive power to exercise all of the management, voting, consent and consultation rights and powers of each of the Debtors, without regard to, or requirement of, any management, voting and consent rights, consultation rights or powers of any person or entity who has any such rights or powers under any of the Debtors' Operating Agreements, any management agreement or any further sublease that may exist with any of the Debtors or any of the Debtors' affiliates, or otherwise, with respect to any of the Debtors or any of the Debtors' affiliates. The CRO shall maintain and exercise any such rights any Debtor has with respect to any non- Debtor affiliates. The CRO shall exercise such powers and rights consistent with its obligations as an independent fiduciary of the Debtors' estates as described more fully below.

C. Each of the Debtors, their direct and indirect members, managers and officers, Mr. Woods, and Mr. Wu hereby expressly consent to the appointment of the CRO and expressly irrevocably waive all management, voting and consent rights, consultation rights or powers any of them may have with respect to any of the Debtors.

D. Effective upon the entry of this Order, (i) the members of the Condominium Board of Managers of the Millennium Point Condominium appointed by Debtors or by the Commercial Board of Managers of the Millennium Point Condominium, and (ii) all the members of the Debtors currently serving on such Commercial Board of Managers, shall be deemed to have resigned from each respective Board. The CRO is hereby authorized to, and shall promptly, appoint new members to both such Boards on behalf of the Debtors. The CRO may appoint himself as one of such members to each such Board and shall give prompt notice of such appointments to the Residential Board of Managers of the Millennium Point Condominium.

E. Neither Mr. Woods nor Mr. Wu nor any current direct or indirect members, managers or officers of the Debtors shall directly or indirectly, represent, purport or allege to any person that he has any management,

4

        voting rights, consent rights, consultation rights or powers with respect to any of the Debtors, or take any action or inaction, to assert, exercise, or cause a third party to assert or exercise, any management, voting rights, consent rights, consultation rights or powers with respect to any of the Debtors.

F.    Notwithstanding the foregoing, to the extent that Mr. Woods or Mr. Wu has a right to cast a ballot, in their individual capacity only, in connection with a plan of reorganization for any of the Debtors, neither is precluded from doing so; and neither Mr. Woods nor Mr. Wu shall be precluded hereby from seeking to be heard as a party in interest in the Chapter 11 Cases as creditors and equity holders, except with respect to the matters relating to the appointment and authority of the CRO which are provided for herein. In addition, Mr. Woods and Mr. Wu reserve all of their respective rights, claims, equity interests, and defenses in or against the Debtors, other than the voting, consent, consultation and management rights specifically addressed herein.

G.    The CRO shall be an independent fiduciary with respect to each of the Debtors' estates and shall exercise that duty consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and other applicable law. The CRO will only answer to the independent manager, Bernard A. Katz.

H.    The CRO shall have the fiduciary duties, subject to the exculpatory protections, as Delaware or New York law provides (as applicable) to a Manager of a limited liability company as if the CRO was a Manager of a limited liability company under Delaware or New York law (as applicable).

I.    The CRO shall have no contractual fiduciary duty under any Operating Agreement, or other agreement, of any of the Debtors.

J.    Any action or inaction of the CRO from and after the Appointment Date shall solely be the responsibility of the CRO as set forth herein and neither Mr. Woods nor Mr. Wu shall be responsible for the actions or inactions of the CRO.

K.    The CRO shall be entitled to rely in good faith upon the advice of its counsel and shall not have any liability for any decision made that is approved by the Court, unless, if the Court determines that the CRO's actions or omissions (i) were grossly negligent, willful, intentional, or fraudulent, (ii) violated applicable law; (iii) were done in bad faith, or (iv) breached the duty of loyalty, then liability shall apply.

**III. Advisors**

    A.    The CRO shall be vested with the authority, subject to approval of the Bankruptcy Court having jurisdiction over the Debtors' Chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under lead case no. 22-11509(PB), to retain such financial, legal, and other advisors as professionals under and pursuant to the Bankruptcy Code.

**IV. Independent Manager as Sole Manager and Decision-Maker for the Debtors**

    A.    The Independent Manager understands that he will be (a) the replacement independent manager for and in lieu of Kristine E. Eppes and (b) the sole Manager, independent or otherwise, of the Debtors during the term of his appointment, absent further order of the Bankruptcy Court, and shall have sole and exclusive authority of a manager as defined under the Debtors' Operating Agreements.

    B.    The Independent Manager shall not take any instructions or orders from, and will not in any way act on behalf of, Mr. Woods, Mr. Wu, or anyone acting on their behalf, including, but not limited to, the Debtors, any non-Debtor affiliates, each of their respective direct or indirect partners, managers, members, employees, agents, servants, attorneys, accountants, advisors, representatives, assigns, officers, managers, members, divisions, and certificate holders, and the managers, officers, and members then in existence under the Debtors' Operating Agreements immediately prior to the Appointment Date and entry of this Order.

**V. Milestones**

**A. Investigation and Reports**

    A.    On or before seven (7) days after the Appointment Date, the CRO shall file a thirteen (13) week consolidated cash flow budget for the Debtors.

    B.    On or before thirty (30) days after the Appointment Date, the CRO shall file a report detailing:

        i. A Consolidated Balance Sheet for the Debtors as of the Petition Date.

        ii. A summary of the Debtors' business, current state of operations, and preliminary assessment of the conduct of the business, if any, over the next twelve (12) months.

        iii. A twelve (12) month consolidated cash flow forecast for the Debtors.

6

    iv. A general summary for the Debtors identifying the specific factual and legal issues to be addressed in order to restructure the Debtors.

    v. The general summary shall identify each significant contractual counterparty, and other significant stakeholders, and in each such case, the claims or interests they have that relate to the particular Debtor and its ongoing operations or restructuring.

    vi. Any significant litigation issues.

    vii. Any significant pre-petition transfers.

    viii. An accounting of all PPP Funds held by each Debtor, including all transfers from the date of receipt through the date of the report.

  C. On or before sixty (60) days after the Appointment Date, the CRO shall file a written report detailing:

  i. All intercompany transactions in the four (4) years leading up to and including the report date.

  ii. All transfers to and from non-Debtor affiliates.

  iii. All transfers to (or for the benefit of) and from insiders[3] (including payments on guaranteed debt).

**B. Restructuring Transaction**

  A. On or before forty-five (45) days after the Appointment Date, the CRO shall file a proposed restructuring transaction process and timeline for the solicitation, determination, and implementation of a restructuring transaction for the Debtors that may be either a Section 363 Sale or a Plan of Reorganization (the "**Restructuring Transaction**"), or both, and shall file a motion to be set for hearing on or before sixty (60) days after the Appointment Date, for approval of the procedures and timeline governing such Restructuring Transaction process (the "**Process Hearing**").

  B. The CRO shall have developed and populated a virtual data room on or before the Process Hearing that can be made available to qualified interested parties, subject to appropriate confidentiality agreements, in connection with the Restructuring Transaction.

  The CRO may seek extension of the deadlines set forth in this Section V, by motion to the Bankruptcy Court, for cause shown.

---

[3] As defined in Bankruptcy Code Section 101(31).

### VI. Other

A. The CRO shall be employed as a professional at the cost and expense of the Debtors' estates pursuant to and subject to the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules effective as of the Appointment Date.

B. Other than with respect to the consents and waivers provided herein, all rights of all Parties are preserved.

### VII. Notices and Disputes

A. All communications and notices to any Party hereunder shall be via e-mail to:

If to GH:
**Getzler Henrich & Associates LLC**
Mark D. Podgainy (mpodgainy@getzlerhenrich.com)

If to the Debtors:
**Davidoff Hutcher & Citron LLP**
Robert L. Rattet (rlr@dhclegal.com)
Jonathan S. Pasternak (jsp@dhclegal.com)

If to Mr. Katz
**BAK Advisors, Inc.**
Bernard A. Katz (Bernie@BAKAdvisors.com)

B. If a dispute among the Parties arises with respect to the interpretation or implementation of this Order, the Parties shall meet and confer in an attempt to resolve such dispute in good faith.

i. If the Parties are unable to resolve such dispute, each Party may file a letter of no more than two pages with the Court requesting a conference and setting forth such Party's position with respect to the issue in dispute.

ii. The Court may schedule a conference or oral argument to resolve such dispute on an expedited basis.

### VIII. Jurisdiction and Authority of This Court

A. This Court has jurisdiction over matters related to this Order pursuant to 28 U.S.C. §§ 1334 and 157(b).

B. The matters covered by this Order constitute core proceedings pursuant to 28 U.S.C. § 157(b).

       C.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

       D.       This Court shall retain jurisdiction to hear and determine all disputes and matters concerning interpretation and implementation of this Order.

5.       GH shall not act as claims agent/claims administrator or investor/acquirer in connection with the chapter 11 cases.

6.       GH shall not act as financial advisor in connection with the chapter 11 cases.

7.       No principal, employee, or independent contractor of GH shall serve as a manager of any of the above-captioned Debtors during the pendency of the chapter 11 cases.

8.       GH and Mr. Katz shall be compensated for their services and reimbursed for any related expenses in accordance with the rates (as may be adjusted from time to time) and disbursement policies as set forth in their respective engagement letters, subject to the terms hereof.

9.       The GH Engagement Letter and Katz Engagement Letter are incorporated herein by reference and approved in all respects, except as otherwise set forth or modified herein.

10.       Pursuant to the GH Engagement Letter, GH will invoice the Debtors based on the hours worked by personnel at the following agreed-upon hourly rates, which will be revised from time to time. Adjusted rates will be reflected in billings:

| PERSONNEL | HOURLY BILLING RATE |
|---|---|
| Principal/Managing Director | $595-$750 |
| Director/Specialist | $475-$695 |
| Associate Professionals | $175-$475 |

9

11. Mr. Podgainy's hourly rate is $675. The hourly rates are based upon GH's rates for an individual person of a certain skill and experience. GH has advised the Debtors that the hourly rates set forth above are subject to periodic increases in the normal course of GH's business. GH will provide no less than 10-day written notice of any rate increases to the Debtors, the U.S. Trustee, and any official committee appointed in these cases.

12. Upon Court approval of the GH Engagement Letter, the Debtors are authorized to pay GH a retainer in the amount of $75,000 which will be applied to the final bill. Should this retainer be insufficient because of a change in circumstances (e.g., required level of assistance or filing for bankruptcy protection), GH reserves the right to request, and the Debtors agree to pay a retainer increase subject to Bankruptcy Court approval. Any amount of this retainer remaining after application to unpaid fees and expenses will be returned to the Debtors.

13. Pursuant to the Katz Engagement Letter, Mr. Katz is an independent contractor and will not be deemed an employee of the Debtors for purposes of employee benefits, income tax withholding, F.I.C.A taxes, unemployment benefit or otherwise.

14. Upon Bankruptcy Court approval of the Katz Engagement Letter, the Debtors are authorized to pay Mr. Katz $25,000 per month, commencing on December 1, 2022, payable on the first business day of each month, plus reimbursement of reasonable out-of-pocket expenses incurred in connection with Manager Services rendered by Mr. Katz.

15. GH and Mr. Katz are not required to submit interim fee applications pursuant to sections 330 and 331 of the Bankruptcy Code, but will instead submit monthly invoices to the Debtors, which the Debtors shall timely provide to (a) BPC Lender, LLC, (b) the United States Trustee and (c) any official committee appointed in the Debtors' Chapter 11 cases, and the Debtors are hereby authorized to pay, in the ordinary course of business and in accordance with

the terms of this Order, all reasonable amounts invoiced by GH and Mr. Katz for fees and expenses. GH and Mr. Katz are required to submit a final fee application pursuant to sections 330 and 331 of the Bankruptcy Code.

16.     GH and Mr. Katz shall file reports of compensation earned and expenses incurred on a monthly basis ("Compensation Reports") in the Bankruptcy Court (i.e., on the docket of these chapter 11 cases) and provide notice of the same to: (i) the office of the United States Trustee, and (ii) counsel for any official committee appointed in these cases and (iii) counsel to BPC Lender, LLC. (collectively, the "Notice Parties") Compensation reports shall summarize the services provided and identify the compensation earned and expenses incurred by GH and Mr. Katz. The Notice Parties shall have 21 days after the date each Compensation Report is served upon them to file an objection with the Court. Such compensation and expenses will be subject to Court review in the event an objection is filed.

17.     Each month, GH and Mr. Katz shall file with the Court (and serve copies to the Notice Parties) a report reflecting the GH and BAK **Advisors, Inc. ("BAK")** personnel that worked on the engagement for the previous month ("Staffing Reports"). Staffing Reports shall include the names of all full- and parttime GH and BAK Personnel that provided services in these chapter 11 cases during the prior month and each individual's hourly billing rate. The Notice Parties shall have 21 days after the date each Staffing Report is served upon them to file an objection with the Court. The Staffing Reports, GH's staffing decisions and BAK's staffing decisions will be subject to review by the Court in the event an objection is filed.
**[PB 12/08/2022]**

18.     The Compensation Reports and Staffing Reports submitted by GH and Mr. Katz shall be subject to the same review standards for reasonableness set forth in section 330 of the

11

Bankruptcy Code used to evaluate fee applications of professionals retained under section 327 of the Bankruptcy Code.

19. GH shall apply the Retainer as a credit towards postpetition fees and expenses incurred from and after the Appointment Date, after such postpetition fees and expenses incurred from and after the Appointment Date become payable pursuant to the terms of this Order.

20. If the Debtors request GH and Mr. Katz to perform any services other than (a) as provided for in their respective engagement letters, or (b) directly related thereto and provided without additional fees, the Debtors shall apply for an order approving those additional services and fees.

21. None of the fees payable to GH or Mr. Katz shall constitute a "bonus" or fee enhancement under applicable law.

22. The Debtors are permitted to indemnify and limit the liability of GH and Mr. Katz on the same terms as provided to the Debtors' other officers and managers under the operating agreements and applicable state law, individually and as specifically provided in (a) the GH Engagement Letter or (b) the Katz Engagement Letter, along with insurance coverage under the Debtors' director and officer insurance policy; provided, however, any such indemnification shall be subject to paragraph 24 hereof.

23. There shall be no indemnification of the GH or BAK hourly temporary staff working on these chapter 11 cases.

24. GH and BAK shall use its reasonable efforts to avoid any unnecessary duplication of services provided by any other retained professionals in these chapter 11 cases.

25. For a period of three years after the conclusion of the engagement, GH and Mr. Katz shall not make any investments in the Debtors, non-debtor affiliates of the Debtors, or the reorganized Debtors.

26. All requests for the payment of indemnification as set forth in the GH Engagement Letter and Katz Engagement Letter shall be made by means of an application to the Court and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, and in no case shall an indemnified person be indemnified if any losses, claims, damages, liabilities or expenses are finally determined by this Court or another court of competent jurisdiction to have resulted from such indemnified person's gross negligence, bad faith, or willful misconduct.

27. In the event of any inconsistency among the GH Engagement Letter, Katz Engagement Letter or as applicable, the Application, the Henrich Declaration, or the Katz Declaration, this Order shall govern.

28. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

29. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30. The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Application.

31. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

32. This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order, the GH Engagement Letter and the Katz Engagement Letter.

**IT IS SO ORDERED.**

Dated: December 8, 2022
     New York, New York

                                              <u>/s/ Philip Bentley</u>
                                              HON. PHILIP BENTLEY
                                              United States Bankruptcy Judge