**DAVIDOFF HUTCHER & CITRON LLP**
*Attorneys for the Debtors*
605 Third Avenue
New York, New York 10158
(212) 557-7400
Robert L. Rattet, Esq.
Derek A. Wolman, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:                                                                              Chapter 11

URBAN COMMONS 2 WEST LLC, ET AL.,[1]                 Lead Case No.: 22-11509 (PB)

                          Debtors.                               (Jointly Administered)
-----------------------------------------------------------X

**APPLICATION FOR ORDER SEEKING AUTHORITY
(1) TO OBTAIN CREDIT FROM AFFILIATE OF EXISTING FIRST PRIORITY
LENDER SECURED BY LIENS ON PROPERTY OF THE ESTATE AND SUPER
PRIORITY CLAIMS PURSUANT TO SECTIONS 364(c)(1) AND 364(d) OF THE
BANKRUPTCY CODE, (2) FOR PRELIMINARY RELIEF PENDING FINAL HEARING,
AND (3) TO MODIFY THE STAY TO PERMIT THE TURNOVER OF ESCROWED
INSURANCE PROCEEDS TO PREPETITION LENDER ON ACCOUNT OF ITS PRE-
PETITION FIRST PRIORITY LIEN THEREON PURSUANT TO SECTION 362(d)(1)**

---

[1] *Jointly administered with Urban Commons 2 West II LLC (Tax ID: \*\*-\*\*\*7987), Urban Commons 2 West III LLC (Tax ID: \*\*-\*\*\*3270), Urban Commons 2 West IV LLC (Tax ID: \*\*-\*\*\*8418), and Urban Commons 2 West Operating Tenant LLC (Tax ID: \*\*-\*\*\*0849), with a shared mailing address of 3334 East Coast Highway, No. 350, Corona Del Mar, CA 92625.*

1

**TO THE HONORABLE PHILIP BENTLEY,
UNITED STATES BANKRUPTCY JUDGE:**

The Application of the above captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their attorneys, Davidoff Hutcher & Citron LLP, respectfully represents as follows:

1. This Court has jurisdiction of this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the District Court dated July 10, 1984 (Ward, Acting C.J.).

2. The Debtor submits this Application pursuant to Sections 362, 363(c)(2) and 364(d) of the Bankruptcy Code (the "Code") and Bankruptcy Rule 4001(c) to the extent that this Application seeks authority to (a) obtain credit from BPC DIP Lender, LLC ("BPC DIP Lender"), an affiliate of BPC Lender, LLC ("BPC Lender"), the Debtors' existing first priority secured lender, pursuant to the DIP Loan Term Sheet annexed hereto as Exhibit A (the "DIP Loan Term Sheet") and, in consideration of BPC DIP Lender providing a post-petition loan pursuant to the DIP Loan Term Sheet (the "DIP Loan"), granting BPC DIP Lender, subject only to the Carve-Out as defined in the DIP Loan Term Sheet, and to the extent advances are made under the DIP Loan, a first priority lien pursuant to Section 364(d) of the Code upon all of the Debtors' assets and a super-priority claim pursuant Section 364(c)(1) of the Code; (b) authorize the modification of the automatic stay under Section 362(d)(1) of the Code to permit the turnover of the Insurance Escrow (as defined below) to BPC Lender to be applied to the Prepetition Obligations; and (c) obtain preliminary, interim relief pending a final hearing in order to preserve the Debtors' estates. In support of the Application, the Debtors respectfully represent as follows:

2

3. On or about November 15, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code (the "Code") and have been continued in possession of their business, management of their property and management of their affairs as debtors-in-possession pursuant to §§1107 and 1108 of the Code.

4. No examiner, trustee or creditor's committee has been heretofore appointed in said proceeding.

5. Pursuant to an order of this Court dated December 9, 2022, Mark D. Podgainy has been appointed as CRO ("CRO") of the Debtors and Bernard A. Katz as Independent Manager ("IM") of the Debtors, with full, exclusive authority to act on behalf and bind the Debtors in the Chapter 11 Cases. This Motion is brought on the consent and direction of the CRO and IM, respectively.

**Background, Acquisition, Debt Structure**

6. The Debtors lease and hold the right to use and operate the hotel located at the Millennium Point Condominium located at 2 West Street, New York, New York 10004 (the "Hotel"). The Hotel is not currently operating. However, the Debtors continue to accrue post - petition obligations in connection with leasing of the Hotel unit, including, inter alia, (a) lease and real estate tax related payments to Battery Park City Authority, the owner of the underlying land ("BPCA"), and (b) The Millennium Point Residential Condominium (the "Residential Board"), which shares the property with the Debtors and has been carrying various utilities and

maintenance related obligations for both the Residential Board and the Debtors since the Hotel went "dark" in early 2020.

7. The Debtors acquired the Hotel back in 2018 from Millennium Partners for the approximate purchase price of $154,000,000, of which $96,000,000 was financed through a purchase money secured loan issued by BPC Lender back to the Debtors. Copies of the relevant loan documents are annexed hereto as Exhibits "B" through "D".

8. In 2021, BPC Lender was acquired by an investment firm known as Silverback.

9. All of the Debtors' assets are subject to the first priority liens and perfected security interests of BPC Lender who, as of the Petition Date, claims to be owed approximately $114 million plus pre-petition legal costs and other related fees.

10. In addition, there are several creditors of the Debtors who may assert a junior lien or security interest against the Hotel and/or the Debtors' assets. See Exhibit "E". Notwithstanding, all such liens and security interests are junior in priority to the liens and security interests of BPC Lender.

## Debtors' Urgent Need for Cash

11. As the Court has been made aware, the Debtors have no cash on hand or current income to generate cash to pay for such ongoing administrative expense obligations. Moreover, the Debtors need cash to pay for, inter alia, (a) insurance, (b) utilities, (c) the CRO and IM, (d) the Chapter 11 Professionals and (e) other ordinary and necessary expenses in order to pay all of their post-petition obligations and maintain the current condition of the Hotel pending the filing

of a Plan and/or consummation of a sale, refinance, or other strategic transaction.

### Pre-Petition Damage to the Hotel and Insurance Proceeds Still in Escrow

12. In 2021, the Hotel experienced a water damage-related casualty resulting in mold infestation to portions of the Hotel. The loss was covered by the Debtor's carrier Sompo International ("Sompo"). The total casualty was adjusted in the insured aggregate amount of $13,409,097.67.

13. The mold remediation phase of the necessary repairs was completed and paid for from the above referenced insurance proceeds in 2021, leaving the Hotel with additional repairs to restore the Hotel and its furniture, fixtures and equipment to pre-loss condition, with an estimated completion cost of approximately $5,600,000.

14. Sompo funded said amounts and placed said sum, along with an earned contingency fee of $1,407,676.20 in escrow with the Debtors' pre-petition insurance counsel, Gauthier, Murphy & Houghtaling LLC ("GM&H"). The contingency fee was paid to GM&H on consent of all parties on or about August 18, 2022. The current amount still being held in escrow is $5,592,323.80 (the "Insurance Escrow"). Pursuant to the Prepetition Loan Documents (defined in the DIP Term Sheet), BPC Lender has a first priority perfected lien on and security interest in, inter alia, the Insurance Escrow, and BPC Lender has the right to apply any insurance proceeds to their loan in their sole and unfettered discretion. See Mortgage and Security Agreement §§ 1.1 and 7.1, Exhibit D. In addition, Highgate Hotels, L.P. ("Highgate"), the Debtors' hotel operator at the time of the loss event, and ERJMJ Investments, LLP ("ERJMJ"), a lienholder junior in

5

priority to the Lender, may assert interests in the Insurance Escrow. However, Highgate has no lien or security interest in, inter alia, the Insurance Escrow, and the amount of the Insurance Escrow is substantially less than the debt owed to BPC Lender and is therefore unsecured with respect to such property of the Debtors' estate.

15. BPC DIP Lender has indicated to the Debtors that it would be interested in making a DIP loan to the Debtors but only if, inter alia, the Insurance Escrow was released to BPC Lender to be applied to the Prepetition Indebtedness.

16. Pursuant to the Prepetition Loan Documents, absent BPC Lender's consent, the Insurance Escrow may not be used for any other purpose, including the completion of the construction arising from the mold remediation.

17. BPC Lender, BPC DIP Lender, the CRO and the IM agree that (a) even if the repairs are made, the Hotel may not be in suitable and acceptable condition as required prior to operation of the Hotel under the strict quality standards required under the Land Lease and the Hotel Unit Lease/Sublease, (b) the Debtors could not otherwise use the Insurance Escrow for ordinary and necessary operating costs and administrative expenses in the Chapter 11 cases, (c) BPC DIP Lender is not willing to make the necessary DIP Loan needed to pay for such necessary expenses unless the Insurance Escrow is released to BPC Lender and applied to the Prepetition Indebtedness, and (d) the Debtors, despite having received informal interest or proposals from at least three other sources of funding, have been unable to obtain a commitment from any other sources of DIP financing on any less stringent terms than being offered under the

6

DIP Loan and/or that would not result in an objection from, inter alia, BPC Lender under a forced "priming" scenario, with the anticipated contested litigation and other potential adverse consequences of such a contested proceeding.

18.     Accordingly, the CRO and the IM have determined, in their independent business judgement, that obtaining DIP financing from BPC DIP Lender on the terms and conditions set forth in the DIP Loan Term Sheet provides the estate with the best chance to maximize a return to creditors in the Chapter 11 cases and is therefore in the best interests of creditors, and that absent obtaining the DIP Loan from BPC DIP Lender, the Chapter 11 cases are likely to be forced into Chapter 7 and forced liquidation. To the contrary, the DIP Loan facility affords the Debtors a chance to maximize value and/or restructure their affairs under a Plan.

**DIP Loan/Term Sheet**

19.     As referred to above, since the onset of the Chapter 11 cases, the Debtors have been in negotiation with BPC Lender concerning (a) the disposition of the Insurance Escrow , (b) the Debtors' need for debtor-in-possession financing and (c) a consensual plan of action in the Chapter 11 cases.

20.     These discussions intensified upon the appointment of the CRO and Independent Manager and, as a result of an arms' length, good faith negotiation, BPC DIP Lender has agreed to provide, subject to and upon the terms set forth in the DIP Loan Term Sheet and the Budgets annexed thereto, DIP financing to the Debtors for an approximate 12 week period, subject to an agreed upon budget and other conditions, all as set forth in the budgets and term sheet annexed

7

hereto and described below in further detail, which will provide the Debtors with badly needed cash to pay for its ongoing administrative and professional expenses pending a marketing and strategic transaction process to be approved by the Court upon further application and motion.

21. Annexed hereto as Exhibit "A" is the DIP loan term sheet negotiated between the Debtor and the Parties ("DIP Term Sheet").

22. The salient points of the DIP Term Sheet may be summarized as follows[2]:

   a. Loan Amount: Up to $6,046,157.00, subject to (a) approved Budgets (See Exhibit A) and (b) release of Insurance Escrow to Lender;

   b. Maturity Date: April 25, 2023;

   c. Interest Rate: 12% per annum;

   d. Default Rate: 15% per annum;

   e. Fees: 3% to accrue and be payable upon Maturity Date;

   f. Interim Funding; Up to $816,425.00, subject to approved Interim Budget (see Exhibit A), on entry of Interim Order; not subject to release of Insurance Escrow;

   g. Priority and Security: (i) 1st priority lien on all of Debtors' assets and (ii) Super-priority claim under Section 364(c)(2), subject to Carve-Out;

---

[2] Capitalized terms not otherwise defined herein shall have the meanings as set forth in the DIP Term Sheet. The parties are respectfully referred to the DIP Term Sheet for its actual terms and provisions. To the extent of any inconsistency between the DIP Term Sheet and this Motion, the terms of the DIP Term Sheet shall control.

    h. Carve-Out: all clerk fees, US Trustee fees, hypothetical Chapter 7 trustee fees not to exceed $25,000, Chapter V causes of action, all fees, costs and expenses of personals and professionals hired by the Debtors or any statutory committee, subject to allowance by the Court

    i. Credit Bidding: Lender entitled to credit bid up to full amount of Prepetition Obligations in connection with any sale of Debtors' asserts;

    j. Case Milestones[3]: (i) Debtors to file motion to retain real estate broker(s) on or before December 22. 2022; (ii) Debtors to file Sale Motion on or before January 24, 2023; (iii) Entry of Bid Procedures Order no later than February 14, 2023; (iv) Debtors to conduct auction sale no later than April 11, 2023; (v) Sale Order to be entered within 5 calendar days after conducting of the Auction; (vi) consummation of sale to winning bidder no later than 9 calendar days after entry of Sale Order; (vii) entry of Bar Date order no later than 30 days after filing of the Debtors' Schedules and Statement of Financial Affairs.

    k. Challenge deadline: Any committee appointed shall have 60 days from entry of final DIP Order (or 75 days for any creditor or party in interest if no committee formed) to file a Challenge to validity, priority or enforceability of Lender's Prepetition liens, security interests or Loan Documents.

---

[3] Dates subject to modification based on (a) Court's calendar and (b) further consent of BPC DIP Lender.

l. No roll-up or cross collateralization: DIP Loan is separate obligation from the Prepetition Loan Documents and the separate loans shall not be cross-collateralized.

## Applicable Legal Standards

23. In order for the Debtor to obtain the necessary and essential post-petition financing it requires, the Debtor must obtain authority to enter into the DIP Loan Term Sheet pursuant to Sections 364(c)(2) and 364(d) of the Code.

24. For the reasons set forth above, there is no possibility that any lender would make post-petition loan advances with simply either an unsecured, junior administrative priority provided by Section 503(b)(1) of the Code or a junior lien provided by Section 364(c)(3) of the Code. In addition, the Debtors have no unencumbered assets. Therefore, BPC DIP Lender requires that, at the very least, it be provided with, to the extent of the post-petition advances to be made under the DIP Loan Term Sheet, a first priority lien upon all of the Debtors' assets and a super priority claim pursuant to Sections 364(c)(1) and (d) of the Code, subject only to the Carve-Out.

25. The Debtors submit that BPC DIP Lender is not willing to make the necessary post-petition advances absent the granting of protection in the form of Section 364(c)(1) and (d) super priority claims and first priority security interests as requested herein.

26. Section 364 (a), (b) and (c) of the Code provides as follows:

"(a) If the trustee is authorized to operate the business of the debtor under section of 1108, 1304, 1203, or 1204 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

(c) If the trustee is unable to obtain unsecured credit allowable under section 502(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt-

>  (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
>  (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
>  (3) secured by a junior lien on property of the estate that is subject to a lien."

(d) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to alien only if –

> (A) The trustee is unable to obtain such credit otherwise; and

11

>   (B) <u>There is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.</u>"

(emphasis supplied)

27. Section 364 of the Code therefore provides for an escalating level of protection for a lender, providing such lender sufficient protection and incentive to grant credit in a speculative and uncertain business environment.

28. In the instant case, BPC DIP Lender is seeking, as security for making post-petition advances under the DIP Loan Term Sheet, a first priority lien, to the extent of all such post-petition advances, upon all of the Debtors' assets pursuant to Section 364(d) of the Code, with the lien to be subject only to the Carve-Out as defined therein, and a super priority claim pursuant to Section 364(c)(1) of the Code, also subject only to the Carve-Out.

29. In addition to the Carve-Out, the liens to be granted to BPC DIP Lender shall neither constitute a lien nor encumber proceeds from recoveries based upon estate causes of action pursuant to Sections 542 through 553 of the Code.

30. As set forth above, the Debtors made substantial pre-petition and post-petition efforts to secure alternative post-petition financing on an unsecured, junior secured and/or or other less stringent basis and has been unable to obtain any lender willing to make such advances on more favorable terms than proposed herein.

32. In light of all of the foregoing, the Debtors respectfully submit that obtaining the badly needed DIP financing under the terms of the DIP Loan Term Sheet is both necessary and in the best interests of the Debtors as well as all of the Debtors' creditors and parties in interest.

### Request for Modification of Stay to Permit Release and Turnover Insurance Escrow to Lender

33. As set forth above, BPC DIP Lender is unwilling to make the necessary DIP Loan to the Debtors unless, inter alia, the Insurance Escrow is released to BPC Lender to apply towards the Prepetition Indebtedness.

34. The Insurance Escrow constitutes property of the Debtors' estate subject to the first priority liens and security interests of BPC Lender. The Insurance Escrow also constitutes cash collateral within the meaning of Section 363(a) of the Code.

35. Section 363(a) of the Code states as follows:

> "In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title."

36. Section 363(c)(2) of the Code provides as follows:

> "The [Debtor] may not use, sell or lease cash collateral under paragraph 1 of this subsection unless-
>
> (A) Each entity that has an interest in such cash collateral consents; or

    (B) The court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."

  37. As set forth above, (a) BPC Lender does not consent to the use of the Insurance Escrow by the Debtors and (b) unless the Insurance Escrow is released to BPC Lender to apply towards the Prepetition Indebtedness, it is unwilling to make the DIP Loan.

  38. Accordingly, and assuming arguendo that the Debtors could obtain court authority to use the Insurance Escrow over BPC Lender's objection, (a) the Insurance Escrow could only be used for repairs in accordance and consistent with (i) the Debtors' insurance policy and (ii) the prior agreements governing the first tranche of insurance proceeds utilized for the mold remediation, and (b) the Debtors would still not have any funds to pay the substantial ongoing administrative and professional obligations of the estates needed to be paid for the Debtors to remain in Chapter 11.

  39. Accordingly, the Debtor hereby requests authority to modify the automatic stay for cause under Section 362(d)(1) of the Code to permit the release of the Insurance Escrow to BPC Lender to apply towards the Prepetition Indebtedness simultaneously with the approval of the DIP Loan as requested herein.

  40. Since the release of the Insurance Escrow to the Lender is a critical condition to BPC DIP Lender's obligation to make the DIP Loan, the Debtors request that in the event that either Highgate or ERJMJ does not consent to the release of the Insurance Escrow to BPC Lender, that the

Court direct GM&H as escrow Agent to release and deliver the Insurance Escrow to BPC Lender upon entry of the Interim Order.

41. BPC Lender is entitled to adequate protection under Sections 361, 362 and 363 of the Code. The Debtors propose to provide such adequate protection by (a) consenting to the lifting of the stay to release the Insurance Escrow to BPC Lender for application to the Prepetition Indebtedness and (2) provide BPC Lender with replacement liens in the Debtor's pre-petition and post-petition assets subject to (a) the first priority Section 364(d) liens being granted BPC DIP Lender hereunder with respect to DIP Loan facility and (b) the Carve-Out, respectively, with the replacement liens continuing in the same nature, extent and validity and priority as existed as of the Petition Date.

42. Together with the rights of any creditors committee to challenge BPC Lender's Prepetition liens for a period of 60 days after the entry of a final order (and other parties 75 days in event no committee is formed), the status quo is being maintained while BPC Lender's interests are being adequately protected within the meaning of sections 361, 362 and 363 of the Code.

**Compliance with Rule 4001-2 of the Local Bankruptcy Rules**

43. Rule 4001-2 of the SDNY Local Bankruptcy Rules requires that certain provisions contained in DIP Loan Term Sheet be highlighted, and that the debtor must provide justification for the inclusion of such highlighted provision(s). The Debtors believes that certain provisions of Local Rule 4001-2 are implicated, but that this Application provides adequate disclosure regarding such provisions. The Debtors have set forth each of the sub-sections of

Rule 4001-2 of the Local Rules and have detailed whether, this Motion contains or contemplates provisions which would fall within the ambit thereof:

- Local Rule 4001-2(a)(1):  This Application and the Budgets annexed hereto set forth the amount of DIP funding the Debtors seek to use.

- Local Rule 4001-2(a)(2): This Application provides that the Debtors may use the DIP Loan proceeds in accordance with the Budgets.

- Local Rule 4001-2(a)(3): This Application and the DIP Loan Term Sheet set out the fees to be incurred in connection with the making of the DIP Loan facility.

- Local Rule 4001-2(a)(4):  This Application describes the effects on existing liens of the granting of First Priority and Replacement liens being provided to the Secured Parties.

- Local Rule 4001-2(a)(5): The DIP Loan Term describes the proposed Carve-Out.

- Local Rule 4001-2(a)(6): There are no cross-collateralization provisions, which elevate prepetition debt to administrative expense (or higher) status.  This Application provides that BPC Lender shall receive a post-petition lien on all the Debtors' assets to the extent of the advances made under the DIP Loan only.

- Local Rule 4001-2(a)(7): The Debtors are not seeking approval of any roll-up provisions.

- Local Rule 4001-2(a)(8): The Debtors do not believe it is seeking approval of any provision that would limit the Court's power or discretion in a material way, or that would interfere with the exercise of the Debtors' fiduciary duties, or restrict the rights and powers, of the Debtors, the CRO, IM, or any committee or other fiduciary.

- Local Rule 4001-2(a)(9):  The Debtors are not seeking approval of any limitation on BPC Lender's to fund certain activities of the Debtor, Debtor, or any committee appointed under sections 1102 or 1114 of the Bankruptcy Code except to the extent set forth in the Budgets.

- Local Rule 4001-2(a)(10): The termination date is set forth in paragraph 22 of this Application.

16

- Local Rule 4001-2(a)(11):  The Debtors are not seeking approval of any provisions relating to change of control.

- Local Rule 4001-2(a)(12): Pursuant to the DIP Loan Term Sheet, the DIP Loan is contingent on the Debtors agreeing to establish a deadline for, or otherwise requiring, the sale of property of the estates.

- Local Rule 4001-2(a)(13): Not applicable.

- Local Rule 4001-2(a)(14): Not applicable.

- Local Rule 4001-2(a)(15):  The Debtors are not seeking approval of any provision for the funding of non-debtor affiliates.

- Local Rule 4001-2(a)(16): The DIP Loan Term Sheet does not contain any provisions that require the debtor to pay an agent's or lender's expenses and attorney's fees in connection with the proposed financing or use of cash collateral, without any notice or review by the Office of the United States trustee, the committee appointed under section 1102 of the Bankruptcy Code (if formed) or, upon objection by either of the foregoing parties, the Court.

- Local Rule 4001-2(a)(17): Defined terms are either defined in this Application or the Application includes a specific reference to where the terms are defined in the DIP Loan Term Sheet.

- Local Rule 4001-2(a)(18) The DIP Term Sheet contemplates the reaffirmation of the Prepetition Loan Documents.

- Local Rule 4001-2(b): The Application describes the Debtors' efforts to obtain financing, the basis on which the Debtors determined that the proposed financing is on the best terms available and that the Debtors believe the DIP Loan is being extended in good faith..

- Local Rule 4001-2(c):  The DIP Loan Term Sheet and the Interim Budget set forth the amount of interim financing needed and, as set forth below, the estates are facing imminent harm without obtaining interim relief hereunder.

- Local Rule 4001-2(d). The Debtors believe that the Budgets contain adequate funding to cover all of the Debtors' ordinary and necessary expenses for the term of the DIP Loan.

44. As a result of all of the foregoing, the Debtors' request for DIP financing on the

terms set forth in the DIP Loan Term Sheet substantially complies with this Court's Local Rules, is reasonable, necessary and should be approved in all respects.

### REQUEST FOR INTERIM, PRE-FINAL HEARING RELIEF

45. In order to obtain Court permission to use cash collateral and borrow funds pursuant to Sections 363 and 364 of the Code, the Debtors are required to comply with Bankruptcy Rules 4001(b) and (c) with respect to this request. Bankruptcy Rule 4001(c) provides as follows:

> "(c) Obtaining Credit.
>
> (2) Hearing. The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. <u>If the motion so requests, the court may conduct a hearing before such 14-day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.</u> (emphasis supplied)"

46. In accordance with Bankruptcy Rule 4001(c)(2), the Debtors request that the Court schedule a preliminary hearing to consider authorizing the Debtors to obtain credit from BPC DIP Lender on an emergency, interim basis pending a final hearing in that BPC Lender is unwilling to extend the Debtors any post-petition credit without the granting on an interim basis of the protections afforded under, inter alia, Sections 364(c)(1) and (d) of the Code, and because the Debtors, absent obtaining interim relief, will have no cash to pay its already accruing and ongoing administrative expenses and will be in serious jeopardy of not being able to remain in Chapter 11 pending a final hearing, causing irreparable harm to the estates and being to the direct and material detriment of the Debtors, their creditors and their estates at large for the reasons set forth

hereinabove.

47. A proposed draft form of the Interim Order is annexed hereto as Exhibit "F".

## GENERAL PROVISIONS REGARDING NOTICE

48. As required under Local Rule 4001-2(e), the Debtors propose to give overnight delivery notice of this Application to all parties required by Bankruptcy Rules 4001(b) and (c). This consists of (a) BPC Lender and BPC DIP Lender, respectively, (b) Highgate, (c) ERJMJ, (d) all of the Debtors' creditors asserting a lien or security interest in any of the Debtors' assets, including the Insurance Escrow, (e) each of the Debtor's twenty (20) largest unsecured creditors, (f) respective counsel for BPCA and the Residential Board, (g) the United States Trustee and (h) all parties filing notices of appearance and requests for all notices.

49. Applicant respectfully requests that the Court dispense with the requirement of filing a Memorandum of Law in connection with this Application, in light of the urgent relief requested herein.

**WHEREFORE**, the Debtors respectfully requests (a) the Court schedule a preliminary, emergency hearing and (b) grant all of the relief sought in the within Application, together with such other and further relief as is just and proper under the circumstances, for all of which no prior request has been made to this or any other Court.

Dated:   New York, New York
            December 19, 2022

                                            Respectfully Submitted,

                                            DAVIDOFF HUTCHER & CITRON LLP
*Proposed Attorneys for the Debtors*
605 Third Avenue
New York, New York 10158
(212) 557-7200


                                            By:*/s/ Jonathan S. Pasternak*
                                                Jonathan S. Pasternak
                                                Robert L. Rattet