Janice Mac Avoy, Esq.
Jennifer L. Rodburg, Esq.
Andrew Minear, Esq.
FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Attorneys for Battery Park City Authority d/b/a
Hugh L. Carey Battery Park City Authority*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| *In re:* | Chapter 11 |
| **URBAN COMMONS 2 WEST LLC, ET AL.,** | Lead Case No. 22-11509 (PB) |
| | (Jointly Administered) |
| Debtors.[1] | |

---

**LIMITED OBJECTION AND RESERVATION OF
RIGHTS OF BATTERY PARK CITY AUTHORITY TO
DEBTORS' APPLICATION FOR ORDER SEEKING AUTHORITY (1) TO
OBTAIN CREDIT FROM AFFILIATE OF EXISTING FIRST PRIORITY
LENDER SECURED BY LIENS ON PROPERTY OF THE ESTATE AND
SUPER PRIORITY CLAIMS PURSUANT TO SECTIONS 364(c)(1)
AND 364(d) OF THE BANKRUPTCY CODE, (2) FOR PRELIMINARY
RELIEF PENDING FINAL HEARING, AND (3) TO MODIFY
THE STAY TO PERMIT THE TURNOVER OF ESCROWED INSURANCE
PROCEEDS TO PREPETITION LENDER ON ACCOUNT OF ITS PRE-
PETITION FIRST PRIORITY LIEN THEREON PURSUANT TO SECTION 362(d)(1)**

Battery Park City Authority d/b/a Hugh L. Carey Battery Park City Authority ("BPCA"), by and through its counsel, Fried, Frank, Harris, Shriver & Jacobson, LLP, hereby submits this limited objection and reservation of rights (this "Limited Objection") in connection with the

---

[1] Jointly administered with Urban Commons 2 West II LLC (Tax ID: **-***7987), Urban Commons 2 West III LLC (Tax ID: **-***3270), Urban Commons 2 West IV LLC (Tax ID: **-***8418), and Urban Commons 2 West Operating Tenant LLC (Tax ID: **-***0849), with a shared mailing address of 3334 East Coast Highway, No. 350, Corona Del Mar, CA 92625.

*Debtors' Application for Order Seeking Authority (1) to Obtain Credit from Affiliate of Existing First Priority Lender Secured by Liens on Property of the Estate and Super Priority Claims Pursuant to Sections 364(c)(1) and 364(d) of the Bankruptcy Code, (2) for Preliminary Relief Pending Final Hearing, and (3) to Modify the Stay to Permit the Turnover of Escrowed Insurance Proceeds to Prepetition Lender on Account of Its Pre-Petition First Priority Lien Thereon Pursuant to Section 362(d)(1)* [ECF No. 71] (the "Motion")[2], and, in support thereof, represents as follows:

## PRELIMINARY STATEMENT

1.  BPCA is the landlord of the above-captioned debtors (collectively, the "Debtors") and the Debtors' primary asset is a leasehold interest in the Hotel (as defined below), which sits upon the Debtors' land. BPCA is also the Debtors' largest unsecured creditor with a prepetition claim in excess of $15 million. BPCA is one of the pivotal parties in interest in the above-captioned cases (collectively, the "Chapter 11 Cases") and its cooperation and support is essential to the successful resolution and disposition of the Chapter 11 Cases.

2.  BPCA is acutely aware of the Debtors' urgent need for financing and generally supports the Debtors' efforts to obtain a financing commitment. In fact, the Debtors' lack of financing and cash flow have directly impacted BPCA, which has gone without rent and other payments due for nearly three years. Wanting the best solution for the Debtors' assets, BPCA has been patient in the Chapter 11 Cases and has stood by while the Debtors, including the newly appointed CRO, worked diligently to negotiate financing that would allow the Debtors to satisfy their rental payment obligations under section 365(d) of the Bankruptcy Code (as defined below) and to propose a path forward for resolution of the Chapter 11 Cases that is not chapter 7 liquidation. Although BPCA is hopeful the Debtors have obtained satisfactory financing, BPCA

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

has concerns regarding the Debtors' proposed financing from BPC Lender (the "DIP Financing") and the relief requested in the Motion.

3.  Specifically, absent BPCA agreeing to interim rent accommodations during the Chapter 11 Cases, the DIP Financing does not provide sufficient financing to enable the Debtors to comply with their obligations under section 365(d) of the Bankruptcy Code. Likewise, the Case Milestones in the Motion conflict with the appraisal process to be agreed upon by the Debtors and BPCA as described below and appear at odds with fostering a robust and competitive sale process, both of which are essential for the Debtors to implement a successful and value-maximizing transaction.

4.  BPCA has been in discussions with the Debtors to address these concerns and is optimistic that it will reach agreement with the Debtors prior to a final hearing on the Motion. However, without such an agreement in place, the Court should be aware of the potential inadequacies contained in the DIP Financing and BPCA reserves all of its rights to contest any and all terms contained in and related to the DIP Financing that assume or imply BPCA's consent and acquiescence.

5.  In addition, BPCA has limited objections to the relief requested in the Debtors' Motion and proposed *Interim Order (1) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Senior Secured Lender, (IV) Modifying the Automatic Stay to Permit the Turnover of Escrowed Insurance Proceeds to Prepetition Senior Secured Lender, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [ECF No. 76] (the "Proposed Interim Order").[3]

---

[3] The Proposed Interim Order was filed on the Bankruptcy Court's (as defined below) docket last evening and, as such, is still subject to review by BPCA. BPCA reserves its rights to supplement this Limited Objection and/or

6.     Specifically, as set forth herein, the Case Milestones are unreasonably tight given the Debtors' circumstances.  The Case Milestones mandate a 56-day sale process that, given the history, condition, and complex legal arrangements governing the Hotel, could not and will not result in a robust, competitive, and ultimately value-maximizing sale transaction.  The Case Milestones also provide parties in interest minimum time to review, negotiate, and contest critical pleadings and requests for relief in the Chapter 11 Cases, including proposed bid procedures and sale motions.

7.     Further, while BPCA is supportive of the Debtors' efforts to obtain the DIP Financing, BPCA must object to the Debtors' untimely request to lift the automatic stay to allow BPC Lender to collect over $5 million in insurance proceeds that would otherwise be used to make needed repairs to the Hotel.  The Debtors have simply not provided sufficient information to allow BPCA – or any party in interest – to assess the relief requested[4], and such relief must be denied pending a final hearing.

## BACKGROUND

8.     Established in 1968, BPCA is a New York State public benefit corporation whose mission is to plan, create, coordinate, and sustain a balanced community of commercial, residential, retail, and park space within its designated 92-acre site on the lower west side of Manhattan.  Through a public/private partnership between BPCA and private developers, Battery Park City has achieved worldwide acclaim as a model for community renewal and become a blueprint for successful urban development.

9.     On November 15, 2022 (the "Petition Date"), Urban Commons commenced the

---

contest the Proposed Interim Order based on its review.  BPCA also reserves all rights to review and contest the finalized agreement for the DIP Financing and any final order proposed for entry by the Bankruptcy Court, which, as of the date hereof, have not been made available for review.

[4] BPCA has also not confirmed and objects to the legal grounds upon which BPC Lender asserts a right to such insurance proceeds.

4

Chapter 11 Cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

10. The Debtors commonly lease and hold the rights to operate the hotel located at 2 West Street, New York, New York 10004 (the "Hotel"). The Hotel is situated on property owned by BPCA.

11. The operation of the Hotel is governed by a number of interrelated arrangements, including that certain Ground Lease, that certain Hotel Unit Lease, and that certain Hotel Unit Sublease, each dated January 1, 2000, between BPCA, as landlord under the Ground Lease and the Hotel Unit Sublease and as tenant under the Hotel Unit Lease, Millennium BPC Development LLC, as tenant under the Ground Lease, and the Debtors as tenant under the Hotel Unit Sublease and as landlord under the Hotel Unit Lease (collectively, the "Leases").

12. The Debtors, as holder of the ground leasehold interest in the Hotel and tenant under the Hotel Unit Sublease, are obligated to make a number of periodic payments to BPCA in accordance with the Leases, including with respect to payments that must be made to BPCA on account of Hotel Base Rent, PILOT, Civic Facilities Payments, Impositions, and any Hotel Percentage Rent (each as defined in the Ground Lease and incorporated into the Hotel Unit Sublease). As of the filing of this Limited Objection, the Debtors have a significant balance in arrears for both prepetition and post-petition obligations to BPCA pursuant to the Leases.[5]

## LIMITED OBJECTION AND RESERVATION OF RIGHTS

A. *POST-PETITION RENT*.

13. Pursuant to section 365(d)(3) of the Bankruptcy Code, the Debtors are obligated

---

[5] BPCA has not received rent and other payments since January 2020; no post-petition payments have been made by the Debtors as required by section 365(d)(3) of the Bankruptcy Code.

5

to "timely perform all the obligations of the debtor … under any unexpired lease of nonresidential real property, until such lease is assumed or rejected…". To date, the Debtors have not made any payments to BPCA on account of post-petition rent and do not propose to do so until the week of January 21, 2023 according to the budget that the Debtors filed with the Motion (the "Budget").[6] In addition, the Hotel Base Rent payments to be made during the Chapter 11 Cases as set forth in the Budget reflect only a provisional amount of rent (to be agreed by BPCA) and is likely well below the Hotel Base Rent that is actually due and owing under the Leases.

14. As the Bankruptcy Court has been advised previously, the Leases contain a "rent re-set" that automatically became effective as of January 1, 2022. Pursuant to the terms of the Leases, as of January 1, 2022, the Debtors are obligated to pay the greater of (i) six percent (6%) of the fair market value of the land allocable to the Hotel and (ii) $618,430 per year. Because of the circumstances surrounding the Debtors and the Hotel prior to the commencement of the Chapter 11 Cases, including the shuttering of the Hotel in 2020 and the cessation of rent and other payments, BPCA was unable to complete the appraisal process set forth in the Leases in order to determine the fair market value of the land allocable to the Hotel for purposes of determining the effective Hotel Base Rent.[7] Completing such process is absolutely essential to determine the Debtors' current obligations under the Leases as of January 1, 2022 and going forward, including after the Petition Date.

15. Shortly after the CRO's proposed retention, on December 1, 2022, BPCA

---

[6] While the Bankruptcy Court may extend the Debtors' time for the performance of its post-petition obligations, it may do so only for cause and may not so extend such time beyond the 60-day period from the Petition Date. The Debtors have not made any showing of cause to extend the time for performance and have not sought any such extension.

[7] Specifically, sections 3.01(a)(1)(ii)(x), 3.01(c), 3.09(a), and 3.09(c) of the Ground Lease and sections 17.01 and 17.02 of that certain Restated Amended Agreement of Lease, dated June 10, 1980, between BPC Development Corporation, as landlord, and BPCA, as tenant, sets forth the appraisal process for determining the fair market value of the land allocable to the Hotel (the "FMV").

6

submitted a proposal to the Debtors that would permit the Debtors to pay a provisional, reduced amount of rent during the Chapter 11 Cases while the parties undertook the appraisal process in an expeditious manner to determine the actual Hotel Base Rent due and owing.[8] Under the proposal, BPCA will have an administrative expense claim for the difference between the actual Hotel Base Rent so determined and the provisional rent actually paid to BPCA prior to the assumption, assumption and assignment, or rejection of the Leases. The proposal set forth an appraisal process and timeline that is consistent with the terms set forth in the Leases. The Debtors' counsel indicated that the Debtors were amenable to the approach proposed by BPCA, and the Budget for the DIP Financing assumes payment of the provisional rent amount during the Chapter 11 Cases and an expense item for a land lease appraisal. BPCA and the Debtors are in the process of negotiating a stipulation (the "Stipulation") to memorialize the terms of the proposal. However, until the Stipulation is finalized and entered by the Bankruptcy Court, BPCA's consent to, and support of, the provisional lease payments set forth in the Budget and the Case Milestones remain conditional on such Stipulation, and BPCA reserves its rights to object to the entry of a final order approving the DIP Financing, including with respect to prompt payment of all post-petition rent and other amounts due and owing under the Leases. Further, the Proposed Interim Order should require that any approved Budget must provide funding sufficient to enable the Debtors to comply with their payment obligations under section 365(d)(3) of the Bankruptcy Code on a timely basis and without extension of the time for performance thereunder.

---

[8] The provisional rent amount set forth in the Budget of $51,537 is based on $618,430 per year, as set forth in section 3.01(a)(1) of the Ground Lease. It cannot be reasonably disputed based on even the most conservative valuation that 6% of the FMV of the land will be significantly greater than that amount. It is reasonable to assume that the actual Hotel Base Rent as of January 1, 2022 far exceeds the provisional rent set forth in the Budget.

7

B.   *CASE MILESTONES*.

16.   BPCA generally supports the Debtors' efforts to expeditiously consummate a value-maximizing restructuring transaction, whether pursuant to a confirmed chapter 11 plan or a sale of assets pursuant to section 363 of the Bankruptcy Code.[9]  However, because the appraisal process required by the Leases described above has not yet commenced, the Case Milestones contained in the DIP Financing may not provide sufficient time to complete this process.

17.   Unless and until the Debtors take the necessary steps as required under the Leases to complete the appraisal process, there is no way for a potential third-party purchaser (even, for that matter, an already-interested party like BPC Lender) to assess the Debtors' go-forward liabilities and account for the same in valuing the Debtors' assets.

18.   Thus, any sale process and timeline must ensure that sufficient time is provided for the fair market value appraisal process to be completed so that the Debtors' rent obligations from and after January 1, 2022 are determined.  BPCA and the Debtors are in discussions regarding an agreed mechanism to determine the Hotel Base Rent for purposes of a sale or other plan process that allows the Debtors to comply with a timeline generally consistent with the Case Milestones, which would be reflected in the Stipulation.  Again, until the Stipulation is finalized and approved, BPCA reserves its rights with respect to the approval of the Case Milestones set forth in the DIP Financing.

19.   Further, the Hotel has been closed and dormant since early 2020, and little has been disclosed about the condition of the premises.  At a minimum, these factors make a robust marketing and sale process extremely difficult, and layering on an unreasonably tight time frame

---

[9] Given BPCA's pivotal role in the Chapter 11 Cases and its participation, support, and consent being essential to the Debtors' ability to successfully consummate a value-maximizing restructuring transaction, BPCA expects to be an active participant in any sale process that the Debtors undertake, with BPCA having notice and consultation rights in connection therewith.

could chill interest and competitive bidding. Aside from concerns related to the appraisal process, the Case Milestones need to provide sufficient time for a sale process that truly maximizes value and finds the right buyer for the Debtors' assets. As noted above, the Case Milestones as proposed essentially put the Chapter 11 Cases on an expedited and emergency timeline to the detriment of creditors and parties in interest and will result in a "fire sale" of the Debtors' assets. Approval of the Case Milestones should be reserved on until the final hearing on the Motion, after parties have been given time to properly consider, respond to, and agree upon the request.

C.  *INSURANCE ESCROW*.

20. By the Motion, at the behest of BPC Lender, upon 2 days' emergency notice, the cash-strapped Debtors are seeking to lift the automatic stay – relief that requires at least 14 days' notice – to allow BPC Lender to collect over $5 million in insurance proceeds that would otherwise be used to make needed repairs to the Hotel. BPCA and other parties in interest have simply not been afforded enough time and information to assess the relief requested. Further, as the Motion makes clear, the release of the Insurance Escrow to BPC Lender is not a prerequisite to BPC Lender's funding of the interim amount of up to $816,425 under the DIP Financing. As such, at a minimum and putting aside the propriety of the request, which is extremely questionable in light of the Debtors' circumstances, consideration of lifting the automatic stay to release the Insurance Escrow to BPC Lender must be adjourned until the final hearing on the Motion, after parties have been given proper notice of the relief and time to properly consider and respond to the request.

21. Of note, the amount at issue in the Insurance Escrow is roughly comparable to the entirety of the DIP Financing. Significant questions remain unanswered by the Motion with

9

respect to the relief requested, including what repairs remain to be completed that the Insurance Escrow was set aside for, how the Debtors plan to make such repairs in order to comply with their own contractual obligations and to make the Hotel a viable enterprise again (whether for purposes of operating the Hotel themselves or selling the asset to a new operator in the Chapter 11 Cases), what rights the various parties have under the Leases with respect to the funds and repairs, BPC Lender's asserted entitlement and control over such funds, and whether "cause" even exists to lift the stay for such request, putting aside BPC Lender's desires to receive a paydown and minimize its credit exposure.

D. *RESERVATION OF RIGHTS*.

22. As noted above, as of the filing of this Limited Objection, BPCA is engaging in discussions with the Debtors related to the Stipulation and relief requested in the Motion. Accordingly, this Limited Objection is submitted without prejudice to, and with a full reservation of, BPCA's rights to supplement and amend this Limited Objection and introduce evidence at any hearing relating to this Limited Objection, and without in any way limiting any other rights of BPCA to further object to the Motion on any grounds as may be appropriate, including to seek to compel the Debtors to comply with their obligations under section 365(d) of the Bankruptcy Code to pay the full amount of their post-petition rent liabilities.

## CONCLUSION

BPCA stands ready to support the Motion and the Debtors' obtaining of financing to fund the Chapter 11 Cases on a final basis as long as its concerns and objections in this Limited Objection are addressed (either through the Stipulation or otherwise). It is BPCA's interest to see the Chapter 11 Cases end in a value-maximizing, successful outcome that leads to the

10

productive and best use of the Hotel. BPCA hereby reaffirms that all of its rights and remedies at law, at contract, in equity, or otherwise arising under the Leases are reserved.

WHEREFORE, BPCA respectfully submits this Limited Objection to the Motion and requests that the Bankruptcy Court (i) deny the relief requested in the Motion and entry of the Proposed Interim Order to the extent it: (a) approves the Case Milestones and (b) lifts the automatic stay so as to allow the release of the Insurance Escrow as provided in the Proposed Interim Order, (ii) reserve on such matters for consideration in connection with a final order following a final hearing on the Motion, and (iii) enter such other relief as it deems just and proper.

Dated:   New York, New York
         December 21, 2022

Respectfully Submitted,

By: /s/ *Janice Mac Avoy*
Janice Mac Avoy, Esq.
Jennifer L. Rodburg, Esq.
Andrew Minear, Esq.
FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Attorneys for Battery Park City Authority d/b/a Hugh L. Carey Battery Park City Authority*

11