**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------X

In re:                                                          Chapter 11

URBAN COMMONS 2 WEST LLC, ET AL.,[1]

                                                                Case Nos. 22-11509 (PB)
                                                                (Jointly administered)

                        Debtors.

----------------------------------------------------------X

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SENIOR SECURED LENDER, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion"),[2] of Urban Commons 2 West LLC and each of its affiliates that are debtors and debtors-in-possession (each, a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 362(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), seeking entry of an interim order ("Interim Order") among other things: (1) authorizing the Debtors to obtain post-petition financing ("DIP Financing") pursuant to a super-priority, senior secured debtor-in-possession term loan subject to the terms and conditions set forth in that certain DIP Loan Term Sheet attached **to the Motion as**

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of the Debtors' taxpayer identification numbers are as follows: Urban Commons 2 West II LLC (7987), Urban Commons 2 West III LLC (3270), Urban Commons 2 West IV LLC (8418), and Urban Commons 2 West Operating Tenant LLC (0849), with a shared mailing address of 3334 East Coast Highway, No. 350, Corona Del Mar, CA 92625.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or the DIP Loan Term Sheet (as defined below), as applicable.

**Exhibit A-1** (as amended, supplemented, or otherwise modified from time to time, the "DIP Loan Term Sheet"), by and among the Debtors and the DIP Lender, in the aggregate principal amount not to exceed $6,046,157.00 (the "DIP Loan"), of which up to $816,425.00 will be available in accordance with the terms of the DIP Term Sheet and Initial DIP Budget upon entry of this Interim Order (the "Initial Draw") and the remainder to be available in accordance with the terms of the DIP Loan Term Sheet upon the date of entry of the Final Order; (2) authorizing the Debtors to execute, deliver and perform under the DIP Loan Term Sheet and all other loan documentation related to the DIP Loan, (collectively, with the DIP Loan Term Sheet and this Interim Order and, upon entry thereof, the Final Order, the "DIP Documents"); (3) authorizing the Debtors to incur obligations with respect to loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees, costs, expenses and other liabilities, all other obligations due and payable under the DIP Documents (collectively, the "DIP Obligations"); (4) subject to the Carve-Out (as defined herein), granting to the DIP Lender an allowed super-priority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations; (5) subject to the Carve-Out, granting to the DIP Lender valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(d) of the Bankruptcy Code on all prepetition and post-petition property of the Debtors and all proceeds thereof; (6) authorizing the Debtors to use proceeds of the DIP Loan solely in accordance with this Interim Order, the Initial DIP Budget and the DIP Documents; (7) authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable to the extent provided in, and in accordance with, the DIP Documents; (8) modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors to effectuate the terms and provisions of this Interim

2

Order, the DIP Documents and, upon entry thereof, the Final Order, including to release and

transfer the escrowed insurance proceeds to the DIP Lender; (9) modifying the automatic stay to

permit and direct the turnover of the Insurance Escrow to BPC Lender to apply towards the

Prepetition Debt; and (10) scheduling a final hearing (the "<u>Final Hearing</u>") to consider final

approval of the DIP Loan Term Sheet and use of cash collateral pursuant to a proposed final

order (the "<u>Final Order</u>"), as set forth in the Motion and the DIP Documents filed with this

Court. **[PB 12/28/2022]**

The Court having considered the interim relief requested in the Motion, the exhibits

attached thereto, the available DIP Documents, and the evidence submitted and arguments made

at the interim hearing held on December 22, 2022 (the "<u>Interim Hearing</u>"); and in accordance

with the Order Shortening Time entered by the Court on December 19, 2022, due and sufficient

notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002,

4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Interim Hearing having

been held and concluded; and all objections, if any, to the interim relief requested in the Motion

having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the

interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to

the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable and in

the best interests of the Debtors and their estates, and is essential for the continued operation of

the Debtors and the preservation of the value of the Debtors' assets; and it appearing that the

Debtors entry into the DIP Documents is a sound and prudent exercise of the Debtors' business

judgment; and after due deliberation and consideration, and good and sufficient cause appearing

therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    <u>Petition Date</u>.  On November 15, 2022 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>").  By order dated November 23, 2022, these cases are jointly administered under Case No. 22-11509.

**B.**    <u>Debtors In Possession</u>.  Since the Petition Date, the Debtors have remained in possession of their assets and are debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No **trustee or examiner** has been heretofore appointed in the Bankruptcy Cases. **[PB 12/28/2022]**

C.    <u>Jurisdiction and Venue</u>.  This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e),

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

364(c), 364(d)(1), 364(e), and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001,
6004 and 9014 and Local Rules 2002-1, 4001-2, and 9014-2. The Debtors and the DIP Lender
consent to the entry of this Interim Order to the extent that it is later determined that the Court,
absent consent of the parties, cannot enter final orders or judgments in connection with the Motion
consistent with Article III of the United States Constitution.

D.    Creditors' Committee.  On December 21, 2022, the United States Trustee for the
Southern District of New York (the "U.S. Trustee") appointed an official committee of
unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code
(the "Committee"). **The Committee has selected the law firm of SilvermanAcampora LLP as
proposed counsel. [PB 12/28/2022]**

E.    Notice. The Interim Hearing was held pursuant to the Order Shortening Time and
Bankruptcy Rule 4001(b)(2) and (c)(2). Under the circumstances, the notice given by the
Debtors of the Motion, the relief requested therein, and of the Interim Hearing, complies with
Bankruptcy Rules 2002, 4001(b), and (c) and 9014 and Local Bankruptcy Rules 4001-2 and
9013-1.

F.    Cash Collateral.  As used herein, the term "Cash Collateral" shall mean all of the
Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or
will constitute "cash collateral" of BPC Lender or BPC DIP Lender within the meaning of
section 363(a) of the Bankruptcy Code.

G.    Debtors' Stipulations.  Subject to the limitations contained in paragraph 23
hereof, and after consultation with their attorneys, the Debtors admit, stipulate and agree that:

5

(i)      Prepetition Senior Secured Loan.  On or about September 20, 2018, BPC Lender LLC (the "Prepetition Lender"), an affiliate of DIP Lender, made a loan to Debtors Urban Commons 2 West LLC, Urban Commons 2 West II LLC, and Urban Commons 2 West III LLC (collectively, the "Debtor Borrowers") in the original principal amount of $96,000,000.00 (the "Loan").  The terms of the Loan are set forth in a Loan Agreement dated as of September 20, 2018 (the "Prepetition Loan Agreement").  On or about September 20, 2018, in order to evidence the indebtedness under the Loan, Debtor Borrowers executed and delivered to Prepetition Lender a certain Promissory Note (the "Note"), dated September 20, 2018, in which Debtor Borrowers promised to pay Prepetition Lender the principal sum of $96,000,000.00, plus interest at the rate set forth in the Prepetition Loan Agreement.  To secure repayment of all amounts due to Prepetition Lender under the terms of the Note, Debtor Borrowers executed and delivered to Prepetition Lender a Mortgage and Security Agreement (the "Mortgage"), in the original principal amount of $96,000,000.00, dated as of September 20, 2018.  The Mortgage was duly recorded on October 5, 2018, in the Register's Office in CRFN 2018000332622, and the recording tax thereon was duly paid.  To further secure repayment of all amounts due under the terms of the Note, Mr. Howard Wu and Mr. Taylor Woods (together, the "Guarantors") executed and delivered to Prepetition Lender a Guaranty of Recourse Obligations, dated as of September 20, 2018 (the "Guaranty").  On or about December 19, 2018, Debtors executed and delivered to Prepetition Lender a First Amendment to Loan Agreement and Omnibus Amendment to Loan Documents (the "First Amendment"), dated as of December 19, 2018, in which the Debtors replaced Debtor Borrowers as the borrowers under the Loan Documents.  Also on or about December 19, 2018, Debtors executed and delivered to Prepetition Lender a Mortgage and Security Agreement Assumption Agreement (the "Assumption Agreement"), dated as of

6

December 19, 2018, in which the Debtors assumed all obligations under the Mortgage.  The Loan Agreement, Note, Mortgage, Guaranty, First Amendment and Assumption Agreement, and all other documents executed in connection with the Loan, collectively constitute the "Prepetition Loan Documents."

(ii)    Prepetition Secured Obligations. As of the Petition Date, the Debtor Borrowers were justly and lawfully indebted and liable to the Prepetition Lender, without defense, counterclaim or offset of any kind, in the aggregate outstanding amount of not less than $116,000,000, which amount includes, as of the Petition Date, outstanding principal balance and accrued interest of $112,419,250.84 (as defined in the Prepetition Loan Documents) (all of the foregoing collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtor Borrowers' or the Guarantors' obligations pursuant to, or secured by, the Prepetition Loan Documents, including all Obligations (as defined in the Prepetition Loan Documents, and all interest, fees, prepayment premiums, early termination fees, costs and other charges, the "Prepetition Debt").

(iii)    Prepetition Liens. As more fully set forth in the Prepetition Loan Documents, (a) prior to the Petition Date, the Debtor Borrowers and each Prepetition Guarantor granted to the Prepetition Lender a security interest in and continuing lien (the "Prepetition Liens") on (1) all of the assets and property of the Debtor Borrowers that existed as of the Petition Date (the "Prepetition Collateral").

7

(iv)    <u>Validity, Perfection and Priority of Prepetition Liens and Prepetition Debt</u>. The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Lender for fair consideration and reasonably equivalent value; (b) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral; (c) the Prepetition Debt constitutes legal, valid, binding, and non-avoidable obligations of the Debtors and the Guarantors enforceable in accordance with the terms of the applicable Prepetition Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Debt exist, and no portion of the Prepetition Liens or Prepetition Debt is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Prepetition Lender or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Loan Documents; and (f) the Debtors waive, discharge, and release any right to challenge any of the Prepetition Debt, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens securing the Prepetition Debt.

(v)    <u>No Control</u>. The Prepetition Lender does not control (or has not in the past controlled) the Debtors or their properties or operations, does not have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders of the

Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Loan Documents.

(vi)     <u>No Claims or Causes of Action</u>. No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Lender, the DIP Lender and each of their respective Representatives (as defined herein) (in each case in their capacity as such) under or relating to any agreements by and among the Debtors and the Prepetition Lender in existence as of the Petition Date.

(vii)     <u>Debtors' Release</u>. Effective as of the date of entry of this Interim Order, each of the Debtors and the Debtors' estates, on its own behalf (but not on behalf of any creditors or committee appointed in the Chapter 11 Cases), and on behalf of its and their respective past, present and future predecessors, successors, subsidiaries, and assigns, hereby, to the extent permitted by applicable law, absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Lender, the DIP Lender and each of their respective Representatives (as defined herein) (collectively, the "<u>Released Parties</u>"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, (collectively, the "<u>Released Claims</u>") in each case arising out of or related to (as applicable) any prepetition financing agreements with the Debtors or their subsidiaries, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of

the transactions and agreements reflected thereby, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order. For the avoidance of doubt, nothing in this release shall release the DIP Lender with respect to any post-petition conduct or agreements nor relieve the DIP Lender or the Debtors of their Obligations under the DIP Documents from and after the date of this Interim Order.

        H.      <u>Findings Regarding the DIP Financing and Use of Cash Collateral</u>.

        (i)      Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the Debtors to obtain financing pursuant to the DIP Documents.

        (ii)      The Debtors have an immediate and critical need to obtain the DIP Financing and to use the Prepetition Collateral (including Cash Collateral) in order to permit, among other things, to make capital expenditures and to satisfy other working capital and operational needs and to fund expenses of these Chapter 11 Cases in accordance with the Initial DIP Budget. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, the incurrence of new indebtedness under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

        (iii)      The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1),

364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting to the DIP Lender the DIP Liens and the DIP Super-priority Claims (as defined herein) and incurring the Adequate Protection Obligations (as defined herein), in each case subject to the Carve-Out, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(iv)    Based on the Motion and the record presented to the Court at the Interim Hearing, the terms of the DIP Financing, the terms of the adequate protection granted to the Prepetition Lender discussed herein (the "Adequate Protection"), and the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the Debtors exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(v)    The DIP Financing, the Adequate Protection and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and the Prepetition Lender, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: all loans made to the Debtors pursuant to the DIP Documents and any DIP Obligations shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(vi) ~~The Prepetition Lender has acted in good faith regarding the DIP Financing and the Debtors' use thereof to fund the administration of the Debtors' estates (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens (as defined herein)), in accordance with the terms hereof, and the Prepetition Lender (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.~~ **[PB 12/28/2022]**

(vi) The Prepetition Lender is entitled to the Adequate Protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court at the Interim Hearing, and for purposes of the Interim Order only, the terms of the proposed adequate protection arrangements are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral, and, to the extent their consent is required, the Prepetition Lender has consented or is deemed hereby to have consented to the use of the Prepetition Collateral on the terms set forth in this Interim Order, and the priming of the Prepetition Liens by the DIP Liens pursuant to the DIP Documents solely in connection with the Interim Order; provided that nothing in this Interim Order or the DIP Documents shall (a) be construed as the affirmative consent by the Prepetition Lender for the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order to the extent such consent has been or will be given, (b) be construed as a consent by any party to the terms of the Final Order, any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior), (c) prejudice, limit or otherwise impair the rights of the

12

Prepetition Lender to seek new, different or additional adequate protection or assert the interests

of the Prepetition Lender, and the rights of any other party in interest, including the Debtors, to

object to such relief are hereby preserved, or (d) prejudice, limit or otherwise impair the ability

of the Prepetition Lender to (i) not consent to the use of the Prepetition Collateral in connection

with the Final Order or (ii) assert that any proposed adequate protection in the Final Order is

insufficient.

(vii)    The Debtors have prepared and delivered to the DIP Lender an initial

budget (the "Initial DIP Budget") and a full budget (the "Full Budget"), **attached to the Motion**

**as Exhibit A-2**. The Initial DIP Budget reflects, among other things, the Debtors' anticipated

disbursements for each calendar week, and is in form and substance satisfactory to the DIP

Lender. The Initial DIP Budget may be modified, amended and updated from time to time in

accordance with the DIP Documents, and once approved by the DIP Lender, shall supplement

and replace the Initial DIP Budget (the Initial DIP Budget, the initial Full Budget and each

subsequent approved budget, shall constitute without duplication, an "Approved Budget"). The

Debtors believe that the Initial DIP Budget is reasonable under the facts and circumstances. The

DIP Lender is relying, in part, upon the Debtors' agreement to comply with the Approved

Budget, the other DIP Documents and this Interim Order in determining to enter into the post-

petition financing arrangements provided for in this Interim Order. **[PB 12/28/2022]**

I.    Immediate Entry. Sufficient cause exists for immediate entry of this Interim Order

pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). Absent granting the relief set forth in this

Interim Order, the Debtors' estates will be immediately and irreparably harmed. Consummation

of the DIP Financing and the use of Prepetition Collateral, in accordance with this Interim Order

and the DIP Documents are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

J.    <u>Continuation of Prepetition Liens</u>. The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens in light of the integrated nature of the DIP Documents and the Prepetition Loan Documents. Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    <u>Motion Granted</u>. The interim relief sought in the Motion is granted, the interim financing described herein is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, in each case **to the extent set forth in this Interim Order and** subject to the terms and conditions set forth ~~in the DIP Documents and this Interim Order~~ **herein and (to the extent not inconsistent with this Interim Order) in the DIP Documents**. All objections to this Interim Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled on the merits. **[PB 12/28/2022]**

2.    <u>Authorization of the DIP Financing and the DIP Documents</u>.

(a)    The Debtors are hereby authorized to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Documents and such other and further acts as may be necessary, appropriate or desirable in connection therewith. The Debtors are hereby authorized to borrow money pursuant to the DIP Documents.

(b)    In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized to perform all acts, to make, execute and deliver all instruments,

certificates, agreements, charges, deeds and documents and to pay all fees, expenses and indemnities in connection with or that may be reasonably required, necessary, or desirable for the Debtors performance of their obligations under or related to the DIP Financing, including, without limitation: (i) the execution and delivery of, and performance under, each of the DIP Documents; (ii) the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Debtors and the DIP Lender may agree, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees and other expenses (including attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder. Updates and supplements to the Approved Budget required to be delivered by the Debtors under the DIP Documents shall not be considered amendments or modifications to the Approved Budget or the DIP Documents and no further approval of this Bankruptcy Court shall be required therefor; (iii) the non-refundable payments to the DIP Lender of all fees, including professional fees referred to in the DIP Documents (or in any separate letter agreements, including, without limitation, any fee letters between the Debtors and the DIP Lender) in connection with the DIP Financing (collectively, the "DIP Fees and Expenses"), without the need to file retention motions or fee applications, but subject to the review procedures set forth in paragraph 20; and (iv) the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and the DIP Super-priority Claims and perfection of the DIP Liens and DIP Super-priority Claims as

permitted herein and therein, and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith, in each case in accordance with the terms of the DIP Documents.

(c)     All the terms and provisions of the DIP Loan Term Sheet attached to the Motion, other than (i) the case milestones and (ii) the release of the insurance proceeds in the Insurance Escrow to BPC Lender, are hereby incorporated herein and approved.

3.     <u>DIP Obligations</u>. Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute legal, valid, binding and non-avoidable obligations of the Debtors enforceable against each Debtor and their estates in accordance with the terms of the DIP Documents and this Interim Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>"). Upon execution and delivery of the DIP Documents, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Lender under, or secured by, the DIP Documents or this Interim Order, including all principal, interest, costs, fees, expenses, indemnities and other amounts under the DIP Documents (including this Interim Order). The Debtors shall be jointly and severally liable for the applicable DIP Obligations. Except as permitted hereby, no obligation, payment, transfer, or grant of security hereunder or under the DIP Documents to the DIP Lender (including their Representatives) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state

16

Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.    Carve-Out. (a) As used in this Interim Order, the term "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee (the "U.S. Trustee") under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, if any, pursuant to 31 U.S.C. § 3717; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) to the extent allowed by the Bankruptcy Court at any time, whether by interim or final compensation or other order, all accrued and unpaid claims for fees, costs and expenses incurred by persons or firms retained by the Debtors or any official committee appointed pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code, including the CRO and Independent Manager. The Carve-Out shall be subject to the restrictions on the use of proceeds of the DIP Loans and Cash Collateral.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Lender in any way to pay compensation to or reimburse expenses of any estate professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or expense reimbursement.

5.    DIP Super-priority Claims. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed super-priority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) with

priority over any and all claims against the Debtors, now existing or hereafter arising, of any

kind whatsoever, including, without limitation, all administrative expenses of the kind specified

in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses

or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a),

507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection

Obligations), whether or not such expenses or claims may become secured by a judgment lien or

other non-consensual lien, levy or attachment, which allowed claims (the "DIP Super-priority

Claims") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered

administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP

Super-priority Claims shall be payable from and have recourse to all pre-petition and post-

petition property of the Debtors and all proceeds thereof but, subject to the entry of the Final

Order, including any proceeds or property recovered, unencumbered or otherwise, from any

avoidance actions, whether by judgment, settlement or otherwise (the "Avoidance Proceeds") in

accordance with the DIP Documents and this Interim Order, subject only to the Carve-Out as set

forth in this Interim Order and the DIP Documents. The DIP Super-priority Claims shall be

entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this

Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6.    DIP Liens.  As security for the DIP Obligations, effective and automatically and

properly perfected upon the date of this Interim Order without the necessity of the execution,

recordation or filing by the Debtors or the DIP Lender of mortgages, security agreements,

control agreements, pledge agreements, financing statements, notation of certificates of title for

titled goods or other similar documents, instruments, deeds, charges or certificates, or the

possession or control by the DIP Lender of, or over, any collateral, the following valid, binding,

18

continuing, enforceable and non-avoidable security interests and liens (all security interests and liens granted to the DIP Lender pursuant to this Interim Order and the DIP Documents, the "DIP Liens") are hereby granted to the DIP Lender (all property identified below being collectively referred to as the "DIP Collateral"); provided that notwithstanding anything herein to the contrary, the DIP Liens shall be subject and junior to the Carve-Out in all respects: (i)  pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first (subject only to the Carve-Out and not including Article V causes of action) priority senior security interest in and lien upon all post-petition property of the Debtors, including, without limitation, any and all unencumbered cash of the Debtors and any investment of cash, inventory, accounts receivable, other rights to payment, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, of all the foregoing (the "Postpetition DIP Collateral"); and (ii) pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first (subject only to the Carve-Out) priority senior priming security interest in and lien (the "DIP Priming Liens") upon all of the Debtor's pre-petition assets regardless of where located, (the "Pre-Petition Collateral"), which DIP Priming Liens shall prime in all respects the interests of the Prepetition Lender arising from the current and replacement liens of the Prepetition Lender.

19

7.    <u>Protection of DIP Lender's Rights</u>.

(a)    So long as there are any DIP Obligations outstanding or the DIP Lender has any outstanding DIP Commitments under the DIP Documents, the Prepetition Lender shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Loan Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral, including in connection with the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, the DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent the transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral other than as necessary to give effect to this Interim Order other than, (x) solely as to this clause (iii), the DIP Lender filing financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or (y) as may be required by applicable state law or foreign law to complete a previously commenced process of perfection or to continue the perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; and (iv) deliver or cause to be delivered, at the Debtors' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any ordinary course sale or court-approved disposition.

(b)    To the extent any Prepetition Lender has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP

20

Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Prepetition Lender shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Lender.

(c)    Any proceeds of Prepetition Collateral subject to the Primed Liens received by any Prepetition Lender, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by the Prepetition Lender, shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Lender in the same form as received, with any necessary endorsements. The DIP Lender is hereby authorized to make any such endorsements as agent for the Prepetition Lender. This authorization is coupled with an interest and is irrevocable.

(d)    The automatic stay is hereby modified to the extent necessary to permit the DIP Lender to take any or all of the following actions, at the same or different time, in each case without further order or application of the Court: (i) immediately upon the occurrence of an Event of Default set forth in the DIP Documents, declare (A) the termination, reduction or restriction of any applicable further DIP Commitment to the extent any such DIP Commitment remains, (B) all applicable DIP Obligations to be immediately due, owing and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP Lender, notwithstanding anything herein or in any DIP Document to the contrary, and (C) the termination of the applicable DIP Documents as to any future liability or obligation of the DIP Lender with respect to the DIP Financing (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations), and (ii) upon the occurrence and continuance of an Event of Default and the giving of seven (7) business days' prior written notice (the "Remedies

Notice Period") via email to counsel to the Debtors, any official creditors' committee, the U.S. Trustee, counsel to the Prepetition Lender and DIP Lender, which notice shall also be filed on the docket of the Bankruptcy Court, unless this Bankruptcy Court orders otherwise during the Remedies Notice Period after a hearing, (A) exercise all rights and remedies available under the applicable DIP Documents and otherwise available under applicable law whether or not the maturity of any of the DIP Obligations shall have been accelerated and (B) withdraw consent to the Debtors' continued use of applicable Cash Collateral and DIP Financing.

(e)      During the Remedies Notice Period, the Debtors shall be permitted to cure any Event of Default and to use Cash Collateral solely to (A) pay critical administrative expenses strictly in accordance with the Approved Budget (without variance) or as otherwise agreed by the DIP Lender, (B) fund the Carve-Out Account and (C) seek a hearing before the Bankruptcy Court. During the Remedies Notice Period, the Debtors, any official creditors' committee and/or any party in interest shall be entitled to seek an emergency hearing with the Bankruptcy Court within the Remedies Notice Period solely for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing. Except as set forth in this Interim Order, the Debtors shall waive their right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP Lender set forth in this Interim Order or the DIP Documents.

(f)      No rights, protections or remedies of the DIP Lender granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the

Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

8.     <u>Limitation on Charging Expenses Against Collateral</u>.  Subject to the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral generated therefrom) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender or Prepetition Lender, as applicable, and no consent shall be implied from any other action, inaction or acquiescence by the DIP Lender or the Prepetition Lender, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Lender or the Prepetition Lender to any charge, lien, assessment or claims against the DIP Collateral (including Cash Collateral) under section 506(c) of the Bankruptcy Code or otherwise.

9.     <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this Interim Order, the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

10.    <u>Use of Cash Collateral</u>.  The Debtors are hereby authorized, subject to the terms and conditions of this Interim Order, to use all Cash Collateral in accordance with the DIP Documents and Approved Budget; <u>provided</u> that (a) the Prepetition Lender is granted the

Adequate Protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

11.    <u>Disposition of DIP Collateral</u>. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as otherwise permitted by the DIP Documents or an order of the Court.

12.    <u>Adequate Protection</u>. The Prepetition Lender is entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of its interests in all Prepetition Collateral in an amount equal to the aggregate diminution in the value of such parties' interests in the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any diminution resulting from the priming of the Prepetition Liens by the DIP Liens pursuant to the DIP Documents and this Interim Order, the payment of any amounts under the Carve-Out or pursuant to this Interim Order, the Final Order or any other order of the Bankruptcy Court or provision of the Bankruptcy Code or otherwise, or the imposition of the automatic stay in respect of the Prepetition Collateral (the "<u>Collateral Diminution Claims</u>"). In consideration of the foregoing, the Prepetition Lender is hereby granted the following as Adequate Protection for, and to secure repayment of an amount equal to such Collateral Diminution Claims, (collectively, the "<u>Adequate Protection Obligations</u>"): (a) The Prepetition Lender is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements) in the amount of their respective Collateral Diminution Claims, a valid, perfected replacement security interest in and lien upon all pre-petition and post-petition

24

property of the Debtors, (the "Adequate Protection Liens"), subject to the Carve-Out, and in the same order of priority that existed as of the Petition Date.

13.    Maintenance of Collateral.  The Debtors shall continue to maintain and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Loan Documents and the DIP Documents.

14.    Reservation of Rights.   Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Bankruptcy Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Lender and any other parties' holding interests that are secured by Primed Liens; *provided* that the Prepetition Lender (subject to any applicable contractual limitations on such rights), may request further or different adequate protection and the Debtors or any other party in interest may contest any such request.

15.    Perfection of DIP Liens and Adequate Protection Liens.

(a)    Without in any way limiting the automatically valid and effective perfection of the DIP Liens and the Adequate Protection Liens granted in this Interim Order, the DIP Lender and the Prepetition Lender  are hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, including as may be reasonably required or deemed appropriate by the DIP Lender, and the Prepetition Lender, under applicable local laws, or take possession of or control over cash or securities, or to amend or modify security documents, or enter into, amend or modify intercreditor agreements, or to subordinate existing liens and any other similar action or action in connection

25

therewith or take any other action in order to document, validate and perfect the liens and security interests granted to them hereunder (the "Perfection Actions"). Whether or not the DIP Lender or the Prepetition Lender shall take such Perfection Actions, the liens and security interests granted pursuant to this Interim Order shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order. Upon the request of the DIP Lender or the Prepetition Lender, each of the Debtors, without any further consent of any party, and at the sole cost of the Debtors as set forth herein, is authorized and directed to take, execute, deliver and file such actions, instruments and agreements (in each case, without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve and enforce the DIP Liens in all jurisdictions, including all local law documentation therefor determined to be reasonably necessary by the DIP Lender. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)    A certified copy of this Interim Order may, in the discretion of the DIP Lender and the Prepetition Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept a certified copy of this Interim Order for filing and/or recording, as applicable. The automatic stay shall be modified to the extent necessary to permit the DIP Lender and the Prepetition Lender to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

16.    DIP Loan Term Sheet Events of Default.  The DIP Loan shall be subject to each of the following Events of Default (which can be waived by the DIP Lender in its absolute discretion):

26

- The Debtors' filing of a plan of reorganization in the Chapter 11 Cases that has not been consented to by the DIP Lender unless such plan pays the DIP Obligations in full, in cash, on the effective date or upon such other terms as may be agreed upon by the DIP Lender in its sole discretion.

- Any of the Debtors shall file a pleading seeking to vacate or modify any of the DIP Orders over the objection of the DIP Lender.

- The Chapter 11 Cases shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

- A default, subject to any applicable grace and/or cure periods, by the Debtors under the terms of the DIP Documents.

- Appointment in the Chapter 11 Cases of a Chapter 11 trustee or examiner with enlarged powers.

- Any sale of all or substantially all of the Debtors' assets unless (i) such sale is conducted in accordance with the Bid Procedures (as defined in the DIP Loan Term Sheet) and (ii) the proceeds of such sale will indefeasibly satisfy the DIP Obligations in full in cash.

- The Debtors filing of (or supporting another party in the filing of) a motion seeking entry of, or the entry of an order by the Bankruptcy Court, granting any super-priority claim or lien (except as contemplated herein) which is senior to or *pari passu* with the DIP Obligations.

- The granting of any lien senior to or *pari passu* with the DIP Loan.

- Any successful Challenge respecting the Prepetition Loan Documents.

- The Debtors' failure to meet or comply with any deadline or milestone set forth herein.

- The use or application of any cash or proceeds in a manner not provided for in the Approved Budget.

17.    <u>Termination</u>.  Upon the occurrence and during the continuance of an Event of Default, the DIP Lender may, by written notice to the Debtors, their counsel, the U.S. Trustee and counsel for the Committee or any other official committee appointed in the Chapter 11 Cases, (i) terminate the DIP Loan and/or the DIP Loan Term Sheet, as applicable, (ii) declare all

27

of the obligations in respect of or related to the DIP Loan Term Sheet and the other DIP Documents to be immediately due and payable and (iii) exercise all rights and remedies under the DIP Orders.

18.    <u>Financial Reporting</u>.  The Debtors shall provide the DIP Lender with a detailed, line by line, computation of actual to budget deviations on a bi-weekly basis beginning in the week following entry of the Interim DIP Order. For the foregoing analysis, the Debtors shall provide brief commentary for each material line-item deviation (both favorable and unfavorable) when comparing actuals to the Approved Budget for all variances greater than 10% and $25,000.

19.    <u>Preservation of Rights Granted Under This Interim Order</u>.

(a)    Other than the Carve-Out and other claims and liens expressly granted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order (or any final order) to the DIP Lender or the Prepetition Lender shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for

any liability of the Debtors; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Debtors.

(b)     The occurrence and continuance of any event of default in violation of any of the terms of this Interim Order, shall, after notice by the DIP Lender (acting in accordance with the terms of this Interim DIP Order) in writing to the Debtors, its lead restructuring counsel (Davidoff Hutcher & Citron LLP)), the U.S. Trustee, and lead counsel to the Committee (and, in the case of violation of any terms of this Interim Order, and after indefeasible payment in full in cash of the DIP Obligations and termination of the DIP Loan, notice to such parties by the Prepetition Lender, constitute an event of default under this Interim Order (an "Interim Order Event of Default") and, upon such notice of any such Interim Order Event of Default, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Documents. Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code: (A) the DIP Super-priority Claims, the 507(b) Claims, the DIP Liens, and the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been paid in full in cash, where applicable, (and that such DIP Super-priority Claims, 507(b) Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest, subject to the Carve-Out); (B) the other rights granted by this Interim Order, including with respect to the Carve-Out, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all of the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)      If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by ~~either~~ the DIP Lender ~~or the Prepetition Lender, as applicable,~~ of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens or the Carve-Out. Notwithstanding any reversal, modification, vacatur or stay of any use of Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate Protection Liens incurred by the Debtors prior to the actual receipt of written notice by ~~either~~ the DIP Lender ~~or Prepetition Lender, as applicable,~~ of the effective date of such reversal, modification, vacatur or stay, any such use shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender ~~and the Prepetition Lender~~ shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations. **[PB 12/28/2022]**

(d)      Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Super-priority Claims, the Adequate Protection Liens, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the DIP Lender and the Prepetition Lender granted by the provisions of this Interim Order and the DIP Documents and the Carve-Out shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (ii) the entry of an

30

order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy
Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order
confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4)
of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP
Obligations or Adequate Protection Obligations. The terms and provisions of this Interim Order
and the DIP Documents shall continue in these Chapter 11 Cases, in any Successor Cases if these
Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under
the Bankruptcy Code, and the DIP Liens, the DIP Super-priority Claims, the Adequate Protection
Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP
Lender and the Prepetition Lender granted by the provisions of this Interim Order and the DIP
Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid
in full in cash, as set forth herein and in the DIP Documents, and the DIP Loan has been
terminated, and the Carve-Out shall continue in full force and effect.

20.    <u>Payment of Fees and Expenses</u>. The Debtors are authorized to and shall pay the
DIP fees and expenses in accordance with the DIP Documents, such DIP fees and expenses, and
professionals for the DIP Lender and the Prepetition Lender shall not be required to comply with
the U.S. Trustee fee guidelines, *provided that* copies of invoices for such professional fees,
expenses and disbursements (the "<u>Invoiced Fees</u>") shall be served by email on the Debtors, the
U.S. Trustee, and counsel to any Committee, who shall have five (5) business days (the "<u>Review
Period</u>") to review and assert any objections thereto.  Invoiced Fees shall be in the form of an
invoice summary for professional fees and categorized expenses incurred during the pendency of
the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries,
but shall include a list of professionals providing services, with rates and hours worked, and a

general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law. The Debtors, any Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, any Committee that may be appointed in these Cases, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Bankruptcy Court, if necessary, of a motion or other pleading, with at least ten (10) business days' prior written notice to the submitting party of any hearing on such motion or other pleading). For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

21.    <u>Effect of Stipulations on Third Parties</u>. The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or

chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances

and for all purposes unless: (a) (i) with respect to any party in interest with requisite standing

other than any official creditors' committee (subject in all respects to any agreement or

applicable law that may limit or affect such entity's right or ability to do so), such party has

timely filed an adversary proceeding or contested matter (subject to the limitations contained

herein, including, *inter alia*, in this paragraph) by no later than 75 calendar days after entry of

the Final Order, (ii) with respect to any official creditors' committee with requisite standing

(subject in all respects to any agreement or applicable law that may limit or affect such entity's

right or ability to do so), such committee has timely filed an adversary proceeding or contested

matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no

later than 60 calendar days after the entry of the Final Order, and (iii) in each case with respect

to (i) and (ii), any such later date as has been agreed to in writing by the DIP Lender and the

Prepetition Lender or ordered by the Bankruptcy Court for cause upon a motion filed and served

within any applicable period (the time period established by the foregoing clauses (i)-(iii), the

"Challenge Period"), (A) objecting to or challenging the amount, validity, perfection,

enforceability, priority or extent of the Prepetition Debt or the Prepetition Liens or (B) otherwise

asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other

avoidance power claims or any other claims, counterclaims or causes of action, objections,

contests or defenses (collectively, the "Challenges") against the Prepetition Lender or their

respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents,

financial advisors, attorneys, accountants, investment bankers, consultants, representatives and

other professionals and the respective successors and assigns thereof, in each case in their

respective capacity as such (each, a "Representative" and, collectively, the "Representatives") in

connection with matters related to the Prepetition Loan Documents, the Prepetition Debt, the

Prepetition Liens, and the Prepetition Collateral; and (b) there is a final non-appealable order in

favor of the plaintiff sustaining any such Challenge in any such timely filed adversary

proceeding or contested matter; provided, however, that any pleadings filed in connection with

any Challenge shall set forth with specificity the basis for such challenge or claim and any

challenges or claims not so specified prior to the expiration of the Challenge Period shall be

deemed forever, waived, released and barred. If no such Challenge is timely and properly filed

during the Challenge Period or the Bankruptcy Court does not rule in favor of the plaintiff in

any such proceeding then: (1) the Debtors' stipulations, admissions, agreements and releases

contained in this Interim Order shall be binding on all parties in interest; (2) the obligations of

the Debtors under the Prepetition Loan Documents, including the Prepetition Debt, shall

constitute allowed claims not subject to defense, claim, counterclaim, recharacterization,

subordination, recoupment, offset or avoidance, for all purposes in the Chapter 11 Cases, and

any subsequent chapter 7 case(s); (3) the Prepetition Liens on the Prepetition Collateral shall be

deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests

and liens, not subject to recharacterization, subordination, avoidance or other defense; and (4)

the Prepetition Debt and the Prepetition Liens on the Prepetition Collateral shall not be subject

to any other or further claim or challenge by any statutory or non-statutory committees

appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to

act on behalf of the Debtors' estates, including, without limitation, any successor thereto

(including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed

or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and

offsets by any statutory or non-statutory committees appointed or formed in the Chapter 11

34

Cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against the Prepetition Lender or its respective Representatives arising out of or relating to any of the Prepetition Loan Documents, the Prepetition Debt, the Prepetition Liens, the Prepetition Collateral, shall be deemed forever waived, released and barred. If any such Challenge is timely filed during the Challenge Period by any statutory or non-statutory committee appointed or formed in the Chapter 11 Cases or any other person or entity with requisite standing, the stipulations, admissions, agreements and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Loan Documents, the Prepetition Debt, the Prepetition Collateral, and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization.

22.    <u>Limitation on Use of DIP Financing Proceeds and Collateral</u>. Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no DIP Loans,

DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, (a) in connection with the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against the DIP Lender, the Prepetition Lender and their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, in each case in their respective capacity as such, or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Super-priority Claims, Prepetition Debt and/or the Adequate Protection Obligations and Adequate Protection Liens granted to the Prepetition Lender, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Debt and/or the liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under this Interim Order, the Final Order, the DIP Documents, the Prepetition Loan Documents or in respect of the Prepetition Debt, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, (b) to prevent, hinder, or otherwise delay or interfere with the Prepetition Lender's or the DIP Lender's, as applicable, enforcement or realization on the Prepetition Debt, the Prepetition Collateral, the DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under the Interim Order or Final Order, as applicable, each in accordance with the DIP Documents, the Prepetition Loan Documents or this Interim Order; (c) to seek to modify without the requisite consents any of the rights and remedies granted to the Prepetition Lender or the DIP Lender under this Interim Order, the Prepetition Loan Documents or the DIP Documents, as applicable;

(d) to apply to the Court for authority to approve super-priority claims or grant liens (other than the liens permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Super-priority Claims, Adequate Protection Liens and 507(b) Claims granted to the Prepetition Lender (except as permitted by the DIP Documents); or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the DIP Lenders, expressly permitted under this Interim Order or permitted under the DIP Documents (including the Approved Budget), in each case unless all DIP Obligations, Prepetition Debt, Adequate Protection Obligations and claims granted to the DIP Lender and the Prepetition Lender under this Interim Order have been refinanced or paid in full in cash or otherwise agreed to in writing by the DIP Lender. Notwithstanding anything contained in this paragraph, the Committee shall, subject to section 330 of the Bankruptcy Code, be entitled to seek compensation under the Carve-Out up to, but in no event to exceed, $50,000 in connection with any investigation or challenge of the Prepetition Loan Documents or Prepetition Debt.

23.    <u>Interim Order Governs</u>. In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents or any other order entered by this Bankruptcy Court, the provisions of this Interim Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Bankruptcy Court, any payment made pursuant to any authorization contained in any other order entered by this Bankruptcy Court shall be consistent with and subject to the requirements set forth in this Interim Order and the DIP Documents, including, without limitation, the Approved Budget.

24.    <u>Binding Effect; Successors and Assigns</u>. The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in

these Chapter 11 Cases, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Lender and the Prepetition Lender and their respective successors and assigns; provided that the DIP Lender and the Prepetition Lender shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

25.     Exculpation. Subject to the Challenges, nothing in this Interim Order, the DIP Documents, the Prepetition Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Lender or the DIP Lender for any claims arising from the pre-petition or post-petition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. The DIP Lender and the Prepetition Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

26.     Limitation of Liability. In determining to make any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or Prepetition Collateral

(including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents or Prepetition Loan Documents, neither the DIP Lender nor the Prepetition Lender shall (a) be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Lender of any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

27.    <u>Insurance</u>. To the extent that the Prepetition Lender is listed as loss payee under the Debtors' insurance policies, the DIP Lender is also deemed to be the loss payee under the insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of the insurance policies, to the indefeasible payment in full of the applicable DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the DIP Loan, and to the payment of the applicable Prepetition Debt.

28.    <u>Credit Bidding</u>. (a) The DIP Lender shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the applicable DIP Obligations in any sale of the DIP Collateral outside the ordinary course of business and (b) the Prepetition

Lender shall have the right to credit bid up to the full amount of the Prepetition Debt in any sale

of the Prepetition Collateral outside the ordinary course of business, without the need for further

Bankruptcy Court order authorizing the same and whether any such sale is effectuated through

section 363(k) 1123 or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section

725 of the Bankruptcy Code, or otherwise; and (b) no other prepetition secured claimant may

credit bid in any disposition of any Prepetition Collateral unless such sale provides for

indefeasible payment in full in cash to (i) the DIP Lender of all DIP Obligations and (ii) the

Prepetition Lender of all Prepetition Obligations.

29.    <u>Effectiveness</u>. This Interim Order shall constitute findings of fact and conclusions

of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable

immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h),

6006(d), 7062, or 9014  or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of

Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its

entry and there shall be no stay of execution or effectiveness of this Interim Order.

30.    <u>Governing Order</u>. Notwithstanding the relief granted in any other order by this

Bankruptcy Court, (i) all payments and actions by any of the Debtors pursuant to the authority

granted therein shall be subject to this Interim Order, including compliance with the Approved

Budget and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency

between the terms of such other order and this Interim Order, this Interim Order shall control, in

each case, except to the extent expressly provided otherwise in such other order.

31.    <u>Modification of DIP Documents and Approved Budget</u>. The Debtors are hereby

authorized, without further order of this Bankruptcy Court, to enter into agreements with the

DIP Lender (or the Prepetition Lender after the indefeasible payment in full in cash of the DIP

40

Obligations and termination of the DIP Loan) providing for any consensual non-material amendments, modifications, waivers or supplements to the Approved Budget or the DIP Documents, or of any other amendments, modifications, waivers or supplements to the DIP Documents necessary to conform the terms of the DIP Documents to this Interim Order, in each case consistent with any amendment provisions of the DIP Documents; provided, however, that notice of any material amendment, modification, waivers or supplement to the DIP Documents shall be provided to the U.S. Trustee, any statutory committee, which shall have five (5) calendar days from the date of such notice within which to object, in writing, to the amendment, modification, waivers or supplement. If the U.S. Trustee, or any statutory committee, timely objects to any such material amendment, modification, waivers or supplement to the DIP Documents, the material amendment, modification, waivers or supplement shall only be permitted pursuant to an order of the Bankruptcy Court. The foregoing shall be without prejudice to the Debtors' right to seek approval from the Bankruptcy Court of a material amendment, modification, waivers or supplement on an expedited basis.

32.    Headings. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

33.    Payments Held in Trust. Except as expressly permitted in this Interim Order or the DIP Documents, and subject to the Carve-Out and except with respect to the Debtors, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of the DIP Loan, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the

benefit of the DIP Lender and shall immediately turn over the proceeds to the DIP Lender, or as otherwise instructed by this Bankruptcy Court, for application in accordance with the DIP Documents and this Interim Order.

34.    <u>Bankruptcy Rules</u>. The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

35.    <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

36.    <u>Necessary Action</u>. The Debtors, the DIP Lender and the Prepetition Lender are authorized to take all actions as are necessary or appropriate to implement the terms of this Interim Order. In addition, the automatic stay is modified to permit affiliates of the Debtors who are not debtors in these Chapter 11 cases to take all actions as are necessary or appropriate to implement the terms of this Interim Order.

37.    <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

38.    <u>Final Hearing</u>. A final hearing to consider the relief requested in the Motion shall be held on January 12, 2023, at **10:00 a.m.** (Prevailing Eastern Time). ~~and any objections or responses to the Motion shall be filed on or prior to January 5, 2023, at 4:00 p.m. (Prevailing Eastern Time)~~. At that time, the Bankruptcy Court shall consider any and all objections to the entry of a Final Order and shall consider any proposed changes to the relief granted in this

42

Interim Order; <u>provided</u>, <u>however</u>, any such changes shall not affect the validity, priority or enforceability of any advances previously made by the DIP Lender, or any liens, claims, or rights authorized, granted, or conferred upon the DIP Lender to the extent of any advances made during the interim period covered by this Interim Order. **[PB 12/28/2022]**

39.     **<u>Insurance Proceeds and Insurance Escrow Not Affected.</u>  Notwithstanding anything in the DIP Loan Term Sheet and this Interim Order to the contrary, the insurance proceeds in the Insurance Escrow shall not be considered Cash Collateral, Prepetition Collateral and/or Postpetition DIP Collateral affected by this Interim Order or any other interim order, which matter shall only be resolved at the Final Hearing.** ~~Reservation of Rights.~~ All creditors and parties in interest shall retain their rights to object to any relief requested at the Final Hearing, including but not limited to **Highgate Hotels, L.P.'s** objection to the Debtors' request for relief with respect to the Insurance Escrow. **[PB 12/28/2022]**

40.     <u>Objections</u>. Any party in interest objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the U.S. Trustee; (b) counsel to the Committee, if known; (c) counsel to the Debtors (Attn.: Jonathan Pasternak    (jsp@dhclegal.com) and Robert L. Rattet (rlr@dhclegal.com)); (d) the CRO, (e) the Debtors, (f) counsel to the DIP Lender and Prepetition Lender, (Attn: Steven B. Smith (ssmith@herrick.com) and Avery Mehlman (amehlman@herrick.com)); (g) counsel to the Residential Board, (h) counsel to the BPCA; and (i) any other party that has filed a request for notices with this Court pursuant to Bankruptcy Rule 2002, with a copy to the Bankruptcy Court's chamber, in each case to allow actual receipt

by the foregoing no later than January 5, 2023, at 4:00 p.m. EST. Any responses to such

Objections shall be due no later than January 9, 2023, at 4:00 p.m. EST.

41.     The Debtors shall promptly serve copies of this Interim Order (which shall

constitute adequate notice of the Final Hearing) to the parties having been given notice of the

Interim Hearings and to any party that has filed a request for notices with this Court.

Dated: December 28, 2022
       New York, New York

/s/ Philip Bentley
**Honorable Philip Bentley**
**United States Bankruptcy Judge**