

**URBAN COMMONS 2 WEST LLC, ET AL.[1],**

**DEBTORS**

**LEAD CASE NO.: 22-11509 (PB)**

**REPORT OF THE CHIEF RESTRUCTURING OFFICER**

**MARK D. PODGAINY**

**JANUARY 9, 2023**

---

[1] Jointly administered with Urban Commons 2 West II LLC, Urban Commons 2 West III LLC, Urban Commons 2 West IV LLC, and Urban Commons 2 West Operating Tenant LLC

## BACKGROUND

I have been retained by Urban Commons 2 West LLC, et al. (the "Debtors") as Chief Restructuring Officer pursuant to the Order Granting Debtors' Application to (I) Employ and Retain Getzler Henrich & Associates LLC Effective As Of November 21, 2022, (II) Affirm Designation Of Mark D. Podgainy As Chief Restructuring Officer Effective As Of November 21, 2022, And (III) Employ And Retain Bernard A. Katz As Independent Manager Of The Debtors entered December 8, 2022, [D.I. 60] (the "Retention Order").



The Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code on November 15, 2022 (the "Petition Date") and have continued to be in possession of their business, management of their property and management of their affairs as debtors-in-possession. The Debtors hold the right to use and operate The Wagner at Battery Park (the "Hotel" or "Property"), located at 2 West Street, New York, New York 10004.

In accordance with the Retention Order, I have prepared this report to provide the following information:

I. A Consolidated Balance Sheet for the Debtors as of the Petition Date.

II. A summary of the Debtors' business, current state of operations, and preliminary assessment of the conduct of the business, if any, over the next (12) months.

III. A twelve (12) month consolidated cash flow forecast for the Debtors.

IV. A general summary for the Debtors identifying the specific factual and legal issues to be addressed in order to restructure the Debtors.

V. The general summary shall identify each significant contractual counterparty, and other significant stakeholders, and in each such case, the claims or interests they have that relate to the particular Debtor and its ongoing operations or restructuring.

VI. Any significant legal issues.

VII. Any significant pre-petition transfers.

VIII. An accounting of all PPP Funds held by each Debtor, including all transfers from the date of receipt through the date of the report.



I. **CONSOLIDATED BALANCE SHEET AS OF THE PETITION DATE**

I am in the process of determining the balance sheet as of the Petition Date. This effort has been significantly complicated by the fact that the Debtors did not regularly maintain the books and records for each debtor. Therefore, I have requested information (tax returns, financial statements, bank statements, operating information, etc.) from a variety of sources, including but not limited to the Debtors' accounting firm, hotel management company, and principals, in order to estimate assets and liabilities as of the Petition Date and perform other analyses as required per the Retention Order.

II. **SUMMARY OF THE DEBTORS' BUSINESS, CURRENT STATE OF OPERATIONS, AND PRELIMINARY ASSESSMENT OF THE CONDUCT OF THE BUSINESS, IF ANY, OVER THE NEXT (12) MONTHS.**

The Debtors hold the right to use and operate the Property, a hotel known as The Wagner at Battery Park. The Hotel is part of a mixed-use condominium building in Battery Park City, known as the Millennium Point Condominium (the "Condominium). The Condominium comprises of a commercial portion (including the Hotel, which occupies the first 14 floors of the Condominium) and a residential portion, the Millennium Point Residential Condominium (the "Residential Condominium"), which comprises approximately 100 apartments, on floors 15-39 above the Hotel.

The Condominium is situated on land (the "Land") owned by the Battery Park City Authority (BPCA). As a result, the Debtors are party to three interrelated leases with the BPCA (all leases together, the "Ground Lease"), which allow the Hotel to operate on the land.

The Hotel has been closed since approximately April 2020, and the Debtors do not intend to reopen the Hotel during the pendency of these bankruptcy cases. The Debtors are embarking on a sale process, as outlined in the DIP Loan Term Sheet attached to the Debtors' application for debtor-in-possession financing [D.I. 71], which is expected to be completed by the end of April 2023. During the sale process the Debtors plan to utilize their DIP loan facility to pay the Hotel's carrying costs, including lease payments, PILOT, condominium CAM costs, utility costs, insurance, etc. in order to preserve the value of the Property and maximize recoveries for creditors.

III. **A TWELVE (12) MONTH CONSOLIDATED CASH FLOW FORECAST FOR THE DEBTORS**

As described in Section II above, the Debtors are embarking on a sale process for the Property, which is expected to be completed by the end of April 2023. To that end, the Debtors have prepared a consolidated cash flow forecast (the "Cash Flow Forecast") that ends in conjunction with the sale of the Hotel, at the end of April 2023, which is shown in **Exhibit A** to this report.



The Cash Flow Forecast does not include estimates of sale proceeds, as recoveries are unknown at this time. Further the Cash Flow Forecast has not been approved by BPC Lender or the Bankruptcy Court.

IV.  **GENERAL SUMMARY FOR THE DEBTORS IDENTIFYING THE SPECIFIC FACTUAL AND LEGAL ISSUES TO BE ADDRESSED IN ORDER TO RESTRUCTURE THE DEBTORS**

A. DIP Funding

The most immediate hurdle the Debtors face is obtaining a Final Order approving DIP funding, which will allow the Debtors to conduct a sale process to maximize the value of the Debtors' estates. The Debtors have obtained an Interim Order for DIP funding as of December 28, 2022 [D.I. 90], and have a Final Hearing scheduled for January 12, 2023.

One of the Conditions Precedent to the Closing of the DIP Facility, as described in the DIP Loan Term Sheet, is the release of approximately $5.6 million of unallocated insurance proceeds being held in escrow by the Debtors' pre-petition insurance counsel ("Insurance Proceeds"). However, Highgate Hotels, L.P. ("Highgate") has indicated in its filings with the Court that it has rights to the Insurance Proceeds and will not consent to releasing them to the pre-petition lender, BPC Lender, LLC. The Debtors dispute Highgate's position. The dispute over which party has rights to the Insurance Proceeds is a crucial issue to be addressed in the Final Hearing, and the Court's hopeful determination in favor of the Debtors is critical to the success of the Debtors' cases.

B. The Ground Lease

Pursuant to the Ground Lease, the Debtors are obligated to make periodic payments to the BPCA, including Hotel Base Rent. There is a provision in the Ground Lease which contemplates a reset of the Hotel Base Rent, from and after January 1, 2022, which calculation is based on the fair market value ("FMV") of the Land. However, the three parties to the Ground Lease (the BPCA, the Debtors and the Residential Condominium, together the "Three Parties") did not initiate the procedures to determine FMV at the time specified. This issue is particularly important to the Debtors because the uncertainty surrounding the new Hotel Base Rent could negatively affect potential buyer interest in the Hotel and result in lower offers. Since The Three Parties all have an interest in expediting the determination of the Land's FMV, they have entered into discussions to sort out the methodology and timeline for doing so.

C. Retention of Real Estate Brokers

The Debtors have filed their Application to Employ Rosewood Realty Group and Newmark & Company Real Estate, Inc. as co-Real Estate Consultants and Advisors [D.I. 93] to ensure they have the appropriate professionals retained to assist with the contemplated sale process.



It is important that approval of the Debtors' real estate advisors be granted so that the sale process can proceed according to the timeline specified and agreed to in the DIP Loan Term Sheet.

**V.    SIGNIFICANT CONTRACTUAL COUNTERPARTIES, AND OTHER SIGNIFICANT STAKEHOLDERS, AND IN EACH SUCH CASE, THE CLAIMS OR INTERESTS THEY HAVE THAT RELATE TO THE PARTICULAR DEBTOR AND ITS ONGOING OPERATIONS OR RESTRUCTURING.**

A.  BPC Lender, LLC ("BPC Lender")

BPC Lender is the Debtors' pre-petition secured lender, which holds first priority liens and perfected security interests in all of the Debtors' assets, is the largest creditor in these bankruptcy cases.  Upon information and belief, BPC Lender is owed approximately $114 million plus pre-petition legal costs and other related fees.

BPC Lender has agreed to provide the Debtors with a DIP Facility to finance these cases and allow for the sale of the Hotel to maximize value for all creditors.  The Debtors' have obtained an Interim Order for DIP funding and have a Final Hearing scheduled.

B.  ERJMJ Investments, LP ("ERJMJ")

Upon information and belief, ERJMJ provided a second priority secured loan of approximately $17 million.

C.  George M. Lee / Galaxy Investment Capital ("Lee and Galaxy")

Upon information and belief, Lee and Galaxy are co-mortgagees who hold a second mortgage on the Property in the aggregate of approximately $4.5 million.

D.  Battery Park City Authority ("BPCA")

The Debtors are party to the Ground Lease with the BPCA that ultimately allows the Debtors to lease the Land, which the BPCA owns.  Pursuant to the Ground Lease, the Debtors are obligated to make periodic payments to the BPCA, including Hotel Base Rent, PILOT, Civic Facilities Payments, Impositions, and any Hotel Percentage Rent.  The Debtors are in arrears in their obligations, and upon information and belief, have pre-petition obligations to the BPCA of approximately $15 million.

As described above, there is a provision in the Ground Lease which contemplates a reset of the Hotel Base Rent, from and after January 1, 20022, based on the FMV of the Land, and in accordance with certain procedures for determining FMV.  Since the new FMV, and therefore the new Hotel Base Rent, is critically important to the Debtors and has not yet been



determined, the Three Parties have entered into discussions to sort out the methodology and timeline for obtaining this necessary information.

  E. Millennium Point Residential Condominium (the "Residential Condominium")

The Residential Condominium comprises floors 15-39 above the Hotel and is managed by The Residential Board of Managers (the "Residential Board").  The Hotel and the Residential Condominium are both subject to the Millennium Point Condo Bylaws, which describes certain shared expenses (e.g., CAM, utilities, employees, etc.), which both parties are obligated to pay since the Hotel and the Residential Condominium occupy the same building.  For a period of time prior to the Petition Date the Residential Condominium paid the Debtors' portion of the shared expenses when the Debtors did not pay their portion.  Though a full accounting of amounts owed has not been completed, upon information and belief the Debtors' pre-petition liability could be up to $4 million.

The Residential Condominium and the Hotel are also parties to the Ground Lease.  Given that both parties' lease payments are based on the FMV of the Land, they have a shared interest in obtaining the FMV and have been working together, and with the BPCA, to that end.

  F. Highgate Hotels, L.P. ("Highgate")

Highgate and Urban Commons 2 West Operating Tenant LLC ("Operating Tenant") were parties to a Hotel Operator Management Agreement (the "HOMA") which was terminated by Highgate prior to the Petition Date.  Upon information and belief, the Debtors have unpaid obligations under the HOMA related to the Hotel's operating expenses as well as management and other fees owed to Highgate.

In addition, Highgate has indicated in documents filed with the Court, including an objection and reservation of rights [D.I. 78] concerning the Debtors' application for DIP financing, that it is party to a letter agreement with Operating Tenant that grants Highgate rights to Insurance Proceeds currently held in an escrow account that BPC Lender requires to be released to it as one of the Conditions Precedent to the Closing of the DIP Facility in the DIP Loan Term Sheet. The Debtors dispute Highgate's assertion of rights over the escrowed proceeds.

  G. NY Hotel & Motel Trades Council (the "Union")

The Debtors are party to collective bargaining agreements with the Union.  As a result, the Debtors may have unpaid pre-petition obligations related to severance, pension plan contributions, and pension withdrawal liability.  Upon information and belief, the Debtors' pre-petition liability to the Union may exceed $2 million.



H. Canyon Community Bank ("Canyon")

Upon information and belief, Canyon funded a PPP Loan to the Debtors in the aggregate amount of approximately $3 million. According to Debtors' prior management, the funds were given over to Highgate. The Debtors are investigating the use of such proceeds by Highgate.

VI. ANY SIGNIFICANT LEGAL ISSUES

There are no significant legal issues in the Debtors' cases outside of the issues mentioned elsewhere in this report.

VII. ANY SIGNIFICANT PRE-PETITION TRANSFERS

As described above in Section I of this report, given the lack of readily available information from the Debtors' books and records, I have requested financial and operating information from a variety of sources, including information needed to perform an analysis of pre-petition transfers.

VIII. AN ACCOUNTING OF ALL PPP FUNDS HELD BY EACH DEBTOR, INCLUDING ALL TRANSFERS FROM THE DATE OF RECEIPT THROUGH THE DATE OF THE REPORT

As described above in Section I of this report, given the lack of readily available information from the Debtors' books and records, I have requested financial and operating information from a variety of sources, including the details regarding the use of PPP funds received.

Dated: January 9, 2023
New York, NY

Mark D. Podgainy

# EXHIBIT A



PRELIMINARY DRAFT  
SUBJECT TO APPROVAL BY BPC LENDER, LLC AND COURT ORDER REGARDING DIP FINANCING

EXHIBIT A

**URBAN COMMONS 2 WEST LLC**  
**WEEKLY CASH FLOW**  
**FOR THE TWENTY WEEKS ENDED APRIL 29, 2023**  
NOTE: SUBJECT TO APPROVAL BY BPC LENDER, LLC AND COURT ORDER REGARDING DIP FINANCING

| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending ----> | | 12/17/2022 | 12/24/2022 | 12/31/2022 | 1/7/2023 | 1/14/2023 | 1/21/2023 | 1/28/2023 | 2/4/2023 | 2/11/2023 | 2/18/2023 | 2/25/2023 | 3/4/2023 | 3/11/2023 | 3/18/2023 |
| **Opening Cash Balance** | | $ - | $ - | $ (479,126) | $ (499,126) | $ (691,425) | $ (731,425) | $ (4,155,789) | $ (4,406,786) | $ (4,947,973) | $ (5,017,973) | $ (5,027,973) | $ (5,257,973) | $ (5,769,161) | $ (5,839,161) |
| **Cash Receipts** | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| [1] Land Lease | | | | | | | 128,842 | | 51,537 | | | | 51,537 | | |
| [2] PILOT | | | | - | | - | 2,258,981 | | | | | | | | |
| [1,3] Civic Facilities Payment | | | | | | | 126,737 | | | | | | | | |
| Land Lease Required Appraisal | | | | | | | 20,000 | | | | | | | | |
| [4] Property Insurance | | | | | | | 525,000 | | 143,022 | | | | 143,022 | | |
| [5] D&O Insurance | | | | | | | 39,805 | | 8,530 | | | | 8,530 | | |
| [7] Con Edison | | | 30,000 | | | 30,000 | | | | | 30,000 | | | 30,000 | |
| [7] Water/Sewer | | | | | | | | 60,000 | | | 30,000 | | | 30,000 | |
| [1,7] Condo CAM | | | 63,962 | | 42,186 | | | | 42,186 | | | | 42,186 | | |
| [1,7] Labor | | | 104,311 | | 68,257 | | | | 68,257 | | | | 68,257 | | |
| [1,7] Operating Costs | | | 103,353 | | 46,856 | | | | 107,656 | | | | 77,656 | | |
| Contingency | | - | 20,000 | 20,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| **Total Operating Disbursements** | | $ - | $ 321,626 | $ 20,000 | $ 167,299 | $ 40,000 | $ 3,169,364 | $ 10,000 | $ 431,188 | $ 70,000 | $ 10,000 | $ 10,000 | $ 401,188 | $ 70,000 | $ 10,000 |
| Operating Cash flow | | $ - | $ (321,626) | $ (20,000) | $ (167,299) | $ (40,000) | $ (3,169,364) | $ (10,000) | $ (431,188) | $ (70,000) | $ (10,000) | $ (10,000) | $ (401,188) | $ (70,000) | $ (10,000) |
| Accumulated | | $ - | $ (321,626) | $ (341,626) | $ (508,925) | $ (548,925) | $ (3,718,289) | $ (3,728,289) | $ (4,159,477) | $ (4,229,477) | $ (4,239,477) | $ (4,249,477) | $ (4,650,664) | $ (4,720,664) | $ (4,730,664) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | |
| Utility Deposits | | | 30,000 | | | | | | | | | | | | |
| U.S. Trustee Fees | | | | | | | | 2,997 | - | | | | - | - | - |
| [8] Professional Fees | | - | 127,500 | - | 25,000 | - | 80,000 | 238,000 | 110,000 | | | 220,000 | 110,000 | - | - |
| DIP Fees | | | | | | | 175,000 | | | | | | | | |
| [9] DIP Interest | | | | | | | | | | | | | | | |
| **Total Non-Operating Disbursements** | | $ - | $ 157,500 | $ - | $ 25,000 | $ - | $ 255,000 | $ 240,997 | $ 110,000 | $ - | $ - | $ 220,000 | $ 110,000 | $ - | $ - |
| Net Cash Flow | | $ - | $ (479,126) | $ (20,000) | $ (192,299) | $ (40,000) | $ (3,424,364) | $ (250,997) | $ (541,188) | $ (70,000) | $ (10,000) | $ (230,000) | $ (511,188) | $ (70,000) | $ (10,000) |
| Accumulated | | $ - | $ (479,126) | $ (499,126) | $ (691,425) | $ (731,425) | $ (4,155,789) | $ (4,406,786) | $ (4,947,973) | $ (5,017,973) | $ (5,027,973) | $ (5,257,973) | $ (5,769,161) | $ (5,839,161) | $ (5,849,161) |
| **Ending Cash Balance (not accounting for DIP)** | | $ - | $ (479,126) | $ (499,126) | $ (691,425) | $ (731,425) | $ (4,155,789) | $ (4,406,786) | $ (4,947,973) | $ (5,017,973) | $ (5,027,973) | $ (5,257,973) | $ (5,769,161) | $ (5,839,161) | $ (5,849,161) |
| **Advances/(Repayments)** | | $ - | $ 479,126 | $ 20,000 | $ 192,299 | $ 40,000 | $ 3,424,364 | $ 250,997 | $ 541,188 | $ 70,000 | $ 10,000 | $ 230,000 | $ 511,188 | $ 70,000 | $ 10,000 |
| [6] **DIP Loan Balance** | | $ - | $ 479,126 | $ 499,126 | $ 691,425 | $ 731,425 | $ 4,155,789 | $ 4,406,786 | $ 4,947,973 | $ 5,017,973 | $ 5,027,973 | $ 5,257,973 | $ 5,769,161 | $ 5,839,161 | $ 5,849,161 |
| Accrued UST Fees | | $ - | $ 1,917 | $ 2,997 | $ 4,535 | $ 4,855 | $ 32,250 | $ 31,261 | $ 35,591 | $ 36,151 | $ 36,231 | $ 38,071 | $ 42,160 | $ 42,720 | $ 42,800 |
| Accrued Professional Fees | | 414,651 | 370,872 | 454,593 | 513,314 | 597,035 | 600,756 | 446,477 | 420,198 | 503,919 | 587,640 | 451,360 | 425,081 | 508,802 | 592,523 |
| Accrued PILOT | | 187,827 | 223,404 | 258,981 | 297,442 | 335,904 | - | - | - | - | - | - | - | - | - |
| Accrued DIP Fee | | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | - | - | - | - | - | - | - | - | - |
| Accrued DIP Interest | | - | - | 559 | 1,700 | 3,089 | 4,749 | 10,451 | 20,441 | 31,355 | 42,981 | 54,702 | 66,702 | 79,567 | 93,110 |
| Total Accrued/Unpaid Costs | | $ 777,478 | $ 771,192 | $ 892,129 | $ 991,991 | $ 1,115,883 | $ 637,755 | $ 488,189 | $ 476,229 | $ 571,424 | $ 666,852 | $ 544,133 | $ 533,944 | $ 631,090 | $ 728,434 |

[1] First payment includes amounts owed from 11/15-11/30, 12/1-12/31, and 1/1-1/31  
[2] Assumes PILOT of $1,850,000 for the 6 months ended 12/31/22 and $2,000,000 for the six months ended 6/30/23  
[3] Assumes monthly amounts of $16,491 in 2022, and $17,000 in 2023  
[4] Estimated annual premium of $1,500,000 financed at 33% down and 7 monthly payments  
[5] Side A coverage $5,000,000 limit, no deductible; assumes financing costs of $5K, down payment of 40% and 7 subsequent monthly payments  
[6] The total DIP funding required for the period ended April 29, 2023 is the total of the "DIP Loan Balance" and the "Total Accrued and Unpaid Costs", which is approximately $7.7 million  
[7] Timing of payment subject to negotiation  
[8] Includes professional fees for CRO, Interim Manager, Debtors' Counsel, and Committee professionals  
[9] To be paid upon termination of the DIP facility

PRELIMINARY DRAFT
SUBJECT TO APPROVAL BY BPC LENDER, LLC AND COURT ORDER REGARDING DIP FINANCING

EXHIBIT A

**URBAN COMMONS 2 WEST LLC**
**WEEKLY CASH FLOW**
**FOR THE TWENTY WEEKS ENDED APRIL 29, 2023**
NOTE: SUBJECT TO APPROVAL BY BPC LENDER, LLC AND COURT O

| | 15 | 16 | 17 | 18 | 19 | 20 | |
|---|---|---|---|---|---|---|---|
| Week Ending ----> | 3/25/2023 | 4/1/2023 | 4/8/2023 | 4/15/2023 | 4/22/2023 | 4/29/2023 | |
| **Opening Cash Balance** | $ (5,849,161) | $ (5,999,161) | $ (6,560,349) | $ (6,570,349) | $ (6,640,349) | $ (6,650,349) | |
| **Cash Receipts** | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Operating Disbursements** | | | | | | | |
| [1] Land Lease | | 51,537 | | | | | 283,453 |
| [2] PILOT | | | | | | | 2,258,981 |
| [1,3] Civic Facilities Payment | | | | | | | 126,737 |
| Land Lease Required Appraisal | | | | | | | 20,000 |
| [4] Property Insurance | | 143,022 | | | | | 954,066 |
| [5] D&O Insurance | | 8,530 | | | | | 65,394 |
| [7] Con Edison | | | | 30,000 | | | 150,000 |
| [7] Water/Sewer | | | | 30,000 | | | 150,000 |
| [1,7] Condo CAM | | 42,186 | | | | | 232,706 |
| [1,7] Labor | | 68,257 | | | | | 377,340 |
| [1,7] Operating Costs | | 47,656 | | | | | 383,177 |
| Contingency | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 210,000 |
| **Total Operating Disbursements** | $ 10,000 | $ 371,188 | $ 10,000 | $ 70,000 | $ 10,000 | $ 10,000 | $ 5,211,852 |
| Operating Cash flow | $ (10,000) | $ (371,188) | $ (10,000) | $ (70,000) | $ (10,000) | $ (10,000) | |
| Accumulated | $ (4,740,664) | $ (5,111,852) | $ (5,121,852) | $ (5,191,852) | $ (5,201,852) | $ (5,211,852) | $ (5,211,852) |
| **Non-Operating Disbursements** | | | | | | | |
| Utility Deposits | | | | | | | 30,000 |
| U.S. Trustee Fees | - | - | - | - | - | 49,490 | 52,486 |
| [8] Professional Fees | 140,000 | 190,000 | | | | 220,000 | 1,460,500 |
| DIP Fees | | | | | | | 175,000 |
| [9] DIP Interest | | | | | | | - |
| **Total Non-Operating Disbursements** | $ 140,000 | $ 190,000 | $ - | $ - | $ - | $ 269,490 | $ 1,717,986 |
| Net Cash Flow | $ (150,000) | $ (561,188) | $ (10,000) | $ (70,000) | $ (10,000) | $ (279,490) | |
| Accumulated | $ (5,999,161) | $ (6,560,349) | $ (6,570,349) | $ (6,640,349) | $ (6,650,349) | $ (6,929,838) | $ (6,929,838) |
| **Ending Cash Balance (not accounting for DIP)** | $ (5,999,161) | $ (6,560,349) | $ (6,570,349) | $ (6,640,349) | $ (6,650,349) | $ (6,929,838) | $ (6,929,838) |
| **Advances/(Repayments)** | $ 150,000 | $ 561,188 | $ 10,000 | $ 70,000 | $ 10,000 | $ 279,490 | $ 6,929,838 |
| [6] **DIP Loan Balance** | $ 5,999,161 | $ 6,560,349 | $ 6,570,349 | $ 6,640,349 | $ 6,650,349 | $ 6,929,838 | $ 6,929,838 |
| Accrued UST Fees | $ 45,000 | $ 49,490 | $ 49,570 | $ 50,130 | $ 50,210 | $ 3,956 | |
| Accrued Professional Fees | 536,244 | 429,965 | 513,686 | 597,407 | 681,128 | 544,849 | |
| Accrued PILOT | - | - | - | - | - | - | |
| Accrued DIP Fee | | | | | | | |
| Accrued DIP Interest | 106,746 | 120,569 | 135,222 | 150,541 | 165,954 | 181,460 | |
| Total Accrued/Unpaid Costs | $ 687,991 | $ 600,024 | $ 698,478 | $ 798,078 | $ 897,292 | $ 730,264 | |

[1] First payment includes amounts owed from 11/15-11/30, 12/
[2] Assumes PILOT of $1,850,000 for the 6 months ended 12/31/
[3] Assumes monthly amounts of $16,491 in 2022, and $17,000 i
[4] Estimated annual premium of $1,500,000 financed at 33% do
[5] Side A coverage $5,000,000 limit, no deductible; assumes fina
[6] The total DIP funding required for the period ended April 29,
[7] Timing of payment subject to negotiation
[8] Includes professional fees for CRO, Interim Manager, Debtors'
[9] To be paid upon termination of the DIP facility