**AGREEMENT FOR APPRAISAL SERVICES**

This Agreement For Appraisal Services (this "**Agreement**"), dated January 19, 2023, sets forth the terms and conditions upon which Newmark Valuation & Advisory, LLC ("**Firm**") agrees to provide Urban Commons 2 West LLC, Urban Commons 2 West II LLC, Urban Commons 2 West III LLC, Urban Commons 2 West IV LLC and Urban Commons 2 West Operating Tenant, LLC (jointly and severally, "**Client**") appraisal services as set forth herein.

1. PROPERTY: The land under The Wagner Hotel ("**Property**"), a 298-room luxury hotel located at 2 West Street, New York, NY 10004, per the requirements of the existing ground lease rent reset.

2. APPRAISAL FEE: $20,000.00 (inclusive of expenses).

3. REPORT DELIVERABLES: The appraisal, draft and/or final, shall be delivered in electronic format (typically, pdf). One original hard copy of the final appraisal will be provided to Client upon request.

4. COMMENCEMENT AND DELIVERY DATE: Draft appraisal report: three (3) weeks, but not later than February 3, 2023 with final appraisal report: three (3) days following approval and request for final report. The appraisal process will commence upon receipt by the Firm of (i) this Agreement, signed by Client, (ii) the retainer, and (iii) all Property information and materials requested by the Firm. The appraisal process will conclude upon delivery of the final appraisal report, unless terminated sooner by the Firm or Client or as provided herein.

5. REPORT TYPE: Appraisal Report

6. VALUATION PREMISE: Market Value

7. APPROACH: Sales Comparison Approach and the Residual Approach

8. INTEREST IN THE PROPERTY APPRAISED: Fee Simple Estate

9. DATE(S) OF VALUE: Retrospective as of February 1, 2022

10. INTENDED USER(S): Only the parties comprising Client ("Intended Users). No other party is permitted to use or rely on the appraisal. The identification of Intended User(s) of the appraisal is to determine the type and extent of research, analysis and reporting appropriate for the assignment. Designation of a party other than Client as an Intended User is not intended to confer upon such party any rights under this Agreement.

11. INTENDED USE: Solely for internal underwriting purposes ("Intended Use") and no other use. Without limiting the foregoing, the appraisal shall not be used for financing purposes.

12. GUIDELINES: The analyses, opinions and conclusions are to be developed based on, and the appraisal will be prepared in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP) as published by the Appraisal Foundation.

13. SCOPE OF WORK: The appraiser will use and properly apply all applicable and appropriate approaches to value sufficient to produce credible assignment results. The scope of the analysis will be appropriate for the appraisal problem.

14. ASSUMPTIONS/LIMITING CONDITIONS: The appraisal will be subject to Firm's standard Assumptions and Limiting Conditions, which will be incorporated into the appraisal report. In addition, the appraisal may be subject to, and the appraisal report may contain, Extraordinary Assumptions and Hypothetical Conditions.

15. ACCEPTANCE: This shall constitute a binding agreement only if countersigned by the Client, or by an officer, director or other representative of Client who, by signing and accepting this Agreement, represents and warrants that he/she is authorized by Client to do so.

16. PAYMENT: Client will be invoiced the appraisal fee (and any expenses) which will be earned in full upon initial delivery of the appraisal report (draft or final), with such appraisal fee (and expenses) payable within 30 days of invoicing.

17. Payment of the fee is not contingent upon any predetermined value or on an action or event resulting from the analysis, opinions, conclusions or use of the appraisal.

18. CHANGES TO THE AGREEMENT: Any significant changes to the assignment as outlined in this Agreement, such as the identity of the Client, Intended User, or Intended Use, will require the preparation and execution of a new agreement.

19. CANCELLATION OF ASSIGNMENT: Client may cancel this Agreement at any time prior to the Firm's delivery of the appraisal upon written notification to the Firm. Client shall pay Firm for all work completed on the assignment prior to Firm's



125 Park Avenue | 12th Floor
WEB: www.nmrk.com

receipt of such written cancellation notice, unless otherwise agreed upon by Firm and Client in writing. The Firm may withdraw without penalty or liability from the assignment(s) contemplated by the Agreement before completion or reporting if the Firm determines, in the Firm's sole discretion, that incomplete information was provided to the Firm prior to the engagement, that Client or other parties have not or cannot provide documentation or information necessary to the Firm's analysis or reporting, that conditions of the Property render the original scope of work inappropriate, that a conflict of interest has arisen, or that Client has not complied with its payment obligations under this Agreement. The Firm shall notify Client of such withdrawal in writing.

18. NO THIRD-PARTY BENEFICIARIES: Nothing in the Agreement shall create a contractual relationship or any legal duty between Firm or Client and any third party, nor any cause of action, right, or claim in favor of any third party and against Firm or Client. In addition, this Agreement is not intended to, and shall not be construed to, render any person or entity a third-party beneficiary of this Agreement. Client acknowledges and agrees that the appraisal report shall reflect the foregoing. In addition, the appraisal report shall state that no party other than an Intended User identified in the Agreement is entitled to rely upon the appraisal.

19. ACCEPTANCE OF TERMS AND CONDITIONS. Use of or reliance on the appraisal report by any party, regardless of whether the use or reliance is authorized or known by the Firm, constitutes acceptance of the terms and conditions herein as well as acceptance of all other appraisal statements, limiting conditions and assumptions stated in the Agreement and appraisal report.

20. OTHER PROFESSIONALS. It is assumed that there are no matters affecting the Property that would require the expertise of other professionals, such as engineers or an environmental consultant, for Firm to provide the appraisal. If such additional expertise is required, it shall be provided by other parties retained by Client at Client's sole cost and expense.

21. INDEPENDENT CONTRACTOR. Client acknowledges that the Firm is being retained as an independent contractor. The parties neither intend nor have any expectation that an agency such relationship will arise as a matter of law or as a result of this Agreement. This assignment shall be deemed concluded and the services hereunder completed upon delivery of the appraisal described herein to Client.

22. RELIANCE ON CLIENT INFORMATION. All statements of fact contained in the appraisal report as a basis of the appraiser's analyses, opinions, and conclusions will be true and correct to the best of the appraiser's actual knowledge and belief. The appraiser shall rely upon the accuracy of information and material furnished to the Firm by Client and information provided by sources upon which members of the appraisal profession typically rely and that are deemed to be reliable by members of that profession without independent verification.

23. SCOPE OF SERVICE.  The Firm and the appraiser shall have no responsibility for legal matters, or questions or issues involving survey or title, soil or subsoil conditions, engineering, zoning, buildability, environmental contamination, structural matters, construction defects, material or methodology, or other similar technical matters with regarding the Property. Furthermore, the appraisal will not constitute a survey of the Property.

24. RETAINED RIGHTS. The appraisal and the data and information gathered in its preparation (other than the confidential data and information provided by Client) is and will remain, the property of the Firm. The Firm is authorized to include both confidential and non-confidential data assembled in the course of preparing the appraisal and which may be incorporated into the appraisal report in a database controlled by the Firm for the aggregation of such data and information to produce analytics and other metrics or products.

25. ENVIRONMENTAL MATTERS. Unless specifically noted in the appraisal report, the appraisal will not take into consideration the possibility or probability of the existence of asbestos, PCB transformers, other toxic, hazardous, or contaminated substances and/or underground storage tanks (hazardous material) at on or in the Property, or the cost of encapsulation, removal or remediation thereof.

26. INDEMNIFICATION.  Client shall indemnify, defend (by counsel to be selected by Firm), protect, and hold Firm and Firm's appraisers, agents, employees, affiliates, representatives, successors and assigns (each, a "**Firm Party**"), free and harmless from any and all claims, liabilities, losses, penalties, fines, forfeitures, amounts paid in settlement, judgments, and all reasonable attorneys' fees and related litigation costs, fees and expenses incurred by the any of such indemnitees (collectively "Losses"), which result from (i) any failure by Client or Client's agents or representatives to provide Firm with complete and accurate information regarding the Property; (ii) any material breach by Client of the provisions of the Agreement; (iii) if delivery of the appraisal to a third party is permitted by the Firm, Client providing an incomplete copy of the appraisal to such third party; or (iv) arising from Client or Client's agents or representatives providing a copy of the appraisal to a party not authorized by the Firm to receive such copy.   Notwithstanding the foregoing, Client shall have no obligation to Firm Parties hereunder for those Losses,

if any, resulting wholly from a Firm Party's fraud, gross negligence or willful misconduct, as determined by a court of competent jurisdiction.

27. CONFLICTING INFORMATION. In preparing the appraisal, it is possible that the appraiser will discover conflicting information. In that event, appraiser will utilize information and data considered to be the most authoritative and for critical information will document the source. Any material discrepancy and/or error in any of the data could have a substantial impact on the conclusions reported, and the Firm therefore reserves the right to amend conclusions reported if the Firm is made aware of any such discrepancy and/or error.

28. NO OTHER USE.  The appraisal may not be used, included or referenced, in whole or in part, in any offering or other materials without the prior written consent of the Firm, which consent may be withheld or conditioned upon the receipt by the Firm of an indemnity agreement, in form and content, satisfactory to Firm and provided by an indemnitor satisfactory to Firm. Client agrees to pay the fees of the Firm's legal counsel for review of any materials which is the subject of the requested consent. Except as agreed by the Firm expressly in writing, the Firm disclaims liability to any party other than Client.

29. DECISIONS IN CLIENT'S SOLE DISCRETION.  Client and any other identified Intended User should consider the appraisal as only one factor together with its own independent considerations and underwriting guidelines in making any decision or investment or taking any action regarding the Property. Client agrees that Firm shall not be responsible in any way for any decision of Client or any Intended User related to the Property or for the advice or services provided by any other advisors or contractors.

30. PARTICIPATION IN LEGAL PROCESS. Unless otherwise stated in this Agreement, Client agrees that the services pursuant to this Agreement shall not include participation in or preparation for, or attendance at, any legal, judicial, administrative, or arbitration proceeding relating to this assignment. In the event the Firm or any Firm Party is required, whether through the service of a subpoena or otherwise, to produce documents or participate in or prepare for any discovery, testimony or attendance, relating to the appraisal or this assignment, where the Firm or Firm Party is not a party to the action or proceedings involved, Client agrees to reimburse expenses incurred by the Firm or Firm Party, including attorney's fees, in responding to such subpoena or other legal process and compensate the Firm therefor based upon the appraiser's prevailing hourly or daily rate for providing services as an expert consultant or witness.

31. DISCLAIMER / LIMITATION OF LIABILITY.  Except as expressly provided herein, Firm makes no representations or warranties to Client or to any other person or entity with respect to the appraisal and the services to be provided by Firm under this Agreement. To the maximum extent permitted under applicable law, in no event will the Firm or any Firm Party be liable to Client or any third party (regardless of whether such party's claimed use or reliance on the appraisal was authorized by the Firm or a Firm Party) for any indirect, special, exemplary, incidental, or consequential damages (including loss of profits) arising from or relating to this Agreement or the appraisal, even if such party knew or should have known of the possibility of, or could reasonably have prevented, such damages. In no event shall the total liability of the Firm or any Firm Party to Client or any third party (regardless of whether such party's claimed use or reliance on the appraisal was authorized by the Firm or a Firm Party) arising from or relating to this Agreement or the appraisal, whether based on tort, contract, or any other legal theory, exceed the amount of fees paid to the Firm for the appraisal and the services described herein. Legal claims or causes of action relating to the appraisal are not assignable, except: (i) as the result of a merger, consolidation, sale or purchase of a legal entity, (ii) with regard to the collection of a bona fide existing debt for services but then only to the extent of the total compensation for the appraisal plus reasonable interest, or (iii) in the case of an appraisal performed in connection with the origination of a mortgage loan, as part of the transfer or sale of the mortgage before an event of default on the mortgage or note or its legal equivalent.

32. NON-PAYMENT.  In the event Client fails to make payments of any fees or sums when due and payable under this Agreement; then from the date due and payable until paid, the amount due and payable shall bear interest at the maximum rate permitted under the laws of the state in which the Property is located. If the Firm is required to undertake collection efforts including institution of legal action against Client relating to the Agreement, the Firm shall be entitled to recover attorney's fees, litigation expenses, and costs from Client.

33. TIME LIMIT FOR CLAIMS.  To the extent permitted under applicable law, any legal action or lawsuit or other proceeding by Client or any Intended User of the appraisal against Firm or a Firm Party  whether based in contract, tort, warranty, indemnity or otherwise, relating to the appraisal shall be commenced within two (2) years from the date of delivery of the appraisal to the claimant in such action or proceeding, unless the applicable law provides for a shorter period, and any such claimant waives the right to a jury in any such legal action or lawsuit or other proceeding.  Notwithstanding the state of domicile or residency of either party to this Agreement, this Agreement shall be governed and construed under the laws of the state in which the Property is located, and venue for any action or proceeding arising out of this Agreement shall be deemed proper only in the court of competent jurisdiction located in the state in which the Property is located.

**SIGNATURE PAGE FOLLOWS**

**IN WITNESS WHEREOF**, the parties hereto have caused the Agreement to be executed by their respective duly authorized representatives as of the date first set forth above:

NEWMARK VALUATION & ADVISORY, LLC

By: ____*Jeff Mayer*____
Jeffrey Mayer, EVP

URBAN COMMONS 2 WEST LLC

By: ____*Mark Podgainy*____

URBAN COMMONS 2 WEST II LLC

By: ____*Mark Podgainy*____

URBAN COMMONS 2 WEST III LLC

By: ____*Mark Podgainy*____

URBAN COMMONS 2 WEST IV LLC

By: ____*Mark Podgainy*____

URBAN COMMONS 2 WEST OPERATING TENANT, LLC

By: ____*Mark Podgainy*____