

**DAVIDOFF HUTCHER & CITRON LLP**
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NEW YORK 10605

TEL: (914) 381-7400
WWW.DHCLEGAL.COM

FIRM OFFICES

NEW YORK
ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NY 10158
(212) 557-7200

WEST PALM BEACH
ATTORNEYS AT LAW
1107 NORTH OLIVE AVENUE
WEST PALM BEACH, FL 33401
(561) 567-8488

FIRM OFFICES

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WRITER'S DIRECT: 914-381-7400 EXT. 3
E-MAIL: JSP@DHCLEGAL.COM

February 21, 2023

Hon. Philip Bentley
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

   **Re:  Urban Commons 2 West LLC, Et Al.**
   **Chapter 11 – Lead Case No. 22-11509(PB)**

Dear Honorable Judge:

  This firm is counsel to the above referenced debtors ("Debtors"). This letter is respectfully submitted on behalf of the Debtors in accordance with the Scheduling Order entered by the Court on February 17, 2023 (ECF 174) scheduling a case conference for February 23, 2023 at 2:00 p.m. to discuss setting a schedule for briefing, discovery if needed, and hearings on:

1. Any request, pursuant to Paragraph 7 of the First Amended Stipulation and Order Between the Millennium Point Condominium Board and Battery Park City Authority With Respect to Schedule for Rent Re-Set And Appraisal Process of Appraisal (as defined in that Order; the "Rent Re-Set Procedures Order") by this Court; and

2. The scope and extent of the Residential Board's rights, under the Ground Lease and related documents, with respect to the management and operation of the Hotel.

  As determination of these issues are essential in giving clarity to prospective bidders in connection with the Debtors' sale process underway, the Debtors respond as follows:

Hon. Philip Bentley
February 21, 2023
Page 2

1) <u>Jurisdictional Issues Concerning the Rent Re-Set Procedures Order and the Scope and Extent of the Residential Board's Rights under the Ground Lease and Related Documents.</u> The Debtors submit that the Court should first confirm and/or determine, as applicable, as a threshold issue, whether and to what extent the Bankruptcy Court has jurisdiction to determine and adjudicate issues concerning (a) disputes over the Appraisal Process referenced in the Rent Re-Set Procedures Order or (b) the scope and extent of the Residential Board's rights under the Ground Lease, Hotel Unit Lease (and Sublease) and related documents. The Debtors submit that the Court confirm and/or determine these jurisdictional issues before determining any underlying substantive issues regarding the Residential Board's rights under the Ground Lease and related documents. The Debtors propose that the parties brief the issues regarding jurisdiction no later than March 9, 2023, with the Court to determine such issues on or before March 16, 2023.

    Accordingly, the Bankruptcy Court must initially determine whether it has jurisdiction to determine the scope of the Residential Board's rights within the standard provided by the First Department (see discussion below).

2) <u>Substantive Issues Concerning The Residential Board's Rights Under the Ground Lease and Related Documents</u>. In the event that the Court confirms it has jurisdiction to adjudicate disputes over, inter alia, the Appraisal Process referenced in the Rent Re-Set Procedures Order, the Rent Re-Set Procedures Order already governs the briefing schedule with respect to the Court's ultimate determination of the appraisal to be used for the Ground Lease rent re-set, which must be April 14, 2023, 7 days before the Bid Deadline (as defined in the Bid Procedures annexed to the Sale Procedures Order). Also, in the event that the Court determines it has jurisdiction over issues concerning the Residential Board's rights under the Ground Lease and related documents, the Debtors propose that the parties brief the issues concerning the scope and extent of its rights no later than March 30, 2023, with the Court to determine such issues on or before April 14, 2023.

    The First Department held that "Inasmuch as the availability of the services provided by a first-class hotel to the residential unit owners "affect[s] a condominium unit owner's standard of living and ability to sell," the unit owners are intended rather than incidental beneficiaries." *Residential Bd. of Millennium Point v Condo. Bd. of Millennium Point*, 197 AD 3d 420 [1st Dept. 2021] (the "Decision"). Stated otherwise, if the Residential Board is unable to demonstrate that a certain service measurably and adversely affects a unit owner's (i) standards of living; and (ii) ability to sell, then it can be argued that such service is not within the scope and extent of the Residential Board's rights or otherwise subject to the Residential Board's consent.

Hon. Philip Bentley
February 21, 2023
Page 3

    Pursuant to a settlement agreement (the "Settlement") between, *inter alia*, the Residential Board, the Condominium Board and the Commercial Board (which boards comprise the Millennium Point Condominium; the "Boards"), the parties have agreed that the Decision is the "final and non-appealable" finding and holding that governs the Residential Board's rights with respect to the Hotel Unit, under the Ground Lease and related documents.

3) <u>Anticipated Issues Concerning the Residential Board's Rights Under the Ground Lease and Related Documents.</u> The Debtors anticipate that, in connection with a particular Qualified Bid (as defined in the Bid Procedures), the Court will need to determine whether the Residential Board has approval or veto rights over, inter alia, the following types of Ground Lease and Hotel Unit provisions and any proposed modifications thereof acceptable to BPCA[1], consistent with the Decision that the Residential Board and individual unit owners are intended third-party beneficiaries of the Ground Lease and, for example, the Operator Agreement, with respect *only* to services that "affect a condominium unit owner's standard of living and ability to sell."

    By way of example, the Operator Agreement requires the Hotel to include a "restaurant on the ground floor and a restaurant consistent with the Leading Hotels Standards (with a liquor license) on the first floor, a bar, a lobby lounge, a ballroom, meeting rooms, health club and pre-function area(s)…." Unless the Residential Board can demonstrate that a condominium unit owner's standard of living and ability to sell their unit is adversely affected by the lack of one of these amenities, then a change in such Hotel Requirement should not require the Residential Board's consent. Below are references to additional standards, requirements, and services which should be reviewed by the Court in accordance with the Decision:

I. Offering Plan:
   a. Part I, ¶13: "There is no guarantee that the Ritz Carlton will continue to operate the hotel, maintain the Health Club or provide the concierge services and Purchasers are not a third party beneficiary of the Sponsor's rights under the sub-management agreement."
   b. "The Condominium," pg. 2: there will be available to occupants of the Residential Section, certain luxury apartment type services, including … 24-hour doorman service, automatic elevators, cable television service…"
   c. "The Condominium," pg. 2: "in accordance with the terms of the Lease, unless BPCA approves otherwise, the Hotel Unit may only be used as a first class hotel where no fewer than eighty percent of the rooms are used for transient occupancy…"
   d. "Certain Definitions," pg. 9: "Health Club"

---

[1] The following examples are not intended to be exhaustive of the type of Ground Lease/Hotel Unit Lease modifications that a Qualified Bidder might request.

Hon. Philip Bentley
February 21, 2023
Page 4

    e. "Use" pg. 26: "The Hotel Unit must be used as a first class hotel and the First Floor uses of the Building are required to include a restaurant space…"
    f. "Commercial Units," pg. 45:
        i. "The Residential Board will not have right to restrict or limit the method operation, any uses or appearances of the Commercial Units which are permitted by Law and the Lease."
        ii. "The Residential Unit Owners will have no interest in the rents, profits or revenues from the rental or use of any space in the Commercial Units."
    g. "Services and Facilities" pg. 48-51 (tracked in Ground Lease and Operator Agreement below)
    h. "Sub-management Agreement" – Pg. 173. This was developed into the Operator Agreement, referenced below
        i. Base hotel concierge service; and
        ii. Sec. b (pg. 173): 24-hour room service, catering, central commissary for groceries, laundry, dry cleaning, babysitting, florist, air transportation and secretarial services

II. Ground Lease:
    a. Sec. 23.01(b)(i): "The ground floor uses of the Building shall include a restaurant space…"
    b. Sec. 23.01(b)(ii): "the first tower floor above the street wall portion of the Building along Battery Place shall include a first class to luxury or deluxe restaurant having a liquor license."
    c. Sec. 23.05(a): "Tenant shall cause the Hotel to be operated … only as a hotel with the highest rating by a nationally recognized hotel rating service…
    d. Sec. 23.05(a): Tenant, its brand, and operator, is approved "for as long as the quality of standards set forth in the Hotel Operator Management Agreement … are maintained."

III. The Operator Agreement:
    a. Section 2.2: Concierge Services
    b. Section 2.9: Standards of Operation and Care

The Bankruptcy Court therefore needs to determine, in accordance with the Decision, if a change in any of these services, for example, adversely affects a unit owner's standard of living or ability to sell. Likewise, the Court needs to determine whether or not the Debtors require approval from the Residential Board with respect to a change in the Hotel Brand or the Hotel Operator subject to, as provided by the Decision, the Residential Board being able to show that the proposed change of brand or operator would have a measurable adverse effect on a residential unit owner's standard of living and ability to sell.

As a corollary, the Court needs to determine whether or not the Residential Board may dictate which hotel rating service is acceptable, based upon the Residential Board's ability to demonstrate that the proposed choice of hotel rating service would cause a measurable adverse effect on a residential unit owner's standard of living and ability to sell.

Hon. Philip Bentley
February 21, 2023
Page -5-

    Thank your Honor for your consideration of the foregoing. Please do not hesitate to contact the undersigned if you have any questions.

                Respectfully,

                By: *Jonathan S. Pasternak*
                    Jonathan S. Pasternak

JSP/
cc: Janice MacAvoy, Esq.
    Tracy Klestadt, Esq.
    Steven Smith, Esq.
    All Parties Receiving ECF Notification
    United States Trustee