**KLESTADT
WINTERS
JURELLER
SOUTHARD &
STEVENS**, LLP

200 WEST 41ST STREET
17TH FLOOR
NEW YORK, NY 10036-7203
TELEPHONE (212) 972-3000
TELEFAX (212) 972-2245
WWW.KLESTADT.COM

TRACY L. KLESTADT
PARTNER
E-mail: tklestadt@klestadt.com
Direct: (212) 679-8700

February 21, 2023

**VIA ECF**
The Honorable Philip Bentley
United States Bankruptcy Judge
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
New York, New York 10004

Re:    **In re Urban Commons 2 West LLC, *et al.*, Debtors[1] (Case No. 22-11509 (PB))
       (Jointly Administered)**

Dear Judge Bentley:

The Residential Board writes in response to this Court's order, dated February 17, 2023 [ECF No. 174] (the "Order"), requesting briefing on two issues. For the reasons set forth herein, we respectfully suggest that a hearing on these issues is unnecessary or premature and/or the Bankruptcy Court respectfully lacks subject matter jurisdiction to decide both issues.

A.    **The Court Potentially Lacks Subject Matter Jurisdiction Over Disputes between the Residential Board and the BPCA**

As a preliminary matter, for purposes of preserving the Residential Board's rights under the Ground Lease, the Residential Board notes that the appraisal formula in the Ground Lease, as interpreted by BPCA, to the extent it would be relied on to determine the ground rent, would be unconscionable and overreaches. It must be presumed that BPCA and the Sponsor would not have contemplated a rent reset formula which, by its terms, would be fundamentally unsustainable for the Residents. *Indeed, BPCA has already acknowledged publicly and in writing that the rent reset formula, which has never been used before for the Condo, or for any of the other 17 Condominiums in Battery Park City, is economically unworkable and its application would be unconscionable. One can readily see the problem in the provision that would result in the higher of 6% of fair market value—which by virtue of BPCA's appraisal would result in a 1100% increase—and the 25% "default" increase provision. Notably, BPCA has invoiced both the Residents and the Hotel under the 25% default increase since January 2022.*

---

[1] Jointly administered with Urban Commons 2 West II LLC (Tax ID: **-***7987), Urban Commons 2 West III LLC (Tax ID: **-***3270), Urban Commons 2 West IV LLC (Tax ID: **-***8418), and Urban Commons 2 West Operating Tenant LLC (Tax ID: **-***0849), with a shared mailing address of 3334 East Coast Highway, No. 350, Corona Del Mar, CA 92625 (collectively, the "Debtors").

*The Honorable Philip Bentley*
*February 21, 2023*

Notwithstanding its view that the appraisal process, as interpreted by BPCA, would result in unsustainable rent increases for both the Residents and the Hotel Unit, the Residential Board does not intend to challenge the remaining steps of the appraisal process as set forth in the Stipulation[2] [ECF No. 168].  The Stipulation was intended to set the schedule and procedure for obtaining an *appraisal*[3], primarily so the *Commercial or Hotel Unit* could use the appraisal to determine *its* portion of the ground rent under the Ground Lease for the benefit of prospective bidders in the Debtor's Bankruptcy Court-ordered sale process.  However, now that the parties have resolved the Bid Procedures, which includes a provision whereby BPCA intends to bifurcate its negotiations of ground rent with the Hotel and Residents, the appraisal process no longer serves its stated purpose.

Moving to substance, the Residents respectfully submit that an adjudication of the Residents' rights to contest the use of the appraisal to determine the Residents' ground rent is not yet justiciable and any such potential dispute would not be subject to this Court's subject matter jurisdiction for the following reasons.

First, this is a potential dispute between the Residents and BPCA and does not involve the Debtors. While the appraisal applies to the entire Condominium, the rent re-set provision between the Residents and the Hotel is separate and distinct. All facets of the rent, including the setting, re-setting and enforcement of the rent, as between the Residents and the Hotel Unit, are separate. Among these,  the Master Lease and Ground Lease contemplate the negotiation of the ground rent re-set, regardless of whether it is based on an appraisal or other factors, to be bifurcated between the Residents and the Hotel Unit. *See* Ground Lease at §3.01(a)(1) and (2). Next, the Sponsor and BPCA specifically executed the Hotel Lease and Sublease to ensure that, in the event of a default by the Hotel Unit Owner in the payment of ground rent, such would not cause a default by the entire Condo such that the Residents would be deemed to be in default and thus be evicted from the premises.[4]  Instead, BPCA is required to prosecute any defaults by the Hotel Unit Owner for non-payment of ground rent through the Hotel Lease and Sublease. Finally, and to further confirm the bifurcation of that process, the BPCA and the Debtors have now consented to, and this Court has ordered, a process whereby BPCA will negotiate the Hotel's ground rent directly with prospective bidders (*See* Bid Procedures Order [ECF No. 175], at Ex. A, I.a.(viii)).

This Court does not have subject matter jurisdiction over disputes between two non-debtors, which would be non-core proceedings where "arising in" (*i.e.* rights that have no existence outside of bankruptcy) or "arising under" (*i.e.*, substantive rights created by federal law) jurisdiction is lacking. *See Harlem Multifamily LLC v. Eight-115 Associates, LLC (In re Eight-115 Associates, LLC),* 626 B.R. 383 (Bankr. S.D.N.Y. 2021). Additionally, it is respectfully submitted that the Court should resist the assertion of "related to" jurisdiction under the current circumstances in which the rent re-set process has been bifurcated and where the Residents' ground rent has no impact on the disposition of the Debtors' assets, BPCA's negotiation of rent with prospective

---

[2] The Stipulation identifies the BPCA and the Condominium Board (which is comprised of members of each of the Residential and Commercial Board) as the "Parties".  However, the signatories to the Stipulation are counsel for each of BPCA, the Residential Board and the Debtors (i.e., the Commercial Board) and is not signed by the Condominium Board or its counsel.

[3] Despite the title of the Stipulation none of the provisions set forth therein govern the actual rent re-set, which the Residents will undertake directly with BPCA independent of the Debtors.

[4] The First Department specifically made a finding on this issue (First Department Decision at p.4).

*The Honorable Philip Bentley*
*February 21, 2023*

bidders in connection with the asset sale, the Debtors' reorganization or the administration of their estates. *See In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 709 (Bankr. D. Del. 2016)); *see also 47 East 34 Street (NY) LP v. BridgeStreet Worldwide Inc.*, 2021 WL 2012296 at *4 [20-9979 (LJL)] (S.D.N.Y. May 20, 2021) (holding that "claims do not "arise in" the Debtor Action because they involve only state law claims among non-debtors to enforce a contract formed prior to commencement of the Debtor Action" and that "related to" jurisdiction exists "where there is a reasonable legal basis for such a claim, 'the […] action could have a 'conceivable effect' on 'the debtor's rights, liabilities, options or freedom of action' and could 'impact[] upon the handling and administration of the bankruptcy estate'") (citing *Sokola v. Weinstein*, 2020 WL 3605578, at *9 (S.D.N.Y. July 2, 2020)(quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 208 n.6 (1995)). As set forth above, the Residential Board will permit the appraisal process to play out; however, any dispute between the Residents and BPCA with respect to the rent re-set or negotiations, is wholly distinct from the Hotel and would not impact the Debtors' bankruptcy proceedings. Consequently, any such disputes that might arise between the Residential Board and the BPCA on those issues, including the Residential Board's challenge of the application of any appraisals obtained in accordance with the Stipulation, is not "core" with respect to these proceeding and asserting subject matter jurisdiction over that issue in this Court is not appropriate even on the basis of "related to" jurisdiction.

*Second*, the parties to the Stipulation did not, and could not waive, consent or stipulate to confer subject matter jurisdiction on the Bankruptcy Court with respect to any challenges to the reset of ground rent due from the Residents. The Court cannot acquire subject matter jurisdiction by admission or stipulation. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (citations omitted) ("no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings"); *ER Squibb & Sons v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 929 (2d Cir. 1998) ("[N]o amount of agreement by the parties can create jurisdiction where none exists."). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citations omitted); *see also* Fed. R. Civ. P. 12(b)(1) & (h)(3). Thus, the Stipulation cannot be invoked for the proposition that the parties have agreed to vest the Court with subject matter jurisdiction over a potential rent reset between the Residential Board and the BPCA. Further, as explained by the Second Circuit in *Filsaime v. Ashcroft*, "we have a *continuing* obligation to satisfy ourselves that federal jurisdiction over the matter before us is proper." 393 F.3d 315, 317 (2d Cir. 2004) (*citing Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) (emphasis added); *see also Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc.,* 930 F.2d 1132, 1137-38 (6th Cir. 1991) ("federal courts are courts of limited jurisdiction and have a continuing obligation to examine the subject matter jurisdiction throughout the pendency of every matter before them") (citation and footnote omitted).

Finally, this Court has questioned the Residential Board's future rights to prosecute a claim asserting that the Ground Lease, as it applies to the Residents, is subject to reformation and whether such claim is within the exclusive jurisdiction of this Court. Although not justiciable at this time, the basis for any such claim would be, *inter alia*, mutual mistake based upon changed and unforeseen circumstances which threaten an outcome that neither party to the Ground Lease ever

*The Honorable Philip Bentley*
*February 21, 2023*

intended. It is well established that an agreement may be reformed under such circumstances. *Sullivan-Mestecky v. Verizon Communs. Inc.*, 961 F.3d 91, 103 (2d Cir. 2020) ("equity would reform [a] contract, and enforce it, as reformed, if … mistake or fraud were shown") (quotation omitted). In particular, mutual mistake may include unforeseen circumstances occurring after the contract has been executed. As explained in *Tilcon Minerals v. Orange & Rockland Utils.*, in which the parties' dispute arose over a nine-year old contract calling for one of the parties to pay for relocation of a factory, the cost of which, due to changed circumstances, would have been far greater than either of the parties had contemplated:

> It appears likely that because of changed circumstances, moving the plant would be unprofitable if the interests of both parties were pooled. Had all facts now available been known in 1985, rational negotiators for the parties would have attempted to determine the best outcome by pooling the combined interests of parties and then dividing the benefit obtained so that each party is better off than without the resolution adopted. Reformation of the agreement to create arrangements which the parties would have been most likely to have negotiated had currently available information been known, is the traditional and presumptively appropriate judicial response.

869 F. Supp. 237, 238 (S.D.N.Y. 1994) (*citing National American Corp v Federal Republic*, 597 F.2d 314 (2d Cir 1979); *Lazarus v. Bowery Savings Bank*, 16 N.Y.2d 793 (1965), *Donohue v. Picinich*, 852 F. Supp. 144 (D. Conn. 1994), Farnsworth, *"Disputes Over Omissions in Contracts,"* 68 Colum. L. Rev. 860 (1968); Farnsworth, *"Some Considerations in the Drafting of Agreements: Problems in Interpretations and Gap-Filling,"* 23 Rec Ass'n. Bar City NY 1095 (1968); Jones, *The Jurisprudence of Contracts*, 44 U. Cinc. L. Rev. 43 (1975)) (internal citation omitted).

## B.  The Residents' Third-Party Rights in the Operation of the Hotel were Definitively Declared by the First Department

Pursuant to a settlement agreement (the "Settlement Agreement")[5] reached by the parties (*i.e.*, the Residential Board, as plaintiff, and each of the Condominium Board, Commercial Board, Westbrook and Highgate, as defendants) in the *Westbrook* Litigation *Residential Board of Millennium Point, et al., v. Condominium Board of Millennium Point*, et al., Index No. 651238/2018 (New York State Supreme Court, County of New York), as appealed under Appeal Nos. 2018-4312 and 2020-03598 (the "Westbrook Litigation"), the parties agreed that the First Department Decision would be fully binding and thus finally resolves all issues with respect to the Residents rights under the Ground Lease.

In the *Westbrook* case, the Supreme Court of the State of New York Appellate Division, First Judicial Department (the "First Department") has already decided the scope and extent of the Residential Board's rights to enforce the terms of the Ground Lease based upon, *inter alia*, its status as an intended third-party beneficiary in the Decision and Order issued August 5, 2021 (the

---

[5] The Settlement Agreement is not attached to this letter because the parties are constrained from making it public by confidentiality provisions set forth therein. Nevertheless, the Residential Board will make the Settlement Agreement available for the Court's *in camera* review or will otherwise move to file the document under seal. It should be noted that counsel for BPCA also served as counsel for Westbrook in the *Westbrook* litigation.

*The Honorable Philip Bentley*
*February 21, 2023*

"First Department Decision"). *See* Heymann Declaration to Residential Board's Limited Objection to Debtors' Sale Motion, at Ex. C [ECF No. 155] (the "Limited Objection"). The First Department Decision is clear and decisive and does not require this issue to be re-litigated in this Court.

As the Court recognized at the February 17, 2023 hearing, the First Department Decision, at a minimum, declared the Residential Board's rights to enforce the provisions of the Ground Lease related to the Hotel Rating Requirement (Ground Lease at § 23.05(a), pp. 102-103) and Nationally-Recognized Brand Requirement (Ground Lease at Ex. D, p. 103). *See* Residential Board's Limited Objection at p. 7. However, as discussed infra, the First Department Decision does not limit the Residential Board's rights to only those under a narrow portion of §23.05 of the Ground Lease.

The First Department also held that the Residents have the right to enforce the standards set forth in the Declaration and By-Laws as well because the Declaration and By-Laws constitute enforceable agreements between the unit owners and boards of managers.[6]

As discussed at the Hearing, the By-Laws contain multiple provisions requiring the unit owners and various condominium boards to strictly comply with the terms of the Ground Lease. See Bylaws §§2.1.1; 6.9; 6.14.4; 9.12. The Declaration contains similar provisions. See, e.g., 9.4. Because the Declaration and By-laws constitutes enforceable contracts under New York law, the Residential Board, as a party to the Declaration and By-Laws, has the power to enforce the entirety of the Ground Lease against the Debtors, Commercial Board and any member or board of the Condo. That was the Residential Board's first cause of action. The Ground Lease requirements referenced in the First Department decision merely comprise two of the Ground Lease multiple requirements that were referenced in the Complaint (and incorporated into the first cause of action) and during briefing of the appeal. They comprise a mere subset of the Ground Lease multiple requirements imposed upon the unit owners and boards which the Residents and Residential Board have the power to enforce. Other Ground Lease requirements referenced in the Complaint and during briefing include, *inter alia*, the Hotel Operator Requirements (Art. I, p. 11 of the Ground Lease), the furniture, fixtures and equipment requirement (FF&E) (§15.03) and the requirement that the Condo feature a first-class restaurant (§23.01(b)(ii) (among others). Consistent with New York law, the First Department summarily sustained the Residential Board's standing to enforce these provisions of Ground Lease and any other that a unit owner or a board were to violate. *Residential Bd. of Millennium Point v. Condo. Bd. of Millennium Point,* 197 A.D.3d 420, 421-22 (1st Dep't. 2021) ("We note first that even if plaintiffs were not intended third-party beneficiaries of the ground lease, the complaint would not correctly be dismissed in its entirety …. The first [cause of action] alleges breach of the condominium declaration and bylaws"). And the only claim comprising in the first cause of action sustained by the First Department was that the defendants therein breached the Declaration and By-Laws by refusing to comply with the Ground Lease. Thus, the Residents have the power to enforce the entirety of the Ground Lease (including the provisions referenced above) through the Declaration and By-Laws; and the First Department fully sustained that power.

---

[6] For the complete citation of New York law supporting this proposition, the Court is respectfully referred to the Residential Board's Limited Objection at ¶ 47.

*The Honorable Philip Bentley*
*February 21, 2023*

As for the third-party beneficiary status, the First Department ruled simply: "In any event, plaintiffs are intended third-party beneficiaries under the Ground Lease." *Id.* The First Department thereafter gave reasons why the Residents and Residential Board constitute third-party beneficiaries under the Ground Lease, specifically citing that they were promised a first-class, nationally-branded hotel with amenities matching that designation; however, the First Department never suggested that those examples constituted the full breadth of the Residents' standing.

The First Department's determination is final. No party should be afforded an opportunity to relitigate the Residential Board's standing to enforce the Ground Lease in the Bankruptcy Court or in any other action. These claims have already been fully adjudicated in favor of the Residents and the Residential Board in State Court. Moreover, under the *Rooker-Feldman* doctrine this Court should not sit in appellate review of the First Department's Decision. Any determination of the Bankruptcy Court that alters the First Department Decision upholding the Residential Board's rights with respect to the Ground Lease, By-Laws and Declaration would violate the principals of comity. "There is a strong public policy grounded in the interest of comity between federal and state courts and the notion of federalism, that federal courts should not unnecessarily interfere with state court proceedings." *In re Times Square JV LLC,* 2023 WL 1786408 at *6 [Case No. 22-11715 (JPM) (Bankr. S.D.N.Y. Feb. 4, 2023). Moreover, federal courts lack subject matter jurisdiction under 28 U.S.C. § 1257, to sit in appellate review of state court judgments. *Id.* (citing *Exxon Mobil v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, which recognized *Rooker-Feldman*[7] as a "jurisdictional doctrine that bars 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments'").

The Residential Board does not believe it is necessary to litigate prospective modifications to the Ground Lease *a priori*; all prospective bidders should now be aware of the Residents' rights and interests with respect to operation of the Hotel and, presumably, BPCA will engage in good faith consultation with the Residential Board before proposing any modifications that might undermine the Residents' judicially determined rights.

For these reasons, the Residential Board respectfully submits that the Court need not and should not set a schedule to adjudicate the foregoing issues at this time.

Respectfully submitted yours,

*/s/ Tracy L. Klestadt*

Tracy L. Klestadt

---

[7] The Second Circuit "has identified four elements without which *Rooker-Feldman* does not apply: (i) the federal court plaintiff must have lost in state court; (ii) the federal plaintiff must complain of injuries caused by the state court judgment; (iii) the plaintiff must invite district court review and rejection of that judgment; and (iv) the state court judgment must have been rendered before the district court proceedings commen[t]ed." *Id.* (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).