DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtors*
605 Third Avenue
New York, New York 10158
(212) 557-7400
Robert L. Rattet, Esq.
Derek A. Wolman, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:                                      Chapter 11

URBAN COMMONS 2 WEST LLC, ET AL.,[1]     Lead Case No.: 22-11509 (PB)
                                            (Jointly Administered)

                            Debtors.
--------------------------------------------------------X

## **PLAN OF LIQUIDATION**

---

[1] *Jointly administered with Urban Commons 2 West II LLC (Tax ID: \*\*-\*\*\*7987), Urban Commons 2 West III LLC (Tax ID: \*\*-\*\*\*3270), Urban Commons 2 West IV LLC (Tax ID: \*\*-\*\*\*8418), and Urban Commons 2 West Operating Tenant LLC (Tax ID: \*\*-\*\*\*0849), with a shared mailing address of 3334 East Coast Highway, No. 350, Corona Del Mar, CA 92625.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

SUMMARY OF THE PLAN ............................................................................................... 1

ARTICLE I  DEFINED TERMS AND RULES OF INTERPRETATION ..................... 2

    1.    Definitions. ............................................................................................. 2

    2.    Interpretation. ......................................................................................... 9

ARTICLE II CLASSIFICATION OF CLAIMS ................................................................ 9

    1.    Introduction. ........................................................................................... 9

    2.    Classes. ................................................................................................... 9

    3.    General Rules of Classification. ........................................................... 11

ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS ...................................... 11

    1.    Administrative Claims of BPC DIP Lender, LLC. ............................... 11

    2.    Allowed Secured and Administrative Claims of the Residential Board. ................. 11

    3.    Allowed Unsecured and Administrative Claims of BPCA. .................... 11

    4.    Allowed Unsecured Claims of the Union ............................................. 11

    5.    Other Administrative Claims, including the Claims of the Professionals ............... 11

    6.    U.S. Trustee's Fees ............................................................................... 12

    7.    Allowed Priority Tax Claims ................................................................ 12

    8.    Allowed Other Priority Claims ............................................................. 12

ARTICLE IV.  MEANS FOR IMPLEMENTATION OF THE PLAN  AND APPOINTMENT OF THE PLAN ADMINISTRATOR ......................................................................... 12

    1.    Liquidation of the Debtors, Closing on the Sale, and Funding of the Plan. ............... 12

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES 16

    1.    Rejection of Unexpired Leases and Executory Contracts. ........................................ 16

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ................................. 17

    1.    Distributions After the Effective Date. ................................................. 17

ARTICLE VII. DISPUTED CLAIMS PROCEDURES ................................................. 18

1.      Claim Objections. ................................................................... 18

ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE ................................................................................................. 19

1.      Conditions Precedent to Plan Confirmation. ............................ 19

2.      Conditions Precedent to the Effective Date. ............................ 19

ARTICLE IX. AMENDMENT, MODIFICATION, WITHDRAWAL OR REVOCATION OF THE PLAN ................................................................................................. 20

ARTICLE X. EFFECTS OF CONFIRMATION ....................................... 20

1.      Vesting of Assets. .................................................................... 20

2.      Pre-Effective Date Jurisdiction. ............................................... 20

3.      Binding Effect. ......................................................................... 20

4.      Term of Prior Orders, Injunctions or Stay. ............................... 21

5.      Preservation of Causes of Action. ........................................... 21

6.      Dissolution of the Debtors. ...................................................... 21

ARTICLE XI. RELEASES AND INJUNCTIONS ..................................... 21

The Debtors are being liquidated so they are not entitled to a discharge, but the Plan, the Confirmation Order and the order granting the final decree closing the Chapter 11 Cases shall provide for the following releases, injunctions and exculpations: ................................................................... 21

1.      Releases. .................................................................................. 22

2.      Exculpation. ............................................................................. 22

3.      Injunction. ................................................................................ 23

ARTICLE XII. RETENTION OF JURISDICTION .................................... 23

1.      Post-Effective Date Jurisdiction. .............................................. 23

ARTICLE XIII. MISCELLANEOUS PROVISIONS ................................... 24

1.      Severability of Plan Provisions. ............................................... 24

2.      Successors and Assigns and Binding Effect. ........................... 25

3.      Term of Injunctions or Stays. ................................................... 25

4.    Injunction Against Interference With Plan. ................................................... 25

5.    Revocation, Withdrawal, or Non-Consummation. ....................................... 25

6.    Notices. ......................................................................................................... 25

7.    Governing Law. ............................................................................................ 25

8.    Post-Effective Date Professional Fees. ......................................................... 26

9.    Payment of Statutory Fees. ........................................................................... 26

10.    Post-Confirmation Date Service List Persons Entitled to Notice. .............. 26

11.    Post-Confirmation Reporting. ..................................................................... 26

12.    Confirmation Order and Plan Control. ........................................................ 26

13.    Dissolution of Debtors. ............................................................................... 26

14.    Extension of Dates; Consent. ...................................................................... 26

15.    Closing of Chapter 11 Cases. ...................................................................... 27

16.    No Admission. ............................................................................................. 27

## INTRODUCTION

Urban Commons 2 West LLC, Urban Commons 2 West II LLC, Urban Commons 2 West III LLC and Urban Commons 2 West IV LLC, four of the above captioned debtors and debtors-in-possession (collectively hereafter, the "Debtors")[2], submit this Plan for the liquidation of the Debtors and distributions on account of the outstanding Claims against the Debtors pursuant to section 1121 of title 11 of the United States Code. Holders of Claims should refer to the Disclosure Statement for a discussion of (i) the Debtors' history, business and the administration of the Chapter 11 Cases, (ii) a summary of this Plan, including distributions to Holders of Claims, and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan.

Capitalized terms herein shall have the meanings set forth in Article I hereof. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code, and this Plan is being proposed by the Debtors.

The Debtors will be filing the Plan Supplement with the Bankruptcy Court not later than May __, 2023. Upon such filing, all documents set forth in the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims may also obtain a copy of the Plan Supplement, once filed, by sending a written request to: Davidoff Hutcher & Citron LLP, c/o Jonathan S.. Pasternak and Robert L. Rattet, Esq., 120 Bloomingdale Road, Suite 100, White Plains New York 10605 or by email to jsp@dhclegal.com and rlr@dhclegal.com.

## SUMMARY OF THE PLAN

This Plan is a plan of liquidation that provides for the sale of the Debtors' Hotel related assets and the recoveries, if any, from Avoidance Actions. The Plan will primarily be funded with (a) the Available Cash, (b) the Administrative Carveout, and (c) the Litigation Proceeds, if any, respectively. As described in more detail below, the Plan provides for the appointment of a Plan Administrator who will prosecute Causes of Action, including Avoidance Actions, and make Distributions to Holders of Allowed Claims as provided in the Plan. The Plan provides for payments on Allowed Claims in accordance with the priorities for claims as set forth under the Bankruptcy Code. The classification and treatment of Claims under the Plan are set forth in Articles II and III. below.

**ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

---

[2] The Debtors covered under this Plan *do not* include Urban Commons 2 West Operating Tenant LLC.

# ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

1.    **Definitions**.  For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the Debtors, the following terms shall have the respective meanings set forth below:

1.1    **Administrative Carveout** means Cash derived from a voluntary contribution by the Class 1 Secured Creditor in the amount of $150,000 to be used for payments of post-Effective Date costs, fees and expenses of administration by the Plan Administrator and his professionals.

1.2    **Administrative Claim** means a Claim for costs and expenses of administration of the Estates pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates incurred after the Petition Date and through the Effective Date; (b) Claims of Professionals in the Chapter 11 Cases; and (e) fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including the U.S. Trustee Fees.

1.3    **Administrative Claims Bar Date** means the first Business Day that is 35 days following the Effective Date of the Plan, except as specifically set forth in the Plan or a Final Order.

1.4    **Affiliate** means such term as set forth in section 101(2) of the Bankruptcy Code.

1.5    **Allowed** means with respect to any Claim that portion of such Claim (i) which has been allowed by a Final Order; (ii) which is allowed under the terms of this Plan; or (iii) (a) which has been scheduled by the Debtor as not disputed, not contingent and not unliquidated, or (b) for which a proof of claim was properly and timely filed on or before the Bar Date, Government Bar Date or Administrative Claims Bar Date, as applicable, with the Bankruptcy Court and as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, the Plan, the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim or Administrative Claim or any portion thereof. Except as otherwise specifically set forth in this Plan, each Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provision of the Bankruptcy Code and applicable law.

1.6    **Auction** means the auction sale of the Hotel Interests pursuant to the Bid Procedures Order.

1.7    **Avoidance Actions** means any cause of action assertible under sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or similar non-bankruptcy law.

1.8    **Available Cash** means (a) the Debtors' Cash on hand at the Effective Date; (b) the Litigation Proceeds; (c) the proceeds of amounts realized from the liquidation of any other

2

assets of the Debtors; and (d) all other Cash the Debtors are entitled to, all of (a)-(d) net of amounts the Plan Administrator may determine at any time (i) as appropriate to maintain the value of the assets of the Post Effective Date Estate during the winddown and liquidation, and (ii) to pay approved costs of administration and winddown (including the costs and expenses of the Plan Administrator and the fees, costs and expenses of all professionals retained by the Plan Administrator).

1.9     **Ballot** means each of the voting forms to be distributed with the Plan and the Disclosure Statement to Holders of Claims in Classes that are impaired under the terms of the Plan and are entitled to vote in connection with the solicitation of acceptances of the Plan.

1.10     **Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§101, *et seq*., as in effect on the Petition Date.

1.11     **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York, Manhattan Division.

1.12     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

1.13     **Bar Date** means the last date by which non-governmental holders of Claims must file a proof of claim in the Chapter 11 Cases, which date is April 17, 2023.

1.14     **Bid Procedures** means the Bid Procedures approved by the Bankruptcy Court and annexed to the Bid Procedures Order.

1.15     **Bid Procedures Order** means the Order of the Bankruptcy Court entered on February 17, 2023 (ECF Doc. 175) authorizing the Debtors to conduct the Auction.

1.16     **BPCA** means the Battery Park City Authority d/b/a Hugh L. Carey Battery Park City Authority

1.17     **Brokers** means, collectively, Newmark & Co. and Rosewood Realty.

1.18     **Brokers Fee** means (a) 1.5% of the Successful Bid (as defined in the Bid Procedures) of a Successful Bidder (as defined in the Bid Procedures) other than BPC DIP Lender, LLC and/or BPC Lender, LLC or (b) $600,000 in the event that BPC DIP Lender, LLC and/or BPC Lender, LLC is the Successful Bidder.

1.19     **Business Day** means any day on which commercial banks are open for business in the City of New York and County of New York, New York, other than, a Saturday, Sunday or legal holiday in the State of New York.

1.20     **Cash** means the legal tender of the United States of America and cash equivalents, including, without express or implied limitation, bank deposits, checks and other similar items.

1.21    **Causes of Action** means any and all actions, causes of action, Avoidance Actions, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date; provided, however, that "Causes of Action" will not include causes of action with respect to any claim that has been released or waived by the Debtors through the Plan or a Final Order of the Bankruptcy Court.

1.22    **CBA** means the Debtors' collective bargaining agreement with the Hotel and Gaming Trades Council.

1.23    **Chapter 11 Cases** means the above-captioned cases commenced by the filing of voluntary petitions by the Debtors seeking relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date.

1.24    **Claim** means a claim against any of the Debtors as defined in section 101(5) of the Bankruptcy Code.

1.25    **Class** means a class of Holders of Claims described in Article II of this Plan.

1.26    **Condominium Board** means the Condominium Board of the Millennium Point Condominium, located at 2 West Street, New York, New York, with membership comprised of members of each of the Residential and Commercial Board.

1.27    **Confirmation** means entry of the Confirmation Order by the Bankruptcy Court.

1.28    **Confirmation Date** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

1.29    **Confirmation Hearing** means the hearing to consider Confirmation of the Plan before the Bankruptcy Court.

1.30    **Confirmation Order** means the order of the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code confirming the Plan.

1.31    **CRO** means Mark D. Podgainy as Chief Restructuring Officer of the Debtors.

1.32    **Cure Claims** means the Allowed Claims of parties to executory contracts or unexpired leases with the Debtors required to be paid upon assumption of their particular executory contract or unexpired lease pursuant to Section 365(b) of the Bankruptcy Code.

1.33    **Debtors** mean, collectively, Urban Commons 2 West LLC, Urban Commons 2 West II LLC, Urban Commons 2 West III LLC , Urban Commons 2 West IV LLC *but does not include* Urban Commons 2 West Operating Tenant LLC.

1.34    **Disallowed** means, with respect to any Claim or portion thereof that (i) has been disallowed pursuant to this Plan or by a Final Order of the Bankruptcy Court; (ii) is identified in the Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a Proof of Claim was not filed by the Bar Date, the Government Bar Date or the Administrative Claims Bar Date, as applicable; or (iii) is not identified in the Schedules and as to which no Proof of Claim has been filed or deemed filed by the Bar Date, the Government Bar Date or the Administrative Claims Bar Date, as applicable.

1.35    **Disclosure Statement** means the Disclosure Statement filed simultaneously with this Chapter 11 Plan of Liquidation filed by the Debtors in the Chapter 11 Cases as it may be further amended, modified, and supplemented.

1.36    **Disputed Claim** means any Claim (i) which is scheduled by the Debtors as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed by the deadlines set forth in Article VII.§1.1 of the Plan or by the Bankruptcy Code, Bankruptcy Rules or an order of the Bankruptcy Court extending such time for the filing of such objections, and as to which, such objection has not been determined by a Final Order of the Bankruptcy Court or withdrawn. Such Claim, or a portion thereof, shall not be deemed an Allowed Claim until and unless and to the extent it is resolved as an Allowed Claim by a Bankruptcy Court order.

1.37    **Distribution** means any distribution pursuant to the Plan to the Holders of Allowed Claims against the Debtors.

1.38    **Effective Date** means the first Business Day on or after the Confirmation Date on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions precedent to the effectiveness of the Plan set forth in Article VII. §2 of the Plan have been satisfied or expressly waived by the Debtors.

1.39    **Entity** means a Person, estate, trust, governmental unit, and the U.S. Trustee, within the meaning of Bankruptcy Code section 101(15).

1.40    **Estates** means, collectively, the estates of the Debtors created by the Chapter 11 Cases pursuant to Bankruptcy Code section 541.

1.41    **Executory Contract** means a contract or unexpired leases to which any Debtor is a party that has not previously expired or terminated pursuant to its own terms and is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.42    **Final Order** means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, re-argument, remand or retrial has expired and as to which no appeal or

5

petition for review, rehearing, certiorari, re-argument, remand or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, re-argument, remand or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, re-argument, remand or retrial can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

1.43    **General Unsecured Claim** means any Claim against the Debtors that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim and U.S. Trustee Fee or Class 1 Secured Claim, including the Unsecured deficiency Claims of BPC Lender, LLC

1.44    **Ground Lease** means the lease dated January 1, 2000, concerning real property located at 2 West Street, New York, New York, owned by BPCA, with BPCA as landlord and the Condominium Board as tenant. Pursuant to the Ground Lease, the condominium contains both a commercial portion and a separate residential portion.

1.45    **Government Bar Date** means the last date by which governmental holders of Claims must file a proof of claim in the Chapter 11 Cases, which date is August 7, 2023.

1.46    **Holder** means the legal or beneficial holder of a Claim (and, when used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

1.47    **Hotel** means the hotel unit located at the Millennium Point Condominium located at 2 West Street, New York, New York 1004.

1.48    **Hotel Interests** means the Debtors' interests in the following assets:

- the Hotel Unit or Commercial Unit of the Condominium located at 2 West Street, New York, New York 10004 ;
- all right, title and interest of the Debtors, if any, in and to the Ground Lease;
- all right, title and interest of the lessor in and to the Hotel Unit Lease;
- all right, title and interest of the sublessee in and to the Hotel Unit Sublease;

all the foregoing being and remaining subject to the provisions, terms and conditions of (and the obligations of the parties under) the Ground Lease, the Hotel Unit Lease, the Hotel Unit Sublease, and the Declaration of Condominium ("Declaration") and By-Laws of Millennium Point Condominium ("By-Laws") and together with all personal property located at the Hotel.

1.49    **Hotel Unit Lease** means the commercial portion of the Ground Lease dated January 1, 2000, originally with Millennium BPC as lessor and BPCA as lessee.

1.50    **Hotel Unit Sublease** means the commercial portion of the Ground Lease dated January 1, 2000, between Millennium BPC as lessor and BPCA as lessee.

1.51    **Impaired** means a Claim or class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.52    **Independent Manager** means Bernard A. Katz as sole and independent manager of the Debtors.

1.53    **Insider** has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.54    **Interests** means equity interests in the Debtors.

1.55    **Litigation Proceeds** means the proceeds from the prosecution of Debtors' Causes of Action after payment of all reasonable professional fees incurred in connection with the recovery of such proceeds.

1.56    **Other Priority Claim** means a Claim other than an Administrative Claim or a Priority Tax Claim that is entitled to priority under section 507 of the Bankruptcy Code.

1.57    **Petition Date** means November 15, 2022.

1.58    **Person** means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtors.

1.59    **Plan** means this Plan of Liquidation as it may be further amended, modified, and supplemented

1.60    **Plan Administrator** means Mark D. Podgainy.

1.61    **Plan Supplement** means the compilation of documents, including any exhibits and schedules to the Plan not included herewith, that the Debtors may file with the Bankruptcy Court prior to the Confirmation Hearing, as may be amended, supplemented or modified.

1.62    **Post-Effective Date Administrative Claims** means the Claims of the Plan Administrator and his professionals for reasonable fees, expenses and other compensation in connection with the administration of the Post-Effective Date Estate including pursuing Avoidance Actions and other Causes of Action

1.63    **Post-Effective Date Estate** means an estate created as of the Effective Date of the Plan comprised of all of the Debtors' rights title and interests in the Cash, Administrative Carveout, Unsecured Carveout, Litigation Proceeds, Causes of Action and any and all other assets of the Debtors and the debtors in possession, which will be transferred to the control and administration of the Plan Administrator as of the Effective Date.

1.64    **Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.65    **Professional Claim** means a Claim by any Professional for compensation for

legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code sections 327, 328, 330(a), 331, 503(b) and/or 1103.

1.66    **Professionals** means professional persons retained under section 327 or 1103 of the Bankruptcy Code pursuant to a Final Order of the Bankruptcy Court and shall specifically include (a) Davidoff Hutcher & Citron LLP, and (ii) Silverman Acampora, LLP.

1.67    **Proof of Claim** means a proof of claim filed with the Bankruptcy Court in connection with the Chapter 11 Cases.

1.68    **Pro Rata** means regarding Claims, the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of Allowed Claims in such Class.

1.69    **Residential Board** means the Residential Board of Millennium Point Condominium.

1.70    **Sale** means the sale of the Hotel Interests.

1.71    **Secured Claim** means a Claim held by creditors secured by valid, perfected and enforceable mortgages or liens on real and/or personal property owned by the Debtors or upon the leasehold interests and assets of the Debtors in accordance with section 506(a) of the Bankruptcy Code.

1.72    **Schedules** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.73    **Successful Bidder** shall have the meaning set forth in the Bid Procedures.

1.74    **Unclaimed Property** means that any Distributions to Holders of Allowed Claims that are undeliverable or unclaimed at the expiration of 90 days from the date such Distribution was made.

1.75    **Unimpaired** means, with respect to any Class, that such Class is not Impaired.

1.76    **Union** means Hotel and Gaming Trades Council, AFL-CIO and NYHTC and HANYC Inc. Employee Benefit Funds.

1.1    **U.S. Trustee** means the Office of the United States Trustee for the Southern District of New York.

1.2    **U.S. Trustee Fees** means the obligation to pay quarterly fees to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code until such time as the Chapter 11 Case is closed.

1.3    **Voting Deadline** means 4:00 p.m. (EST) on May __, 2023.

1.4    **Voting Record Date** means 4:00 p.m. (EST) on May __, 2023

2.    **Interpretation.** Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein means assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other distribution under the Plan, it means on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

1.    **Introduction**.  All Claims, except Administrative Claims, Priority Tax Claims and Other Priority Claims, are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Priority Tax Claims and Other Priority Claim have not been classified, and the respective treatment of such unclassified Claims is set forth below in Article III of the Plan.

2.    **Classes**.  The following table designates the Classes of Claims and specifies which of those Claims are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or (iii) deemed to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

| Designation | Description | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Allowed Secured Claims of BPC Lender, LLC | Impaired | Yes |
| Class 2 | Allowed General Unsecured Claims including Unsecured deficiency Claims of BPC Lender, if any | Impaired | Yes |
| Class 3 | Interests | Impaired | Yes |

**<u>Class 1 –Secured Claims of BPC Lender</u>**

      **i.**     **<u>Classification:</u>** Class 1 consists of the Allowed Secured Claims of BPC Lender, LLC.

      **ii.**     **<u>Treatment:</u>** The holder of the Allowed Class 1 Claims shall receive (a) all net Cash proceeds from the Sale after payment of (i) the Allowed Claims of BPC DIP Lender, LLC, (ii) all Allowed Cure Claims and (iii) the Broker Fee plus (b) 50% of the Litigation Proceeds up to 100% of their Allowed Class 1 Claim. The balance of the Class 1 Creditor's Claims shall be deemed Class 2 Claims for voting, but not distribution purposes.

      **iii.**     **<u>Voting</u>:** Class 1 is impaired under the Plan insofar as its holder is not anticipated to be paid in full. The Class 1 claimholder is eligible to vote on the Plan.

**<u>Class 2 - General Unsecured Claims</u>**

      i.     **<u>Classification:</u>** Class 2 consists of the holders of General Unsecured Claims.

      ii.     **<u>Treatment:</u>** Holders of Allowed Class 2 Claims as defined in the Plan will receive, in full and final satisfaction, compromise, settlement and release of the Allowed General Unsecured Claims, a Pro Rata Distribution from (a) 50% of the Litigation Proceeds and (b) Available Cash remaining after payment of Allowed Administrative Claims, Allowed Secured Claims (to the extent provided for under the Plan), Allowed Priority Tax Claims, U.S. Trustee Fees, Allowed Other Priority Claims and Post-Effective Date Administrative Claims up to 100% of their Allowed Claims in one or more Distributions as determined by the Plan Administrator on a date(s) to be determined by the Plan Administrator in full and final satisfaction of all Class 2 Claims.

      iii.     **<u>Voting</u>:** Class 2 is impaired under the Plan insofar as the Holders of Allowed General Unsecured Claims are not anticipated to be paid in full. Holders of Class 2 Claims as of the Voting Record Date, including, for voting purposes only, are eligible to vote on the Plan.

**<u>Class 3- Interests</u>**

      i.     **<u>Classification:</u>** Class 3 consists of the holders of Interests.

      ii.     **<u>Treatment</u>:** Holders of Class 3 Interests shall receive a distribution of any Available Cash after the payment of all unclassified and classified Claims and Post-Effective Date Administrative Claims in full, with interest at the Federal judgment rate. Holders of Class 3 Claims will not receive a distribution under the Plan.

      iii.     **<u>Voting</u>:** Class 3 is impaired under the Plan insofar as Holders of Allowed Interests are not anticipated to receive any distribution under this Plan. Holders of Class 3 Interests as of the Voting Record Date are eligible to vote on the Plan.

3.    **General Rules of Classification.**  The Claims asserted against the Debtors are separated into Classes based on the nature of the Claims and the legal rights related to each Claim. A Claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in another Class to the extent that any portion of the falls within the description of such Class. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

**ARTICLE III**

**TREATMENT OF UNCLASSIFIED CLAIMS**

1.    **Administrative Claims of BPC DIP Lender, LLC:**  The Administrative Claims of BPC DIP Lender, LLC shall be paid in full, in Cash, from the net Sale proceeds on the Sale closing date.

2.    **Allowed Secured and Administrative Claims of the Residential Board:** The Allowed Secured and Administrative Claims of the Residential Board shall be paid in full, in Cash, from the net Sale proceeds on the Sale closing date pursuant to Section 365(b) of the Bankruptcy Code.

3.    **Allowed Unsecured and Administrative Claims of BPCA:**  The Allowed Unsecured and Administrative Claims of BPCA shall be paid in full, or in such other amount as agreed to by BPCA, in Cash, from the net Sale proceeds on the Sale closing date pursuant to Section 365(b) of the Bankruptcy Code.

4.    **Allowed Unsecured Claims of the Union:**  The Allowed Unsecured Claims of the Union shall be paid in full, in Cash, from the Sale proceeds on the Sale closing date subject to any conditioned upon assumption of the CBA pursuant to Section 365(b) of the Bankruptcy Code.

5.    **Other Administrative Claims, including the Claims of the Professionals:**

The Holders of Administrative Claims that are Allowed as defined in the Plan shall be paid in full, from the Available Cash, pursuant to orders of the Bankruptcy Court. The Plan Administrator shall pay Allowed Administrative Claims by the later of: (a) the Effective Date or as soon thereafter as is practicable; or (b) within 15 days of entry of an order or orders of the Bankruptcy Court (that are not stayed) allowing such Administrative Claims or on such other terms as mutually agreed to by the holder of an Allowed Administrative Claims and the Plan Administrator.

1.1    Administrative Claims Bar Date. With respect to Administrative Claims, including the claims of Professionals, that arose after the Petition Date through and including the Effective Date and are unpaid, all such Administrative Claims must be filed by the Administrative Bar Date, which shall be the 35th day (or the next Business Day if the 35th day is

a holiday or weekend day) after the Effective Date. All Administrative Claims not timely filed by the Administrative Bar Date shall be forever barred. The Plan Administrator may object to the allowance of any Administrative Claim.

Professionals of the Debtors requesting compensation in the Chapter 11 Cases pursuant to sections 330, 331, and/or 503(b) of the Bankruptcy Code must file with the Bankruptcy Court an application for allowance of any compensation and/or reimbursement of expenses no later than Administrative Bar Date. Objections, if any, to each such application shall be filed in accordance with the Bankruptcy Rules. The Bankruptcy Court shall determine all such applications.

6.      **U.S. Trustee's Fees:**  The Claims of the U.S. Trustee are Unimpaired. The Plan Administrator shall pay all U.S. Trustee Fees in full through the date the final decree is entered.

7.      **Allowed Priority Tax Claims:**  The Holders of Priority Tax Claims that are Allowed as defined in the Plan pursuant to section 507(a)(8) of the Bankruptcy Code, to the extent that any such Claims should exist, are Unimpaired and shall be paid in full by the Plan Administrator within 30 days after the date the Claim is Allowed from Available Cash.

8.      **Allowed Other Priority Claims:**  The Holders of Other Priority Claims that are Allowed as defined in the Plan pursuant to section 507(a)(3), (4) or (5) of the Bankruptcy Code, to the extent that any such Claims should exist, are Unimpaired and shall be paid in full by the Plan Administrator within 30 days after the date the Claim is Allowed from Available Cash.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN
## AND APPOINTMENT OF THE PLAN ADMINISTRATOR

1.      **Liquidation of the Debtors, Closing on the Sale, and Funding of the Plan.**

On the Effective Date, the Plan Administrator will be deemed appointed to liquidate the Debtors' assets and wind down the Debtors. The Plan will primarily be funded with the Debtors' Cash on hand, the Administrative and Unsecured Carveouts and Litigation Proceeds, if any, and the net proceeds from the liquidation and/or turnover of any other assets of the Debtors.

1.1.    Managers and Officers of the Debtors. On the Effective Date, the Independent Manager and CRO will cease to have any power or authority to act for the Debtors, the Estates or the Post-Effective Date Estates.

1.2.    Administration of Debtors' Assets. On the Effective Date, the Plan Administrator shall succeed to all of the rights of the Debtors and the debtors in possession with respect to their assets, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary or other privileges that, prior to the Effective Date, belonged to the Debtors and the debtors in possession pursuant to applicable law.

2. **Appointment of the Plan Administrator.**

On the Effective Date, appointment of the Plan Administrator will automatically become effective, and the monetization of the Debtors' remaining assets and Causes of Actions, resolving and/or objecting to invalid, overstated, duplicative, superseded, misclassified, previously satisfied, and/or otherwise objectionable Claims and making Distributions to creditors shall become the general responsibility of the Plan Administrator. The Plan Administrator's qualifications and proposed compensation shall be set forth in the Plan Supplement. The Plan Administrator shall be deemed the Post-Effective Date Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code. The Plan Administrator will act for the Debtors and the Post Effective Date Estates in a fiduciary capacity as applicable to a board of managers, subject to the oversight of BPC Lender, LLC and the provisions of the Plan.

2.1.    <u>Powers and Duties of the Plan Administrator</u>. The powers and duties of the Plan Administrator shall include, without further order of the Bankruptcy Court:

- To consummate the Sale, to the extent the Sale does not close prior to the Effective Date;

- to control all the Cash, bank accounts, expenditures, employees (including the ability to terminate, retain or otherwise employ of any employees), and assets of the Debtors;

- to control and invest all Cash and withdraw and make Distributions of Cash to Holders of Allowed Claims and pay obligations owed by the Debtors or incurred by the Plan Administrator in connection with the wind down, liquidation and administration of the Post-Effective Date Estate in accordance with the Plan;

- to receive, manage, invest, supervise, and protect all assets, including paying obligations incurred in connection with administering the Plan and the Debtors' assets;

- to engage attorneys, consultants, agents, employees and all professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

- to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Plan Administrator and to pay all other expenses in connection with administering the Plan and for winding down the Debtors in accordance with the Plan;

- to satisfy any liabilities, expenses and other claims incurred by the Plan Administrator;

- to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind down the Debtors;

- to dispose of, and deliver title to others of, or otherwise realize the value of, or abandon any or all of the remaining assets;

- to coordinate the collection with respect to any rights of payment of the Debtors;

- to coordinate the storage and maintenance of the Debtors' books and records and the destruction of the Debtors' books and records as appropriate after entry of a final decree closing the Chapter 11 Cases;

- to oversee compliance with the Debtors' accounting, finance and reporting obligations;

- to prepare U.S. Trustee post-confirmation reports;

- to oversee the filing of tax returns, audits and other corporate dissolution documents if required;

- to perform any additional actions as necessary to carry out the liquidation and ultimate dissolution of the Debtors;

- to review, object, compromise and/or settle to Claims against the Debtors;

- to act on behalf of the Debtors in all adversary proceedings and other lawsuits and contested matters (including, without limitation, to prosecute any Causes of Action), then pending or that can be commenced in the Bankruptcy Court or in any other court of competent jurisdiction and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any adversary proceedings, other lawsuits or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving assets of the Debtors that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan;

- to implement and/or enforce all provisions of the Plan;

- to perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, investigating, commencing, prosecuting or settling Causes of Action (including, without limitation, Avoidance Actions), enforcing contracts, and asserting claims, defenses, offsets and privileges; and

- to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan, Confirmation Order or other Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

    2.2.    <u>Liability of the Plan Administrator</u>

- <u>Standard of Care</u>. Except in the case of bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud or self-dealing, the Plan Administrator shall not be personally liable for any loss or damage by reason of any action taken or omitted by the Plan Administrator pursuant to the discretion, powers and authority conferred,

or in good faith believed by the Plan Administrator to be conferred, on the Plan Administrator by the Plan.

• <u>No Liability for Acts of Predecessors</u>. No successor Plan Administrator shall be in any way responsible for the acts or omissions of any Plan Administrator prior to the date on which such successor becomes the Plan Administrator, unless a successor Plan Administrator expressly assumes such responsibility.

• <u>No Implied Obligations</u>. The Plan Administrator shall have no obligations except for the performance of such duties and obligations as are specifically set forth in the Plan.

• <u>No Liability for Good Faith Error of Judgment/Releases</u>. The Plan Administrator shall not be liable for any error of judgment made in good faith, unless it shall be proved that the Plan Administrator was grossly negligent. Subject to Bankruptcy Court approval, the final decree shall contain releases for the Plan Administrator and the Plan Administrator's Professionals substantially in the form of the release set forth in the Plan.

• <u>No Personal Obligation for Plan or Plan Administration Liabilities</u>. Except as set forth herein, Persons dealing with the Plan Administrator, or seeking to assert Claims against the Debtors or the Estates shall look only to the Post-Effective Date Estate to satisfy any liability incurred by the Plan Administrator to any such Person in carrying out the terms of the Plan, and the Plan Administrator shall have no personal, individual obligation to satisfy any such liability, other than as expressly set forth in the Plan. The Plan Administrator shall not be sued personally for any claims including, without limitation, taxes, capital gains, costs, expenses, representations or warranties, and/or any other liabilities whatsoever, relating to, arising from or in connection with the Post-Effective Date Estate. The protections and immunities hereunder shall be in addition to any protections, immunities, rights and/or remedies that the Plan Administrator has in law or equity. Regardless of whether the Chapter 11 Cases are open or closed, no Person may sue the Plan Administrator without prior authorization of the Bankruptcy Court.

• <u>Sale.</u> Pursuant to Bid Procedures Order, the Debtors have obtained authority from the Bankruptcy Court to sell the Hotel Interests at the Auction.

• <u>Free and Clear of all Liens, Claims and Encumbrances.</u> Except as may be expressly provided in the purchase agreement of the Successful Bidder, the Successful Bidder shall acquire upon the Sale, and the Debtors shall convey, all of the right, title and interest that the Debtors possesses as of the closing in and to the Hotel Interests and Executory Contracts free and clear of all liens, Claims, encumbrances, other interests, debts, causes of action, Interests, obligations, liabilities, and charges of any kind, nature or description whatsoever, whether fixed or contingent, legal or equitable, perfected or unperfected (collectively, the "Barred Claims"), pursuant to Sections 363(b), (f), (k) and (m), 365(a) and (b), 1123(b)(2) and (4) and 1129 of the Bankruptcy Code. To the extent that the Hotel Interests to be sold are encumbered by the liens of the holders of Secured Claims, such liens shall attach to the Sale Proceeds in the same priority as the prepetition lien or mortgage securing the Secured Claim. All persons and entities asserting Barred Claims of any kind or nature whatsoever against or in

the Debtors, the Assets or the Executory Contracts, including but not limited to the Class 1 and Class 2 Claim holders and Class 3 Interest holders, arising under or out of, in connection with, or in any way relating to the Debtors, the Hotel Interests, the Executory Contracts, or the transfer of the Hotel Interests and the Executory Contracts to the Successful Bidder, shall be forever barred, estopped, and permanently enjoined from asserting such Barred Claims against the Successful Bidder, its successors or assigns, its property, the Hotel Interests or the Executory Contracts.

- **Tax Exemption.** This Plan expressly contemplates the Sale of the Hotel Interests and the assignment of the Executory Contracts on or after the Confirmation Date. The post-Confirmation Date Sale shall therefore not be taxed under any law imposing a stamp or similar tax as provided for in Section 1146(a) of the Bankruptcy Code including (a) the transfer of the Hotel Interests; (b) the assignment of the Executory Contracts including but not limited to the Hotel Unit Lease, the Hotel Unit Sublease, the CBA and Condominium Board related agreements, respectively, (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest by the Debtors; (c) the making or assignment of any contract, lease or sublease; or (d) the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan. All such transfers, assignments and sales will not be subject to any stamp tax, or other similar tax held to be a stamp tax or other similar tax by applicable law.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1. <u>Rejection of Unexpired Leases and Executory Contracts</u>.  To date, the Debtors have not assumed or rejected any of their Executory Contracts. The Debtors' time to assume or reject Executory Contracts for non-residential real property if any, expires on May 14, 2023. Thus, unless the Debtors obtain Bankruptcy Court approval to assume such Unexpired Leases or obtain an extension of time to do so, pursuant to section 365(d)(4)(A) of the Bankruptcy Code, the Debtors' Unexpired Leases for non-residential real property will be rejected effective as of May 14, 2023. Under the Plan and the Confirmation Order the Debtors will reject their remaining Unexpired Leases and all Executory Contracts as of the Effective Date of the Plan. The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the rejection of all of the Debtors' Unexpired Leases and Executory Contracts not previously assumed or rejected as of the Effective Date of the Plan.

   1.1. <u>Compensation And Benefit Plans</u>. All employment agreements or contracts, compensation and benefit plans, policies and programs of the Debtors applicable to their present and former employees, including, without express or implied limitation, all savings plans, retirement plans, health and welfare plans, performance-based incentive plans, retention plans, reimbursement plans, disability plans, severance benefit plans, paid time off plans and life, accidental death and dismemberment insurance plans, including, without express or implied limitation will be deemed to be, and will be treated as though they are, Executory Contracts and will, on the Effective Date, be rejected as set forth above.

1.2.    Deadline to file Rejection Damage Claims. If the rejection of an Unexpired Lease or Executory Contract results in a Claim for damages resulting from rejection that is not evidenced by a proof of claim filed by the Bar Date or Government Bar Date, as applicable, or a proof of claim that is deemed to be timely filed under applicable law, then such Claim shall be forever barred and shall not be enforceable against the Estates, unless a proof of claim is filed with the Clerk of the Bankruptcy Court within 35 days of the Effective Date.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

1.    **Distributions After the Effective Date.**  No interest will accrue or be payable on Claims or any Distributions made after the Effective Date to Holders of Claims that are Allowed (as defined in the Plan) after the Effective Date.

2.    **No Interest on Claims.**  Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

3.    **Limits on Distributions.**  The Plan Administrator may retain such amounts the Plan Administrator may determine (i) as appropriate to maintain the value of the assets of the Post Effective Date Estate during wind down and liquidation, (ii) to pay administrative expenses (including the costs and expenses of the Plan Administrator and the fees, costs and expenses of all professionals retained by the Plan Administrator) and (iii) to satisfy other liabilities to which the assets or the post-Effective Date Estate are otherwise subject, in accordance with the Plan.

3.1.    Expenses. The Plan Administrator may withhold from amounts distributable to any Person any and all amounts determined in the Plan Administrator's sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

3.2.    Reporting Requirements. Holders of Allowed Claims shall, as a condition to receiving Distributions, provide such information and take such steps as the Plan Administrator may require to ensure compliance with withholding and reporting requirements and to enable the Plan Administrator to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law. In the event that a Holder of an Allowed Claim does not comply with the Plan Administrator's requests in the preceding sentence within ninety (90) days, no Distribution is required to be made on account of such Allowed Claim and the Plan Administrator may reallocate such Distribution for the benefit of all other Holders of Allowed Class 2 Claims, in accordance with the Plan.

3.3.    No De Minimis or Fractional Distributions. The Plan Administrator shall not be required to make Distributions in an amount less than $5.00. Any funds so withheld and not distributed on an interim basis shall be held in reserve and may be distributed, if practical, in subsequent Distributions to the extent the aggregate Distribution exceeds $5,000, if any. Should a final Distribution to any Holder of an Allowed Claim not equal or exceed $5.00, that sum shall

17

be distributed to other Holders of Allowed Claims in accordance with the Plan. The Plan Administrator is not required to make payments of fractional dollars. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution may be made in an amount rounded down to the nearest whole dollar.

3.4.    Transmittal of Distributions/Unclaimed Property. All Distributions under the Plan on account of any Allowed Claims shall be made at the address of the Holder of such Allowed Claim as set forth in a filed Proof of Claim, the Schedules or as provided by such Holder to the Plan Administrator in writing. In the event that any Distribution to any Holder is returned as undeliverable, the Plan Administrator will use reasonable efforts to determine the current address of such Holder, but no Distribution to such Holder shall be made unless and until the Plan Administrator has determined to his/her/their satisfaction the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided, however, that such undeliverable or unclaimed Distributions may become Unclaimed Property at the expiration of 90 days from the date such Distribution was originally made. The Plan Administrator may reallocate the Unclaimed Property for the benefit of all other Holders of Allowed Claims in accordance with the Plan.

3.5.    Record Date. As of the close of business on the Confirmation Date, the claims register shall be closed, and there shall be no further changes in the record Holders of any Claims. Neither the Debtors, nor the Plan Administrator, as applicable, shall have any obligation to recognize any transfer of any Claims occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for all purposes under the Plan (except as to voting to accept or reject the Plan) with only those Holders of record as of the close of business on the Confirmation Date.

3.6.    Final Distribution. With respect to the Post Effective Date Estate, after (a) the Plan has been fully administered, (b) all Disputed Claims have been resolved, (c) all Causes of Action have been resolved, and (d) all assets have been reduced to Cash or abandoned, the Plan Administrator shall effect a final Distribution of all Available Cash remaining, subject to the limitations set forth above and after reserving sufficient Cash to pay all unpaid expenses of administration of the Plan and all expenses reasonably expected to be incurred in connection with the winddown and final Distribution, to Holders of Allowed Claims in accordance with the Plan.

## ARTICLE VII.

## DISPUTED CLAIMS PROCEDURES

1.    **Claim Objections.** The Plan Administrator shall have the right to object to all Claims on any basis, including those Claims that are not listed in the Schedules, that are listed therein as disputed, contingent, and/or unliquidated, that are listed therein at a lesser amount than asserted by the respective Creditor, or that are listed therein for a different category of claim than asserted by the respective creditor. The Plan Administrator may settle any Claim objection or Disputed Claim (including aggregate of Claims if held by a single Creditor), without notice, a Bankruptcy Court hearing, or Bankruptcy Court approval. The Plan Administrator reserves the right, for purposes of allowance and

Distribution, to estimate claims pursuant to Section 502(c) of the Bankruptcy Code if necessary.

    1.1.    <u>Deadline to File Objections</u>. Subject to further extension by the Bankruptcy Court for cause with or without notice, the Plan Administrator may object to the allowance of Claims other than Administrative Claims up to 120 days after the Effective Date; provided, however, that an objection to a Claim based on Section 502(d) of the Bankruptcy Code may be made at any time in any adversary proceeding against the Holder of any relevant Claim. The filing of a motion to extend the deadline to object to any Claims shall automatically extend such deadline until a Final Order is entered on such motion. In the event that such motion to extend the deadline to object to Claims is denied by the Bankruptcy Court, such deadline shall be the later of the current deadline (as previously extended, if applicable) or 30 days after the Bankruptcy Court's entry of an order denying the motion to extend such deadline**.**

    1.2.    <u>Setoffs/ Recoupments</u>. From and after the Effective Date, the Plan Administrator shall succeed to all of the rights, defenses, offsets, and counterclaims of the Debtors in respect of all Claims, and in that capacity shall have the power to prosecute, defend, compromise, settle, and otherwise deal with all such objections, subject to the terms of the Plan.

    1.3.    <u>No Distribution on Partially Allowed Claims</u>. Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial Distributions are required to be made by the Plan Administrator with respect to any portion of any Claim against the Estates if such Claim or any portion thereof is a Disputed Claim.

**ARTICLE VIII.**

**<u>CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE</u>**

1.    **<u>Conditions Precedent to Plan Confirmation.</u>**  Under the Plan, the following conditions precedent must be satisfied or waived solely by the Debtors in writing for the Confirmation Date to occur:

    1.1.    The Bankruptcy Court has determined that the Plan is confirmable and satisfies the requirements of section 1129 of the Bankruptcy Code, including that the Plan was proposed in good faith.

    1.2.    Entry of the Confirmation Order that (i) authorizes the appointment of the Plan Administrator with all of the powers and duties set forth herein, (ii) approves in all respects the transactions, agreements, and documents to be effected pursuant to the Plan, and (iii) except as otherwise specifically provided in the Plan, orders that nothing herein operates as a discharge, release, exculpation, or waiver of, or establishes any defense or limitation of damages to, any Claim or Cause of Action belonging to the Estates.

2.    **<u>Conditions Precedent to the Effective Date.</u>**  Under the Plan, the following conditions precedent must be satisfied or waived solely by the Debtors in writing for the Effective Date to occur:

2.1.     the Confirmation Order shall be entered by the Bankruptcy Court and be a Final Order

2.2.     the Sale shall have closed, absent consent to extension of the Sale closing date by BPC Lender, LLC;

2.3.     the Plan Administrator shall have accepted the appointment;

2.4.     all actions, documents and agreements necessary to implement the provisions of the Plan, and such actions, documents, and agreements shall have been executed and delivered; and

2.5.     all other actions required by the Plan to occur on or before the Effective Date shall have occurred.

**ARTICLE IX.**

**AMENDMENT, MODIFICATION, WITHDRAWAL OR REVOCATION OF THE PLAN**

The Debtors reserve the right, in accordance with section 1127 of the Bankruptcy Code, to amend or modify the Plan provided the Bankruptcy Court approves such modification, if required.

The Debtors may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by the Debtors or any Claim against the Debtors, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

**ARTICLE X.**

**EFFECTS OF CONFIRMATION**

1.     **Vesting of Assets.** As of the Effective Date, any and all rights, title, and interests in all real and personal property of the Estates including, but not limited to: (i) Cash held by the Debtors, and (ii) Causes of Action, shall be vested in the Post-Effective Date Estate, free and clear of all Claims except as otherwise expressly provided and subject to the provisions of the Plan and any governing stipulation, the Confirmation Order or the Bankruptcy Code.

2.     **Pre-Effective Date Jurisdiction.**  Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtors and the Estates. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article XII of the Plan

3.     **Binding Effect.**  Upon the Effective Date, all of the provisions of the Plan shall be binding on the Debtors, on all Holders of Claims, and on all other parties in interest who are affected (or whose interests are affected) in any manner by the Plan.

4.        **Term of Prior Orders, Injunctions or Stay.**  Unless otherwise provided, the automatic stay provided for in the Chapter 11 Cases pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect up to the Effective Date of this Plan and shall thereafter be replaced by the permanent injunction under Article XI §3 of the Plan.

5.        **Preservation of Causes of Action**.  The Post-Effective Date Estate shall retain any and all claims and Causes of Action belonging to the Debtors and their Estates, including but not limited to those listed in the Debtors' Schedules, whether arising before or after the Petition Date, regardless of whether such claims and Causes of Action arise under the Bankruptcy Code. The Plan Administrator may but is not required to pursue any and all such claims or Causes of Action. No Person may rely on the absence of a specific reference in the Plan or in the Disclosure Statement to any claim or Cause of Action against it as any indication that the Plan Administrator will not pursue any and all available claims and Causes of Action against it. Unless any claims and Causes of Action against a Person are expressly and unambiguously waived, relinquished, exculpated, released, compromised, or settled in the Plan or in a Bankruptcy Court order, the Plan Administrator expressly reserves all claims and Causes of Action, for later prosecution, settlement, or adjudication and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such claims and Causes of Action upon, after, or a consequence of entry of the Confirmation Order, occurrence of the Effective Date, or consummation of the Plan.

6.        **Dissolution of the Debtors**.  Upon the distribution of all Cash pursuant to the Plan, the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that the Plan Administrator on behalf of the Debtors may take appropriate action to dissolve under applicable law. From and after the Effective Date, the Debtors shall not be required to file any document, or take any action, to withdraw their business operations from any states where the Debtors previously conducted business. Notwithstanding the forgoing, the Plan Administrator shall be authorized to sign any such documents as necessary or appropriate to effectuate the dissolution of the Debtors and any post-dissolution documents necessary or appropriate to effectuate the winddown of the Debtors.

**ARTICLE XI.**

**RELEASES AND INJUNCTIONS**

The Debtors are being liquidated so they are not entitled to a discharge, but the Plan, the Confirmation Order and the order granting the final decree closing the Chapter 11 Cases shall provide for the following releases, injunctions and exculpations:

1.    **Releases.**

EXCEPT AS OTHERWISE PROVIDED HEREIN OR IN THE CONFIRMATION
ORDER, AND SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, ALL
CONSIDERATION DISTRIBUTED UNDER THE PLAN WILL AND, REGARDLESS
OF WHETHER ANY PROPERTY WILL HAVE BEEN DISTRIBUTED OR RETAINED
PURSUANT TO THE PLAN ON ACCOUNT OF SUCH CLAIMS, UPON THE
EFFECTIVE DATE, BE IN EXCHANGE FOR, AND IN COMPLETE SATISFACTION,
SETTLEMENT AND RELEASE OF, ALL CLAIMS. AS OF THE EFFECTIVE DATE,
EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL
ENTITIES WILL BE PRECLUDED FROM ASSERTING AGAINST, AND WILL BE
DEEMED TO HAVE SETTLED, RELEASED AND/OR WAIVED ALL CLAIMS
AGAINST, THE ESTATES AND THE POST EFFECTIVE DATE ESTATE.

2.    **Exculpation.**

TO THE EXTENT PERMISSIBLE UNDER APPLICABLE LAW, INCLUDING BUT
NOT LIMITED TO SECTION 1125(e) OF THE BANKRUPTCY CODE, AND THE
CONFIRMATION ORDER, NONE OF THE DEBTORS, DEBTORS' MANAGERS UP
UNTIL THE APPOINTMENT OF THE CRO, THE CRO, THE INDEPENDENT
MANAGER, OR THE DEBTORS' RETAINED ATTORNEYS OR FINANCIAL
CONSULTANTS, SOLELY IN THEIR CAPACITY AS SUCH (the "EXCULPATED
PARTIES"), WILL HAVE OR INCUR ANY LIABILITY BETWEEN THE PETITION
DATE AND THE EFFECTIVE DATE TO ANY HOLDER OF A CLAIM OR INTEREST,
OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE AGENTS,
EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, OR
AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR
OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE
CHAPTER 11 CASES, FORMULATING, NEGOTIATING OR IMPLEMENTING THE
PLAN, THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN, THE
PURSUIT OF CONFIRMATION OF THE PLAN, THE CONFIRMATION OF THE
PLAN, THE CONSUMMATION, OR THE ADMINISTRATION OF THE PLAN OR
THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN UP TO AND
INCLUDING THE EFFECTIVE DATE OF THE PLAN, INCLUDING IN EACH CASE
OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF, OR RELATED
TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT IS A CRIMINAL
ACT, CONSTITUTES GROSS NEGLGENCE OR WILLFUL MISCONDUCT
(INCLUDING, WITHOUT LIMITATION, ACTUAL FRAUD) OR CLAIMS FOR
LEGAL MALPRACTICE, RELEASE OF WHICH IS PROHIBITED BY RULE 1.8(h) OF
THE NEW YORK RULES OF PROFESSIONAL CONDUCT (22 N.Y.C.R.R. § 1200).
NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN
THE PLAN SHALL RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF
ANY ENTITY.

3.    **Injunction.**

**EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AS OF THE EFFECTIVE DATE, ALL ENTITIES THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM OR OTHER DEBT OR LIABILITY THAT IS DISCHARGED OR RELEASED PURSUANT TO THE TERMS OF THE PLAN ARE PERMANENTLY ENJOINED WITH RESPECT TO SUCH CLAIM, DEBT OR LIABILITY FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTORS, THE CRO, THE DEBTORS' MANAGERS UP UNTIL THE APPOINTMENT OF THE CRO, THE INDEPENDENT MANAGER, THE DEBTORS' MEMBERS, THE PLAN ADMINISTRATOR OR THEIR CURRENT AND FORMER ATTORNEYS OR FINANCIAL CONSULTANTS (WHERE RETAINED WITH COURT APPROVAL AS TO THE DEBTORS) ON ACCOUNT OF ANY SUCH DISCHARGED CLAIMS, DEBTS OR LIABILITIES OR RIGHTS: (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER, ANY JUDGMENT, AWARD, DECREE OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTORS; AND (V) COMMENCING OR CONTINUING ANY ACTION IN ANY MANNER, IN ANY PLACE, THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN.**

## ARTICLE XII.

## RETENTION OF JURISDICTION

1.    **Post-Effective Date Jurisdiction.**  The Bankruptcy Court (or the United States District Court for the Southern District of New York, as the case may be) shall have and retain exclusive jurisdiction of matters arising out of, and related to the Chapter 11 Cases and the Plan under the Bankruptcy Code and for, among other things, the following purposes:

1.1    to hear and determine all objections to Claims and Administrative Claims concerning the classification, allowance or disallowance of any such claim, if any;

1.2    to hear and determine any and all adversary proceedings, Causes of Action, claims of the Estates, applications, and contested matters, whether filed or commenced before or after the Effective Date;

1.3    to hear and determine all Claims arising out of any agreement entered into by the Plan Administrator after the Petition Date, if any;

1.4    to hear and determine any settlement and/or compromise pursuant to Bankruptcy Rule 9019 concerning any of the foregoing;

1.5    to alter, modify and amend the Plan pursuant to section 1127 of the Bankruptcy

Code, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

1.6     to make such orders *ex parte* or upon application, and to hear and adjudicate any settlements or disputes concerning the provisions of the Plan, or to enforce and/or implement the terms of the Plan;

1.7     to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court, and for the purposes set forth in section 1127(b) and section 1142 of the Bankruptcy Code or as contained in Bankruptcy Rules 1019 and 3020(d);

1.8     to hear or determine any issues or disputes arising out of any orders issued by the Bankruptcy Court during the Chapter 11 Cases;

1.9     to hear or determine any issues or disputes arising out of the Auction or the Sale;

1.10    to hear and determine all applications for Professional's compensation;

1.11    to hear and determine matters concerning local, state and federal taxes in accordance with sections 345, 505 and/or 1146 of the Bankruptcy Code;

1.12    to enter a final order or decree concluding the Chapter 11 Cases or an order of substantial consummation;

1.13    to hear and determine that Distributions are accomplished as provided in the Plan; and/or

1.14    to determine other matters contained in the Confirmation Order or Plan or as necessary for the winddown of the Chapter 11 Case and administration and implementation of the Plan that is authorized under the provisions of the Bankruptcy Code.

### ARTICLE XIII.

### <u>MISCELLANEOUS PROVISIONS</u>

1.      <u>Severability of Plan Provisions.</u>

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and

provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

2.      **Successors and Assigns and Binding Effect.**  The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person or Entity.

3.      **Term of Injunctions or Stays.**  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

4.      **Injunction Against Interference With Plan.**  Upon entry of the Confirmation Order, all Holders of Claims, and other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

5.      **Revocation, Withdrawal, or Non-Consummation.**  The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date or, if the Debtors are for any reason unable to consummate this Plan after the Confirmation Date, at any time prior to the Effective Date. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects and (b) any settlement or compromise embodied in the Plan or any other fixing or limiting to an amount certain any Claim or Class of Claims, rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void.

6.      **Notices.**  Any notice, request, or demand required or permitted to be made or provided under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) electronic transmission, and (c) deemed to have been duly given or made when actually delivered or, in the cases of notice by electronic transmission, when received and telephonically confirmed, addressed as follows: (i) Davidoff Hutcher & Citron LLP, 605 Third Avenue, New York, New York 10158, Attn: Jonathan S. Pasternak, Esq. (jsp@dhclegal.com) and Robert L. Rattet, Esq. (rlr@dhclegal.com), (ii) the Plan Administrator at the address set forth in the Plan Supplement and (iii) Office of the United States Trustee, U.S. Federal Office Building, 201 Varick St., Room 1006, New York, NY 10014, Attn: Tara Tiantian, Esq. (tara.tiantian@usdoj.gov).

7.      **Governing Law.**  Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan and, except as may be provided otherwise in any such agreements, documents, or instruments, any agreements, documents, and instruments executed in connection with the Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws that would require application of the law of another jurisdiction.

8.    **Post-Effective Date Professional Fees.**  From and after the Effective Date, to the extent any professional provides services to the Post-Effective Date Estate or the Plan Administrator in connection with this Plan and any other matters as to which such professionals may be engaged, the fees and expenses of such professional shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, be paid from the assets of the Post Effective Date Estate in the Plan Administrator's sole discretion. In the event a dispute over the fees of any Professional cannot be resolved consensually, the dispute will be resolved through an appropriate application to the Bankruptcy Court. The Plan Administrator may, without application to or approval by the Bankruptcy Court, retain professionals and pay professional fees and expenses in connection with services rendered to it after the Effective Date.

9.    **Payment of Statutory Fees.**  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date shall be paid by the Plan Administrator from Cash. The obligation of the Post-Effective Date Estate to pay quarterly fees to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code shall continue until such time as the Chapter 11 Cases are closed.

10.    **Post-Confirmation Date Service List Persons Entitled to Notice**. From and after the Confirmation Date, any notices of appearance and demands for service of process filed by any Person with the Bankruptcy Court prior to such date shall no longer be effective. No further notices, other than notice of entry of the Confirmation Order, shall be required to be sent to such Persons unless required by the Bankruptcy Code or Bankruptcy Rules.

11.    **Post-Confirmation Reporting.**  The Plan Administrator shall file post-confirmation operating reports on a quarterly basis, upon the conclusion of each respective quarter until the earlier of the entry of a final decree, conversion or dismissal of the Chapter 11 Cases.

12.    **Confirmation Order and Plan Control.**  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any later order of the Court) controls the Plan.

13.    **Dissolution of Debtors.**  On the Effective Date, the Debtors shall be automatically dissolved and all members, Professionals and agents of the Debtors shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with the Debtors, the Chapter 11 Cases, the Plan or its implementation (other than for the Professionals to prepare and prosecute their final fee application).

14.    **Extension of Dates; Consent.**  To the extent any provision or definition of the Plan provides for an act or event to take place on a certain date, such date may be extended upon the written consent of the Plan Administrator, other than a Distribution under this Plan. Any provision of the Plan which is conditioned upon, or subject to, the consent of any party shall be deemed satisfied if the consent is executed by counsel for such party.

15.    **Closing of Chapter 11 Cases.**  After the Chapter 11 Cases have been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court for a final decree and to close the Chapter 11 Cases in accordance with the Bankruptcy Code and Bankruptcy Rules.

16.    **No Admission.**  Notwithstanding anything herein to the contrary, nothing contained in this Plan will be deemed an admission by the Debtors, or any other Person with respect to any matter set forth herein, including, without express or implied limitation, liability on any Claim or the propriety of a Claim's classification.


Dated:  March 20, 2023                      DAVIDOFF HUTCHER & CITRON LLP

                                            By: */s/  Jonathan S. Pasternak*
                                            Jonathan S. Pasternak
                                            Robert L. Rattet
                                            605 Third Avenue
                                            New York, New York 10158
                                            (516) 357-3700
                                            jsp@dhclegal.com
                                            rlr@dhclegal.com

                                            *Attorneys for the Debtors*


                                            URBAN COMMONS 2 WEST LLC, ET AL.
                                            *Debtors and Debtors In Possession*



                                            By: */s/ Mark D. Podgainy*
                                            Mark D. Podgainy, Chief Restructuring Officer