UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In Re:                                                                                  Chapter 11

URBAN COMMONS 2 WEST LLC, *et al.*,[1]                       Lead Case No.: 22-11509 (PB)

                Debtors.                                          (Jointly Administered)

---------------------------------------------------------X

## ORDER CONFIRMING DEBTORS' THIRD AMENDED
## PLAN OF LIQUIDATION PURSUANT TO 11 U.S.C. SECTION 1129

The above-captioned debtors and debtors-in-possession, Urban Commons 2 West LLC, Urban Commons 2 West II LLC, Urban Commons 2 West III LLC and Urban Commons 2 West IV LLC (collectively, the "Debtors"), having filed, inter alia, a Second Amended Plan of Liquidation on April 21, 2023 (ECF No. 230; the "Second Amended Plan"), a Second Amended Disclosure Statement dated April 17, 2023 (ECF No. 222; the "Disclosure Statement"), and a Third Amended Chapter 11 Plan of Liquidation on September 9, 2024 (ECF No. 467; the "Plan")[2] under Chapter 11 of the Bankruptcy Code (the "Code"); and the Debtors having filed a Plan Supplement dated September 9, 2024 (ECF No. 468); and the Court having entered an Order on April 24, 2023 (ECF No. 233; the "Scheduling Order") which, *inter alia,* (1) approved the Disclosure Statement, (2) scheduled a hearing on confirmation of the Second Amended Plan, and (3) set a deadline for submission of ballots and objections to confirmation of the Second Amended Plan; and a copy of the Second Amended Plan, Disclosure Statement with exhibits, Scheduling Order and Ballot having been transmitted to all known holders of Claims and Interests in

---

[1] Jointly administered with Urban Commons 2 West II LLC (Tax ID: **-***7987), Urban Commons 2 West III LLC (Tax ID: **-***3270), Urban Commons 2 West IV LLC (Tax ID: **-***8418), and Urban Commons 2 West Operating Tenant LLC (Tax ID: **-***0849).

[2] Capitalized terms not otherwise defined herein shall have the meanings as set forth in the Plan.

accordance with the Scheduling Order and Bankruptcy Rules 2002, 3017 and 3019; and the solicitation of acceptances and rejections of the Plan having occurred; and it appearing that the Plan does not adversely affect the treatment of creditors and Interest holders provided for in the Second Amended Plan and its solicitation therefore not necessary; and certain matters relating to the Sale of the Hotel Lease Interests having been referred to mediation, and such mediation having resulted in the resolution of all issues related to the Sale as memorialized in, inter alia, the Plan; and the Declaration of Mark D. Podgainy, Chief Restructuring Officer of the Debtors, in support of confirmation of the Plan having been filed on September 9, 2024 (ECF No. 469); and a Memorandum of Law in support of confirmation of the Plan having been filed by the Debtors (ECF No. 475: the "Plan Brief"); and hearings to consider confirmation of the Plan having been held on September 10, 2024 and September 18, 2024 (collectively, the "Confirmation Hearing") pursuant to notice as heretofore directed; and the affidavit of service having been filed herein evidencing compliance with such notice; and upon the entire record of this case, including the Confirmation Hearing; and the certification of Jonathan S. Pasternak, Esq. of the ballots cast in acceptance of and in rejection to the Second Amended Plan having been filed with the Court on September 8, 2024 (ECF No. 464); and VIK XS Services, Inc. ("VIK") having filed an objection to the Plan dated September 3, 2024 (ECF No. 463; the "VIK Objection"); and the Court having considered the testimony offered by the Debtors and all evidence and pleadings offered and submitted in connection with confirmation of the Plan; and the Court having read into the record at a continued hearing held on September 26, 2024 a bench ruling (the "Bench Ruling") overruling the VIK Objection and confirming the Plan pursuant to Section 1129 of the Bankruptcy Code; and upon all proceedings had herein; and sufficient cause appearing therefore for the reasons stated in the Bench Ruling,

2

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.  As shown by (a) the Certificate of Service of BK Attorney Services LLC dated April 24, 2023 (ECF No. 236) and (b) the various Orders and notices of adjournment and accompanying certificates of service served on all interested parties and filed with the Court (ECF Nos. 262, 264-265, 270-271, 276-277, 287-289, 300, 305-307, 313, 315-316, 324-325, 327-329, 349-350, 361-362, 383, 401, 414, 429, 431, 434, 442, 443, 445, 465-466, and 473), proper, timely, adequate and sufficient notice of the Confirmation Hearing to all creditors, Interest holders and parties in interest has been provided in accordance with the Scheduling Order and applicable Bankruptcy Rules, and no further or other notice of the Hearing or entry of this Order is necessary.

B.  This Court has jurisdiction over the subject matter of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. sections 1334 and 157(b) and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York entered February 1, 2012. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Code and should be confirmed. Venue is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409. Confirmation of the Plan is a core matter pursuant to 28 U.S.C. section 157(b)(2)(A), (L), and (O).

C.  The Plan has been accepted in writing pursuant to Section 1126(c) of the Code by at least one class of creditors as defined in Section 101(10) of the Code whose acceptance is required by law.

D.  The applicable provisions of the Code have been complied with in the Plan and by the Debtors.

E.  The Plan has been proposed in good faith and not by any means forbidden by law.

F.  Any payment to be made in connection with the Plan has been approved by the

Court or is subject to approval by the Court as reasonable.

G. The Plan discloses the identity of the post-confirmation date management and ownership of the Debtors.

H. There exists no governmental regulatory commission with jurisdiction over the rates of the Debtors, and therefore Section 1129(a)(6) of the Code is inapplicable.

I. With respect to each impaired class of Claims or Interests, each holder of a claim as defined in Section 101(5) of the Code ("Claim") or Interest of such class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Code on the Effective Date of the Plan.

J. The Plan provides that, with respect to any Claim of a kind specified in Sections 507(a)(2), (7) and (8) of the Code, the holder of any such Claim will receive cash equal to the Allowed amount of such Claims in accordance with the terms of the Plan.

K. As set forth in the Certification of Ballots, and in accordance with the terms of the Plan governing the treatment and voting rights of Classes, (i) Classes 1, 2, 4 and 5 have accepted the Plan pursuant to 11 U.S.C. Section 1126(c), (ii) Class 3 is deemed to vote in Class 5, and (iii) Class 6 Interests are deemed to reject the Plan without voting. Accordingly, (a) at least one class of impaired classes of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim within such class, and (b) the Debtor must confirm the Plan under 11 U.S.C. Section 1129(b).

L. There are no holders of Claims of a kind specified in Sections 507(a)(1), 507(a)(3) through 507(a)(7) and 507(a)(9) and (10) of the Code against the Debtors.

4

M. Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors, other than as expressly contemplated under the Plan.

N. The Plan provides that the Debtors shall pay outstanding United States Trustee statutory fees in full, in Cash, on the Effective Date, or as soon as is practicable thereafter. Thereafter, such fees shall be paid in full, in Cash, in such amount as incurred by the Debtors. The Debtors shall be responsible to effectuate payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 Cases.

O. Sections 1129(a)(13)-(15) of the Code are not applicable herein.

P. The Plan satisfies all of the applicable requirements of Sections 1122, 1123 and 1127 of the Code.

Q. There is no other plan of reorganization that has been moved for confirmation. The Plan is therefore the only plan pending before the Court.

R. The Plan **does not discriminate unfairly, and [PB 09.30.24]** is fair and equitable**, with respect to each class [PB 09.30.24]** of Claims or Interests **that is impaired under, and has not accepted, the Plan [PB 09.30.24]**.

S. <u>The 9019 Settlement</u>. Pursuant to the 9019 Settlement, as set forth in Article IV of the Plan **and in the underlying agreements between and among the 9019 Parties that have been provided to the Court *in camera* and to the Debtors [PB 09.30.24]**, the 9019 Parties have agreed or given their consent to, *inter alia*, the Sale transactions that include an assumption, assignment, and amendment of the Hotel Unit Lease, as amended, and the Hotel Unit Sublease, as amended, assumption of the CBA (collectively, the "<u>Assigned Contracts</u>"), agreements on compromise and/or payment of their respective allowed Cure Claims, as well as go-forward arrangements with each of: (i) the Union; and (ii) the Residential Board and the Condominium

5

Board of Managers of Millennium Point Condominium (the "Condo Board" and together with the Residential Board, the "Boards"), and resolution of claims and causes of action by and against the Debtors and as among the 9019 Parties as they relate to the Debtors and the Hotel Lease Interests as that term is defined in the Sale Procedures Order. ~~The resolutions reached amongst the 9019 Parties are summarized under the Plan Brief as follows:~~

> ~~a.  Resolution with the BPCA: Pursuant to the 9019 Settlement, the BPCA has agreed to the assumption and assignment of certain of the Assigned Contracts, as applicable, and the resolution of their cure claim, payable on terms negotiated between the Purchaser and the BPCA. Additionally, the BPCA has agreed to a modification of certain of the Assigned Contracts, as applicable, which the Purchaser and which the Debtors believe will result in a rehabilitation, improvement, and in time, a re-commencement of the dormant hotel operations at the Hotel Unit.~~
>
> ~~b.  Resolution with the Boards: Pursuant to the 9019 Settlement, the Boards have agreed to the assumption and assignment of certain of the Assigned Contracts, to the extent they apply to the Boards, and the resolution of their cure claim, payable on terms negotiated between the Purchaser and the Boards and reflected by a separate agreement, which is also conditioned upon BPC DIP Lender LLC's ("BPC DIP Lender") agreement to timely fund the Debtors for the payments to the Boards of the monthly invoices for the Condominium Shared Expenses as memorialized in the Assumption and Assignment Agreement between the Condominium Board of Managers and the Residential Board of Managers of Millennium Point Condominium, on the one hand, and BPC Lender LLC and BPC DIP Lender, LLC, on the other hand, dated September 11, 2024. Additionally, the Boards and the Purchaser have agreed, pursuant to a separate side agreement dated September 9, 2024, to certain limited modifications to the Condominium Documents and By-Laws for the Millennium Point Condominium.~~
>
> ~~c.  Resolution with the Union: Pursuant to the 9019 Settlement, BPC Lender has consented to, *inter alia*, the assumption and assignment of the CBA, as amended by the Union Settlement Agreement, and has further agreed to a restructuring of the Union's cure claim upon terms agreed to by the Purchaser and the Union.~~

~~Copies of the underlying agreements referenced above have been provided to the Debtors and the Court *in camera*, as requested by the 9019 Parties.~~ **[PB 09.30.24]**

6

T.  In accordance with Section 1123(b)(3)(A) of the Code and Bankruptcy Rule 9019, the provisions of the 9019 Settlement, as set forth in Article IV of the Plan **and in the underlying agreements between and among the 9019 Parties that have been provided to the Court *in camera* and to the Debtors [PB 09.30.24]**, constitute a good-faith compromise of the settled claims and disputes held by the parties thereto, and the compromises and settlements set forth therein are fair, equitable, and reasonable and in the best interests of the Debtors and their Estates, **or at minimum fall well above the lowest level of the range of reasonableness [PB 09.30.24]**.

U.  To the greatest extent permissible under the Code and the Bankruptcy Rules, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan and in connection with the Sale, and with the support of the various creditors, stakeholders, and other parties in interest, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, causes of action, as applicable, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. The compromises and settlements embodied in the Plan (a) are the result of extensive, arm's-length, good faith negotiations; (b) preserve value for the Debtors, their Estates, and all their stakeholders by, among other things, avoiding extended, uncertain, time-consuming, and value-destructive litigation; and (c) represent a fair and reasonable compromise of all Claims, Interests, and controversies and a sound exercise of the Debtors' business judgment. The compromises and settlements in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates, **or at minimum fall well above the lowest level of the range of reasonableness [PB 09.30.24]**, and satisfy the requirements for approval pursuant to Bankruptcy Rule 9019 and other applicable law. ~~The Debtors have satisfied the business judgment standard under Bankruptcy Rule 9019 with respect to the propriety of the release provided by the Debtors as set forth in the~~

7

~~Plan. The Debtors' pursuit of any such claims against the parties released thereto is not in the best interests of the Estates' various constituencies because the costs involved would outweigh any potential benefit from pursuing such claims. Such release is a necessary and integral element of the Plan and in the best interests of the Debtors and their Estates. Each of the parties released thereby made significant concessions and contributions to these Chapter 11 Cases, including, as applicable, (a) negotiating and actively supporting the Plan and the Chapter 11 Cases; (b) providing necessary liquidity for the Debtors during the Chapter 11 cases; (c) settling and compromising substantial rights and claims against the Debtors under the Plan; and (d) proposing, negotiating in good faith, and ultimately consummating the settlement as set forth in the Plan. The release by the non Debtors as set forth in the Plan is a necessary and integral element of the Plan and is in the best interests of the Debtors, their Estates, and all holders of Claims and Interests. Also, such release is: (a) consensual; (b) essential to confirmation; (c) given in exchange for the good and valuable consideration provided by the parties released thereby, including, without limitation, their contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the causes of action released pursuant thereto; (e) in the best interests of the Debtors, their Estates, and their stakeholders and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 cases; (f) given and made after due notice and opportunity for hearing; (g) narrowly tailored to the circumstances of these Chapter 11 Cases; and (h) consistent with Sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Code.~~ **[PB 09.30.24]**.

~~W.     All documents and transactions contemplated by the Plan are essential elements of the Plan, are necessary for confirmation and consummation of the Plan, and are critical to the overall success and feasibility of the Plan.~~ **[PB 09.30.24]**.

8

**BASED ON THE FOREGOING, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:**

1. The findings of this Court set forth above, together with all other findings of fact and conclusions of law made by this Court during the Confirmation Hearing, including in the Bench Ruling, shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, as made applicable by Bankruptcy Rule 9014.

2. All objections to confirmation of the Plan, including but not limited to the VIK Objection, have either been resolved or overruled.

3. The Plan Supplement (as may be further amended, supplemented, or modified) is hereby incorporated into the Plan and made a part thereof.

4. The Plan is hereby confirmed pursuant to Sections 1129 and 1141 of the Code. In the event of any inconsistency between the Plan (including the Plan Supplement) and this Order, the terms and provisions of this Order shall fully govern. In the event of any inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.

5. All transactions implemented in connection with, and contemplated by, the Plan are hereby approved in their entirety.

6. The release provisions set forth in the Plan are approved and authorized in their entirety.

7. The exculpation provisions contained in Article 11.2 of the Plan are approved and each exculpated party shall be entitled to the protections afforded by Section 1125(e) of the Code and other applicable state or federal law.

8. The Plan, this Order, and their respective provisions shall be binding upon the Debtors, any lessor or lessee of property from or to the Debtors, and any and all creditors, holders

9

of Claims or Interest holders of the Debtors and any other party in interest in the Chapter 11 Cases, as well as any successor or assign of any of the foregoing, whether or not the Claim or Interest of such creditor, Interest holder or other party in interest is impaired under the Plan and whether or not such creditor, Interest holder or other party in interest has filed, or is deemed to have filed, a proof of Claim or Interest or has accepted or is deemed to have accepted, or has rejected or is deemed to have rejected, the Plan.

9. The Debtors are hereby authorized to take any and all actions and execute and deliver any and all instruments and documents that they deem necessary and appropriate to effect and consummate the Plan and carry out this Order, subject to the satisfaction of the conditions precedent to consummation as set forth in the Plan.

10. Each provision of the Plan, and the transactions related thereto, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and (c) nonseverable and mutually dependent.

11. This Court hereby retains jurisdiction pursuant to and for the purposes of Sections 105, 1127 and 1142 of the Code and as provided in the Plan, and for such other purposes as may be necessary and useful to aid in the confirmation, consummation and implementation of the Plan.

12. The entry of this Order shall constitute the Court's finding and determination that the provisions of the Plan, including but not limited to the 9019 Settlement contained in Article IV of the Plan, constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to such Claim or Interest, and that such settlements reflected in the Plan are (i) in the best interests of the Debtors and the Estates; (ii) fair, equitable and reasonable, **or at minimum fall well above the lowest level of the range of reasonableness** **[PB 09.30.24]**; (iii) made in good faith; and (iv) approved

by the Court pursuant to Bankruptcy Rule 9019.

13. As the Plan expressly contemplates the sale of the Hotel Lease Interests and that sale is integral to the effectuation of the Plan, the Sale of the Hotel Lease Interests shall not be taxed under any law imposing a stamp or similar tax as provided for in Section 1146(a) of the Code including (i) the initial refinancing or transfer of the Hotel Lease Interests; (ii) the creation of any mortgage, deed of trust, lien, pledge or other security interest required in connection with such initial refinancing or transfer; or (iii) the making or delivery of any mortgage, deed or other instrument or transfer under, in furtherance of, or in connection with the Plan. All such mortgages, transfers, assignments or sales will not be subject to any stamp tax, or other similar tax held to be a stamp tax, including mortgage recording tax or other similar tax by applicable law; provided, however, that no subsequent transfers of the Hotel Lease Interests, if any, by any purchaser or assignee of a contract or executory contract shall be exempt from stamp tax under Section 1146(a) of the Code except to the extent allowable under applicable law or further order of the Court. All filing and/or recording officers (or any other person or entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Section 1146(a) of the Code, shall forego the collection of any such tax, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax. The Court shall retain jurisdiction with respect to these matters.

14. The NYHTC and HANY Inc. Employee Benefit Funds will have an allowed general non-priority unsecured claim under section 502 of the Bankruptcy Code in these cases in the amount of $17,339,232.12 that is not subject to reconsideration under section 502 of the Bankruptcy Code or otherwise.

15. All requests for Administrative Claims must be made by application filed with the Court and served on Debtors' counsel within thirty-five (35) days after the Effective Date. Such application for payment of an Administrative Claim shall include, at a minimum, (i) the name, address, telephone number and email address of the holder of such Claim; (ii) the amount of such Claim; (iii) the basis for such Claim; and (iv) any supporting documentation to the extent such documentation would be required under Bankruptcy Rule 3001. All such Administrative Claims not timely filed or otherwise provided for under the Plan shall be forever barred.

16. All final requests for allowance of fee Claims must be made by application filed with the Court and served on the Parties listed in the Interim Compensation Order within thirty (30) days after the Effective Date. All such fee Claims not timely filed or otherwise provided for under the Plan shall be forever barred.

17. Pursuant to the terms of the Plan, the Plan shall not become effective until all of the conditions to effectiveness set forth in Section 9.2 of the Plan have been satisfied or waived as provided in the Plan.

18. **There is no waiver of the 14-day stay of effectiveness of this Order under Bankruptcy Rules 3020(e) and 6004(h)** [PB 09.30.24].

19. In accordance with Bankruptcy Rules 2002 and 3020(c), within five (5) business days of entry of this Order, the Debtors shall serve a true and correct copy of this Order on all creditors and parties in interest in the Chapter 11 Cases, including the United States Trustee.

Dated: New York, New York
       September 30, 2024

                                      /s/ Philip Bentley
                                      **Hon. Philip Bentley**
                                      **United States Bankruptcy Judge**