UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:

URBAN COMMONS 2 WEST LLC, *et al.*,

                        Debtors.

Chapter 11

Case No. 22-11509 (PB)
(Jointly Administered)

------------------------------------------------------------ x

## MODIFIED BENCH RULING APPROVING FREE-AND-CLEAR TREATMENT OF DEBTORS' SALE OF HOTEL LEASE INTERESTS

**A P P E A R A N C E S:**

DAVIDOFF HUTCHER CITRON, LLP
*Attorneys for the Debtors*
605 Third Avenue
New York, NY 10158
By:    Jonathan S. Pasternak

HERRICK, FEINSTEIN LLP
*Attorneys for BPC Lender, LLC*
2 Park Avenue
New York, NY 10016
By:    Steven B. Smith

FRIED, FRANK, HARRIS, SHRIVER JACOBSON LLP
*Attorneys for Battery Park City Authority*
1 New York Plaza
New York, NY 10004
By:    Janice MacAvoy

KLESTADT WINTERS JURELLER SOUTHARD STEVENS, LLP
*Attorneys for Residential Board of Managers of Millennium Point Condominium*
200 West 41st Street, 17th Floor
New York, NY 10036
By:    Tracy L. Klestadt
         Kathleen M. Aiello

HILLER, P.C.
*Attorneys for Residential Board of Managers of Millennium Point Condominium*
641 Lexington Avenue, 29th Floor
New York, NY 10022
By:     Michael Hiller

COHEN, WEISS AND SIMON, LLP
*Attorneys for New York Hotel Trades Council & Hotel Association of New York City, Inc.*
*Employee Benefits Funds*
900 Third Avenue, 21st Floor
New York, NY 10022
By:     Richard M. Seltzer

COLE SCHOTZ P.C.
*Attorneys for VIK XS Services, Inc.*
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
By:     Mark Tsukerman

UNITED STATES DEPARTMENT OF JUSTICE
*Attorneys for the U.S. Trustee*
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10014
By:     Tara Tiantian


**Philip Bentley**
**U.S. Bankruptcy Judge**

**Introduction**

This case raises an important and unsettled issue concerning the circumstances in which a debtor may sell its property free and clear of liens and other interests pursuant to Bankruptcy Code § 363(f)(5). Most courts, including bankruptcy courts in this District, have construed section 363(f)(5) broadly, holding that its requirements are satisfied if a foreclosure sale under state law would extinguish the interests at issue. In 2014, a district court in the Southern District of New York rejected this rule and adopted a much narrower construction. In *Dishi & Sons, v. Bay Condos LLC*, 510 B.R. 696, 710 (S.D.N.Y. 2014) ("*Dishi*"), the court held that section 363(f)(5) is satisfied only if the debtor itself, as the property's owner, could bring a legal or equitable proceeding under non-bankruptcy law to extinguish the interests in question. Under this reading, section 363(f)(5) would rarely be satisfied, and the ability of debtors to sell assets for fair value would be significantly impaired in many cases.

The Court is now required to choose between these two competing interpretations.[1] The Debtors, which own long-term leasehold interests in a Battery Park City hotel, seek to sell those interests free and clear of all liens and to confirm a plan of liquidation based on that sale. The terms of the sale are complex and incorporate a multi-party settlement achieved through a year-long mediation. A single party has objected to the sale: an out-of-the-money junior lien holder, which asks the Court to follow *Dishi* and hold that Bankruptcy Code § 363(f) does not allow the Debtors to sell the hotel free and clear of its lien. Such a ruling would effectively elevate this lien holder's rights from those of an unsecured to a secured creditor, enabling it to demand to be paid as the price of dropping its objection to the sale.

---

[1] The decisions of district courts in this District have significant precedential weight, but they do not bind bankruptcy courts. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. AP 08-01789 (SMB), 2017 WL 4685525, at *8 (Bankr. S.D.N.Y. Oct. 17, 2017) (Bernstein, J.) (collecting authority).

Surprisingly, in the ten years since *Dishi* was decided, no court or commentator has discussed its restrictive interpretation of section 363(f)(5). The Court therefore has undertaken its own review of the text and statutory context of that provision. Based on this analysis, the Court concludes that *Dishi*'s interpretation of section 363(f)(5) is unduly narrow. The broader construction previously followed in this District, under which this section's requirements are satisfied if a foreclosure sale would extinguish the interests at issue, conforms more closely to section 363(f)(5)'s text and purposes, as well as to the purposes underlying the Bankruptcy Code's other provisions concerning secured debt. The Court therefore adopts this broader interpretation and finds that the Debtors' proposed free-and-clear sale satisfies section 363(f)(5) because, under New York law, a foreclosure sale would extinguish the objecting junior holder's lien.

## **Factual Background**

The Debtors are five affiliated LLC's, which collectively own long-term leasehold interests (the "Hotel Lease Interests") in a hotel located at 2 West Street in Manhattan's Battery Park City neighborhood. The hotel is part of a mixed-use condominium building, which also includes a residential unit, and which is subject to a ground lease with the Battery Park City Authority ("BPCA"). The hotel was constructed in the early 2000s and was initially operated under the Ritz Carlton brand. In March 2018, the Debtors' predecessors changed the hotel's brand to The Leading Hotels of the World and changed its name to The Wagner at Battery Park.

The Debtors purchased the Hotel Lease Interests in September 2018 for approximately $147 million, of which $96 million was financed by a first mortgage issued by BPC Lender, LLC (the "Lender"). The validity of that mortgage has not been challenged. The loan matured in 2020, and the Debtors were unable to obtain refinancing. Later that year, following the onset of the Covid-19 pandemic, the hotel ceased operations, and it has remained shuttered since that time. In

4

November 2022, the Debtors filed these chapter 11 cases. By the time of the bankruptcy filing, the amount owed under the loan had grown to about $114 million, plus fees and costs.

From the outset of the bankruptcy, it was clear that the Debtors' only viable option was to market and sell their assets on a relatively expedited timetable. The Debtors had only a modest amount of cash, all of which was encumbered by the Lender's mortgage. The Debtors sought approval of DIP financing from the Lender early in the case, which the Court approved in an amount sufficient to fund the Debtors' expenses until the Hotel Lease Interests could be sold and a liquidating plan confirmed.

In February 2023, the Court entered an order approving bid procedures and scheduling an auction of the Hotel Lease Interests, to be followed by a sale approval hearing in the spring of 2023. The auction failed to attract any qualified bids other than the Lender's bid, which consisted of a $78.5 million credit bid, plus payment of tens of millions of dollars in disputed cure amounts that the Debtors owed under their leases and other agreements with BPCA, the condominium and the hotel union. In August 2023, to address a host of disputes under those leases and agreements, the Debtors commenced a mediation before former Judge Shelley Chapman with the other main parties in the case—the Lender, BPCA, two of the condominium's governing boards, and the hotel union. Thirteen months later, in early September 2024, the Debtors informed the Court that they and the other mediation parties had reached a global resolution of these disputes.

In September 2024, the Court held a combined hearing on (i) the Debtors' motion for approval of their sale of the Hotel Lease Interests to the Lender, free and clear of all liens, claims, interests and encumbrances, pursuant to Bankruptcy Code §§ 363(c) and 363(f), and (ii) confirmation of the Debtors' third amended plan of liquidation (the "Plan"). Only one party objected to either the sale or confirmation—namely, VIK XS Services, Inc. ("VIK"), a contractor that had filed a mechanic's lien to secure its claim for approximately $189,000 in unpaid pre-

5

petition services. VIK objected to the sale of the Hotel Lease Interests free and clear of its lien, contending that neither section 363(f)(5) nor any other subsection of section 363(f) authorized such free-and-clear treatment.

On September 26, 2024, the Court read into the record its bench ruling approving the sale and confirming the Plan. The Court found that the sale satisfied the requirements of Bankruptcy Code § 363(b), because the Debtors had properly marketed the hotel and the Lender's bid represented the highest and best offer—an offer that will pay almost $20 million in agreed cure claims and may enable the hotel to reopen and to reinstate the jobs that were lost when it closed more than four years ago. The Court also found that Code § 363(f) authorized a sale free and clear of all liens and other interests, because (i) all holders of liens or interests other than VIK were deemed to have consented to such treatment under Code § 363(f)(2) by virtue of not having objected to the sale, and (ii) a sale free and clear of VIK's lien was authorized by Code § 363(f)(5).[2] The Court then confirmed the Plan, finding that the mediation settlement was fair and reasonable and that the Plan satisfied the Bankruptcy Code's various other confirmation requirements.

This decision memorializes and expands upon one aspect of the September 26 bench ruling—namely, the Court's ruling that the sale motion satisfies the requirements of Code § 363(f)(5).

**Discussion**

Bankruptcy Code § 363(f) provides that, when a trustee or debtor-in-possession sells estate property pursuant to section 363(b) or (c), the buyer takes the assets free and clear of liens and

---

[2] The day before the start of the hearing, the Debtors contended for the first time that VIK's lien was subject to bona fide dispute and therefore free and clear treatment was warranted under Code § 363(f)(4) as well as § 363(f)(5). The Court denied this contention as both untimely and lacking in merit.

6

other interests if, but only if, the sale satisfies one or more of section 363(f)'s five subsections. Those subsections permit a free-and-clear sale if:

    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2) such entity consents;

    (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (4) such interest is in bona fide dispute; or

    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

When estate property is sold for less than the face amount of the liens that encumber it, section 363(f)(5) is often the only available basis for a free-and-clear sale. In such cases, if the holder of a lien that is not in *bona fide* dispute refuses to consent, subsections (2), (3) and (4) by their terms do not apply. Moreover, many courts construe subsection (1) narrowly, to apply only to a limited number of non-bankruptcy laws that permit non-judicial sales free and clear of liens. *See* 3 *Collier on Bankruptcy* ¶ 363.06[2].[3] This often leaves subsection (5) as the only potentially applicable subsection. Consequently, the courts' construction of this subsection has a substantial impact on whether section 363 free-and-clear sales of such "underwater" assets are available widely or, instead, only in rare cases.

For decades after the Bankruptcy Code's enactment, many courts and commentators considered it settled that section 363(f)(5) made free-and-clear sales widely available because

---

[3] Examples given by Collier include UCC § 9-320, which authorizes free-and-clear sales of inventory in the ordinary course of business; state laws permitting sales of trust property free and clear of the grantor's rights when necessary to protect the grantees; and laws relieving successors of ongoing obligations associated with transferred property. *Id.*

7

foreclosure sales and UCC sales satisfied that subsection. *See, e.g.*, George W. Kuney, *Misinterpreting Bankruptcy Code § 363(f) and Undermining the Chapter 11 Process*, 76 Am. Bankr. L.J. 235, 251-52 (2002) ("*Misinterpreting Bankruptcy Code § 363(f)*") (foreclosure sales and UCC sales were "commonly recognized" as proceedings that satisfied section 363(f)(5)). Indeed, some commentators considered it "axiomatic" that state law foreclosure proceedings "'fall directly within the words'" of section 363(f)(5). Frank A. Oswald & Andy Winchell, *Missing the Forest for the Trees in § 363: How the Ninth Circuit's Bankruptcy Appellate Panel Neglected the Big Picture in the Clear Channel Decision*, 2009 No. 4 Norton Bankr. L. Adviser 2 (2009) (quoting Kuney, *Misinterpreting Bankruptcy Code § 363(f),* 76 Am. Bankr. L.J. at 252 n. 64); *see also* Robert M. Lawless, *BAP Prohibits Sale of Free and Clear of an Underwater Junior Lien*, 28 No. 10 Bankr. L. Ltr. 1 (Oct. 2008) ("[A] state court foreclosure proceeding would seem to be a proceeding where the second lienholder could be compelled to accept a monetary satisfaction of its lien and thus satisfy the requirements of (f)(5). Indeed, the word 'foreclosure' means exactly that—the foreclosure of junior interests.").

This settled understanding was briefly threatened, in 2008, by a widely reported decision of the Ninth Circuit Bankruptcy Appellate Panel, *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (B.A.P. 9th Cir. 2008). In that case, the bankruptcy court had approved a free-and-clear sale under § 363(f)(5), and the BAP reversed, holding that the parties had not identified any available proceeding, either in bankruptcy or under state law, that would satisfy section 363(f)(5). *Id.*, 391 B.R. at 45-46. While the Panel's main ground for reversal was its holding that cramdown through a bankruptcy plan was not the sort of proceeding that satisfied section 363(f)(5) (a conclusion that VIK does not challenge), the BAP also found that "[n]either the Trustee nor [the buyer] has directed us to any such proceeding under nonbankruptcy law, and

8

the bankruptcy court made no such finding." *Id.* at 46. A drumbeat of alarmed commentary followed, expressing concern that foreclosure proceedings or UCC sales might no longer satisfy section 363(f)(5) and predicting that this "could have the effect of jeopardizing the successful use of timely and efficient §363 sales and of chapter 11 in general." Joel H. Levitin, *et al.*, *Ninth Circuit BAP Dresses Down Lienstripping: Could This Be the Last Dance for 363 Sales?*, 27 Am. Bankr. Inst. J. 1 (Oct. 2008).

This scare proved short-lived. As a bankruptcy court in the Ninth Circuit ruled the following year, the BAP's ruling as to whether qualifying proceedings existed under state law was limited: The Panel did not find that no such proceedings existed, but merely that the parties had not identified any such proceedings, and the Panel "exercised its prerogative to limit its ruling to the arguments presented by the parties." *In re Jolan, Inc.*, 403 B.R. 866, 869-70 (Bankr. W.D. Wash. 2009) (holding that, notwithstanding *Clear Channel*, section 363(f)(5) was satisfied by the availability of foreclosure and other proceedings under Washington law). Subsequent decisions, including in this District, have followed *Jolan*. For example, in *In re Boston Generating*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010), Judge Chapman, citing *Jolan*, held that the availability of foreclosure or other enforcement mechanisms under state law satisfies section 363(f)(5).

*Dishi* poses a renewed threat to the widespread availability of free-and-clear sales for underwater assets—although curiously, in contrast to *Clear Channel*, it has attracted little attention. In *Dishi*, the district court held that section 363(f)(5) is satisfied only when "the trustee, as owner of the property"—as distinct from a creditor—"could compel the interest holder to accept a money satisfaction for its interest." *Dishi*, 510 B.R. at 710. Under this reading, the availability of foreclosure proceedings and UCC sales does not satisfy section 363(f)(5), because only a

9

creditor, not the property's owner, can commence such proceedings.[4] Section 363(f)(5) would rarely be satisfied under this interpretation.

The *Dishi* court concluded that, absent this extremely narrow interpretation, section 363(f)(5)'s scope would be virtually limitless: It would encompass any hypothetical action a third party might take that would compel interest holders to accept a money satisfaction, including the government's taking of property by eminent domain. An eminent domain taking is hypothetically possible in virtually every case, and such a taking extinguishes all interests in the property and forces interest holders to accept monetary compensation. Consequently, the court found, section 363(f)(5) would be satisfied in virtually every case, and debtors would not need to rely on subsections (1) through (4). This would render those other subsections "mere surplusage," in violation of the maxim that courts should construe a statute so as to give effect to all its provisions. *Id.*, 510 B.R. at 710-11.[5]

The Court believes *Dishi* was right to reject such a sweepingly broad construction of section 363(f)(5). But rejection of that interpretation did not compel the court to go to the other extreme and adopt a construction so narrow as to virtually nullify section 363(f)(5). An alternative interpretation is available and, in the Court's view, far preferable—a middle-ground construction more consistent with the text and purposes of section 363(f)(5) than either extreme version.

---

[4]  *Dishi* was not the first court to so hold. A few bankruptcy courts in other jurisdictions had previously reached similar conclusions. *See Dishi,* 510 B.R. at 711, *citing In re Ricco, Inc.,* 2014 WL 1329292, *3 (Bankr.N.D.W.Va. Apr. 1, 2014); *In re Scott,* 2013 WL 4498987, *2–3 (Bankr.E.D.Ky. Aug. 21, 2013); *In re Haskell L.P.*, 321 B.R. 1, 9 (Bankr.D.Mass.2005). Those decisions, like *Dishi*, do not appear to have garnered much attention.

[5]  *Dishi* cited tax lien foreclosures as another sort of hypothetical proceeding that would satisfy § 363(f)(5) in almost every case. 510 B.R. at 710. The Court does not believe this is correct. Under the laws of many states, including New York, a variety of property rights, such as easements or covenants running with the land acquired before the tax was levied, are not extinguished by tax lien foreclosures. *See* Holly P. Rockwell, *Easement, Servitude, or Covenant as Affected by Sale for Taxes*, 7 A.L.R. 5th 187 (1992). A tax lien foreclosure therefore would not support a sale free and clear of such property rights pursuant to § 363(f)(5).

Specifically, the Court reads section 363(f)(5) to encompass not any conceivable hypothetical proceeding that might compel interest holders to accept a money satisfaction, but only proceedings that might realistically be brought in the case before the court if the automatic stay were lifted or did not apply. In most cases, this would include either foreclosure proceedings or UCC sales. (In this case, had the Court lifted the automatic stay, the Lender could have proceeded with its pending state court foreclosure suit. *See* N.Y. Real Prop. Acts Art. 13.) Under this reading, the mere hypothetical possibility of an eminent domain taking would not satisfy section 363(f)(5). Rather, eminent domain would be relevant only in the rare case where there was a realistic possibility that the government might use that power to take the debtor's property.

This reading of section 363(f)(5)—employing a "realistic possibility" standard, in contrast to the "hypothetical" standard that *Dishi* posited and rejected—does not render sections 363(f)(1) through (4) superfluous, as the hypothetical standard would. Foreclosure sales, unlike eminent domain takings, do not extinguish all interests in the property. For example, easements and covenants running with the land survive foreclosure and therefore cannot be stripped off by section 365(f)(5). *See, e.g.*, *Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994) (section 363(f)(5) does not authorize sale of property free of reciprocal land covenant); *Silverman v. Ankari (In re Oyster Bay Cove, Ltd.)*, 196 B.R. 251, 255-56 (E.D.N.Y. 1996) (section 363(f) does not authorize sale free and clear of easement, "absent the consent of the owner of the easement or the easement being in bona fide dispute"). The same is true for some contractual rights enjoyed by tenants, such as the right of a tenant with a non-disturbance agreement to remain on the property. Because section 363(f)(5) does not apply to interests of these sorts, a debtor that seeks to sell assets free and clear of such interests must satisfy one of section 363(f)'s other subsections—for example, by obtaining consent or demonstrating the existence of a *bona fide* dispute.

Most important, the Court's reading of section 363(f)(5) conforms more closely than the narrow interpretation adopted by *Dishi* to the text, statutory context and purposes of this subsection. To start with the statute's text, section 363(f)(5) is written in the passive voice: It permits a sale free and clear of an entity's interest in property if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). *Dishi*'s interpretation drastically narrows this language, so as to permit a free and clear sale only if one particular sort of party—the trustee, as owner of the property—could compel the interest holder to accept a money satisfaction. This transforms the plain meaning of the text, which contains no limitation on who can bring a proceeding to compel such a result.

Reading section 363(f)(5) to include foreclosure sales and UCC sales also comports with this subsection's purposes, which are apparent when the provision is viewed in its broader statutory context.[6] Foreclosure sales and UCC sales are the principal state law alternatives to section 363 sales, the mechanisms most often used when a secured creditor shows cause to lift the stay. Given the Bankruptcy Code's general reliance on state law to establish parties' baseline rights, *see Butner v. United States*, 440 U.S. 48, 54-55 (1979), it makes sense that Congress would have looked to

---

[6]  Unfortunately, the legislative history of section 363(f) provides no useful guidance. The relevant passage of the 1977 House Report states merely that:

> The provision was intended to codify Board of Trade v. Johnson, 264 U.S. 1 (1924). Board of Trade against Johnson is codified in section 363(f) of the House amendment, which indicates the only five circumstances in which property may be sold free and clear of an interest in such property of an entity other than the estate.

H.R. Rep. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6463.

It is not obvious what the drafters meant by saying that § 363(f) "codified" *Board of Trade v. Johnson*. It appears they may have cited that case for nothing more than the principle that free-and-clear sales should be allowed in bankruptcy—in appropriate circumstances (*i.e.*, those codified in subsection (f)), and so long as any liens or other interests in the property attach to the sale proceeds. *See Board of Trade*, 264 U.S. at 14-15 (reversing and remanding decision approving bankruptcy trustee's free-and-clear sale of debtor's Board of Trade membership, with direction that sale proceeds be used first to satisfy claims against the debtor's membership). In any event, the *Board of Trade* decision sheds no light on how to interpret any of § 363(f)'s five subsections.

such state law mechanisms to determine which property interests would be extinguished by a bankruptcy sale—that is, that Congress would have intended section 363 sales to strip off any interests that state law "legal or equitable proceeding[s]" such as foreclosure sales and UCC sales would extinguish.

This conclusion is even clearer when one considers the Bankruptcy Code's other provisions concerning the treatment of secured debt. As commentators have noted, those provisions are carefully designed to balance the competing interests of secured creditors and the debtor, allowing the debtor to use or sell a secured creditor's collateral so long as the value of the creditor's interest in the collateral is adequately protected. *See generally* Charles J. Tabb, *Law of Bankruptcy* § 3.17 (5th ed. 2020). In particular:

- Code §§ 363(b), (c) and (e) allow the debtor to use or sell encumbered property, so long as the debtor provides adequate protection of any interests in the property.

- Code §§ 362(a) and (d)(1) provide that actions against the debtor and its property are automatically stayed, but that lack of adequate protection constitutes cause to lift the stay.

- Code § 361 defines adequate protection as protection of the value of the secured creditor's interest in the collateral. Under this definition, an out-of-the-money lien holder, such as VIK, has no right to adequate protection, because its interest in the collateral has no value. *See* Tabb, *Law of Bankruptcy* § 3.18.

- Code § 506(a) similarly focuses on the value of the secured creditor's interest in the collateral: It bifurcates each secured creditor's claim into a secured claim, equal to the value of the creditor's interest in its collateral, and an unsecured claim for the balance. As a result, under a chapter 11 plan, an out-of-the-money lien holder is treated as an unsecured creditor, entitled only to its share of the plan's distributions to unsecured creditors.

*Dishi*'s narrow reading of section 363(f)(5) would undercut the purposes served by this statutory scheme. Under this reading, holders of out-of-the-money junior liens, like VIK, would retain their liens and potentially be able to enforce them against the buyer for full value, even though the value of their interest in the collateral is zero. By elevating the value of these worthless liens (which would be extinguished for no consideration in a state court foreclosure), this interpretation would impose a substantial tax on the value of estate assets: Absent a waiver, it would depress the price any potential buyer would be willing to pay. Alternatively, this rule would enable holders of out-of-the-money liens to extract payment of hold-up value in exchange for waiving their liens. Results of this sort serve no good purpose, and they are jarringly at odds with the Bankruptcy Code's carefully constructed legal regime for secured claims, including Code § 361's treatment of out-of-the-money liens as not entitled to adequate protection and Code § 506(a)'s treatment of holders of such liens as unsecured rather than secured creditors.

## Conclusion

For the reasons set forth above, the Court concludes that the availability of a foreclosure proceeding under state law satisfies Bankruptcy Code § 363(f)(5). The Court therefore overrules VIK's objection to the sale motion and holds that the Debtors are entitled to sell the Hotel Lease Interests to the Lender free and clear of all liens, claims and encumbrances.

Dated:  New York, New York
        March 4, 2025

/s/ Philip Bentley
**Hon. Philip Bentley
United States Bankruptcy Judge**